UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PROCESS AND INDUSTRIAL
DEVELOPMENTS LIMITED,                                   :

                Petitioner,               :

v.                                                      :

                           Civil Action No. 18-594

FEDERAL REPUBLIC OF NIGERIA and                         :
MINISTRY OF PETROLEUM RESOURCES OF
THE FEDERAL REPUBLIC OF NIGERIA,                        :

                Respondents.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PETITION TO CONFIRM ARBITRATION AWARD

Petitioner Process and Industrial Developments Limited ("P&ID") hereby petitions this Court for an order and judgment confirming a final, binding arbitration award (the "Final Award") issued in London, England, on January 31, 2017, by a duly constituted arbitral tribunal (the "Tribunal") in *In the Matter of the Arbitration Act 1996 (England & Wales) and In the Matter of an Arbitration Under the Rules of the Nigerian Arbitration and Conciliation Act (Cap A18 LFN 2004) Between Process and Industrial Developments Limited, Claimant, and the Ministry of Petroleum Resources of the Federal Republic of Nigeria, Respondent* (the "Arbitration").  A duly certified true and correct copy of the Final Award is attached as Exhibit 17 to the accompanying Declaration of Seamus Ronald Andrew, dated March 16, 2018 (the "Andrew Declaration").  In support of this Petition, P&ID respectfully states as follows:

### THE PARTIES

1.      Petitioner P&ID is an engineering and project management company organized and existing under the laws of the British Virgin Islands.  P&ID was created in 2006 as a vehicle

for implementing a project devised by two Irish nationals who had been involved in major engineering and infrastructure projects in Nigeria for several decades.  In 2010, P&ID entered into a contract with Nigeria's Ministry of Petroleum Resources, acting for and on behalf of the Federal Government of Nigeria, whereby P&ID would help Nigeria harness abundant natural gas reserves to solve the growing electricity crisis in Nigeria.  When Nigeria failed to perform its contractual obligations, P&ID commenced an arbitration pursuant to the contract's arbitration clause, resulting in the Final Award that remains unpaid and that P&ID is now seeking to enforce in the United States.

2.     Respondent Federal Republic of Nigeria (the "Republic" or "FRN") is a "foreign state" within the meaning of the Foreign Sovereign Immunities Act.  *See* 28 U.S.C. § 1603(a). Respondent Ministry of Petroleum Resources of the Federal Republic of Nigeria (the "Ministry") is a political organ of the Republic and does not have a separate legal personality.  As Nigeria explained in the arbitration: "The [Ministry] is a policy instrument of the government of the Federal Republic of Nigeria; it is not a juristic person."  (Andrew Decl. Ex. 4 at 4 (Notice of Preliminary Objection dated October 3, 2013).)

3.     In the Arbitration and in the Final Award, the Ministry was named as the respondent, as it had entered into the underlying contract in its name, for and on behalf of the Federal Government of Nigeria.  Because the Ministry is part of the Republic and does not have a separate legal personality, P&ID hereby seeks entry of judgment against the Republic as well as the Ministry.  This Petition will refer to the Ministry and the Republic collectively as "Nigeria."

## JURISDICTION AND VENUE

4.     This proceeding arises under the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").  Chapter 2 of the Federal Arbitration Act, codified at 9 U.S.C. § 201 *et seq.*, applies the New York Convention to award-recognition actions brought in the courts of the United States.

5.     This Court has jurisdiction over the subject matter of this proceeding under 9 U.S.C. § 203, which provides that "[t]he district courts of the United States . . . have original jurisdiction over" any "action or proceeding falling under the [New York] Convention."  This proceeding "fall[s] under the Convention" because it arises out of a commercial contract between P&ID and Nigeria, neither of which are citizens of the United States.  *See* 9 U.S.C. § 202.  In addition, the Final Award was made in the territory of the United Kingdom, a nation that is a contracting State to the New York Convention, and which is a State other than the State where P&ID seeks recognition and enforcement.

6.     The Court also has jurisdiction over the subject matter of this proceeding under 28 U.S.C. § 1330(a), as Nigeria is not entitled to sovereign immunity in connection with the cause of action set forth herein.  Specifically, Nigeria is not immune for two independent reasons.  First, Nigeria is subject to this Court's jurisdiction under 28 U.S.C. § 1605(a)(6), which creates an exception to foreign states' sovereign immunity for cases brought to confirm arbitral awards "governed by a treaty or other international agreement in force for the United States calling for recognition and enforcement of arbitral awards."  As noted above, the Final Award in this case is governed by the New York Convention, an international agreement of the type contemplated by Section 1605(a)(6).  Second, Nigeria is subject to this Court's jurisdiction under 28 U.S.C.

§ 1605(a)(1), because Nigeria's signing an agreement to arbitrate waived its sovereign immunity as to any action to confirm an award issued pursuant to that agreement.

7.     This Court has personal jurisdiction over Nigeria under 28 U.S.C. § 1330(b), which confers "[p]ersonal jurisdiction over a foreign state . . . as to every claim for relief" for which the foreign state does not enjoy sovereign immunity under 28 U.S.C. §§ 1605–1607, and over which the Court has subject matter jurisdiction.

8.     Venue is proper in this District under 9 U.S.C. § 204 and 28 U.S.C. § 1391(f)(4). Section 1391(f)(4) provides that venue lies in this District for any action "brought against a foreign state or political subdivision thereof."

## FACTUAL BACKGROUND

9.     The Final Award results from a dispute between P&ID and Nigeria that arose under a Gas Supply and Processing Agreement dated January 11, 2010 (the "Agreement").  The descriptions of the respective parties in the Agreement were P&ID and "The Ministry of Petroleum Resources for and on behalf of the Federal Government of Nigeria."  A duly certified true and correct copy of the Agreement is attached to the Andrew Declaration as Exhibit 1.

10.     The Agreement set forth the terms of an arrangement under which P&ID would build the necessary facilities and, over a period of 20 years, refine associated natural gas (also known as "wet gas") into non-associated natural gas (or "lean gas") to be used by Nigeria in powering its national electric grid.  Nigeria was to supply P&ID with agreed-upon quantities of wet gas—at first, 150 million, and eventually, 400 million standard cubic feet per day—during the 20-year period of supply.  P&ID, in turn, was to strip away the heavy hydrocarbons known as Natural Gas Liquids ("NGLs") that make wet gas unsuitable for electricity generation, then

return to Nigeria the lean gas thus created.  This refining process was to take place at the gas processing facilities to be built by P&ID on a site in Calabar, Nigeria.

11.     As compensation under the Agreement, P&ID would be permitted to retain the NGLs separated during the refinement process and sell them for its own account.  Although they render wet gas unsuitable for electricity generation, NGLs—which include ethane, propane, and butane—are independently (and profitably) marketable.  P&ID therefore stood to make a substantial profit from its sale of millions of metric tons of NGLs over the 20-year term of the Agreement.

12.     Among other things, the Agreement required Nigeria to:

> ensure that all necessary pipelines and associated infrastructure are installed and all requisite arrangements with agencies and/or third part[ies] are in place to ensure the supply and delivery of Wet Gas in accordance with [the scope of work set forth in the Agreement] so as to facilitate the timely implementation of gas processing by the [Gas Processing Facilities] as provided for in this Agreement.

13.     Nigeria failed to satisfy these obligations in two key respects.  First, Nigeria failed to secure a supply of the agreed-upon quantities of wet gas.  Second, and relatedly, Nigeria failed to complete construction of infrastructure necessary to transport wet gas from a source chosen by Nigeria to the Calabar site.  In particular, Nigeria never completed the Adanga Pipeline, which was intended to carry wet gas to the Calabar site where P&ID was to build the gas processing facilities.

14.     Nigeria's failures to comply with these obligations caused the collapse of the project contemplated by the Agreement.  Nigeria abandoned the Adanga pipeline, ceased its efforts to secure a suitable source of wet gas, and eventually stopped responding to P&ID's correspondence.  Nigeria's breach ensured that no wet gas was ever delivered to the Calabar site.

15.     As a result of Nigeria's failure to perform its obligations under the Agreement, P&ID lost 20 years' worth of profits from the sale of NGLs.

## THE ARBITRATION AND THE FINAL AWARD

16.     Article 20 of the Agreement provided for arbitration in the event of a dispute between the Parties:

> The Parties agree that if any difference or dispute arises between them concerning the interpretation or performance of this Agreement and if they fail to settle such difference or dispute amicably, then a Party may serve on the other a notice of arbitration under the rules of the Nigerian Arbitration and Conciliation Act (Cap A18 LFN 2004) which, except as otherwise provided herein, shall apply to any dispute between such Parties under this Agreement . . .
>
> The arbitration award shall be final and binding upon the Parties . . .
>
> The venue of the arbitration shall be London, England or otherwise as agreed by the Parties . . .

17.     Based on Nigeria's failure to perform under the Agreement, and consistent with the terms of the arbitration clause, P&ID commenced the Arbitration by serving a Notice of Arbitration on August 22, 2012.  By that time, P&ID had been a willing participant in discussions with Nigeria and other stakeholders about an alternative solution for over a year, with no sign of progress.  A true and correct copy of the Notice of Arbitration is attached to the Andrew Declaration as Exhibit 2.

18.     The Tribunal was duly constituted according to a procedure set forth in the Agreement and included, as presiding arbitrator, Leonard, Lord Hoffmann, former Lord of Appeal in Ordinary (during Lord Hoffmann's tenure, the highest judicial position in the United Kingdom, and the equivalent today of a U.K. Supreme Court Judge).  The other arbitrators were Sir Anthony Evans, Q.C., former justice of the Court of Appeal of England and Wales and former chief justice of the Dubai International Financial Centre Courts (appointed by P&ID), and

Chief Bayo Ojo, S.A.N., former Attorney General of Nigeria (appointed by Nigeria).  As stipulated in the Agreement, the venue of the arbitration was London, United Kingdom.

19.     The Tribunal considered several rounds of written submissions from both parties (accompanied by exhibits, witness statements, and expert reports), held two rounds of hearings (one day on issues relevant to Nigeria's liability, and two days on the calculation of P&ID's damages), and issued three awards.

20.     In its first Part Final Award, issued on July 3, 2014, the Tribunal considered certain preliminary issues, including (i) whether the Tribunal had jurisdiction to decide its own jurisdiction, (ii) the capacity of the Ministry to enter into the Agreement on behalf of the Nigerian government, and (iii) the validity of the Agreement in light of P&ID's incorporation in the British Virgin Islands rather than in Nigeria.  The Tribunal ruled, among other things, that it had jurisdiction to decide its own jurisdiction; it explained that this authority derived from the United Kingdom's Arbitration Act 1996, which it identified as "the law of the seat of arbitration."  (Andrew Decl. Ex. 7 ¶ 51.)  The tribunal also ruled that the Agreement was valid. Notably, the Tribunal determined that the Ministry's execution of the Agreement raised no capacity-to-contract issue, because there is no legal distinction between the Nigerian government and its various Ministries.  As the Tribunal put it, "[t]he Ministries *are* the Government, operating in different spheres."  (Andrew Decl. Ex. 7 ¶ 40 (emphasis in original).)

21.     In its second Part Final Award, issued on July 17, 2015 (the "Liability Award"), the Tribunal addressed the issue of liability: it determined that Nigeria's failure to satisfy its contractual obligations constituted a repudiation of the Agreement, and that P&ID was entitled to accept the repudiation and recover its damages caused thereby.  A true and correct copy of the Liability Award is attached to the Andrew Declaration as Exhibit 8.

22.     Nigeria attempted to have the Liability Award set aside by the English courts,

which, under the United Kingdom's Arbitration Act 1996, have supervisory jurisdiction over

U.K.-seated arbitrations.  In December 2015, Nigeria applied to the Commercial Court in

London for "[a]n order setting aside and/or remitting for further consideration all or part of the"

Liability Award.  (Andrew Decl. ¶ 16 and Ex. 9.)  Nigeria understood that the seat of arbitration

was in England: In a witness statement submitted in support of Nigeria's set-aside application,

Folakemi Adelore, the Ministry's Director of Legal Services, explained Nigeria's delay in filing

the application by writing that Nigeria "understood that in order to challenge the Award, it would

need to instruct a firm of solicitors in the U.K. given that any such challenge would have had to

be before the English courts under the English Arbitration Act 1996."  (Andrew Decl. Ex. 9 at

21.)  Ms. Adelore further informed the Commercial Court that "[t]he issue of jurisdiction of this

Court and the seat of the Arbitration had first to be considered."  (*Id.* at 23.)

23.     On February 10, 2016, the Commercial Court dismissed Nigeria's set-aside

application, finding (1) that the application was filed more than four months too late, and (2) that

Nigeria's objections to the Tribunal's liability finding had "no merit."  A true and correct copy of

the Commercial Court's order dismissing Nigeria's application to set aside the Liability Award is

attached to the Andrew Declaration as Exhibit 10.

24.     Two weeks after the Commercial Court in London denied Nigeria's application to

set aside the Liability Award, Nigeria decided to try for a better outcome in its own courts by

initiating proceedings in the Federal High Court of Nigeria to set aside the Tribunal's Liability

Award and to restrain the parties from acting further in the Arbitration.  (Andrew Decl. ¶ 20 and

Ex. 11.)  After conducting the Arbitration in London for three years—consistent with the

Agreement—and seeking (and failing) to have the Liability Award set aside by the English

courts, Nigeria did an about-face and suddenly took the position that the seat of arbitration was Nigeria and that the Nigerian courts therefore had exclusive supervisory jurisdiction over the arbitration.

25.     After P&ID had learned of the Nigerian proceedings (in which it did not participate), it asked the Tribunal to issue a ruling on the seat of the Arbitration, which would determine the effect—if any—of the Nigerian proceedings on the Arbitration.  By order dated April 26, 2016, the Tribunal determined that the parties had consented to London as the seat of Arbitration, both in the Agreement and through their conduct throughout the Arbitration.  A true and correct copy of the Tribunal's April 26, 2016 order (entitled "Procedural Order No. 12") is attached to the Andrew Declaration as Exhibit 12.  As Lord Hoffmann later wrote to the parties, given the Tribunal's decision "that the seat of the arbitration is in England," "the Federal High Court [of Nigeria] had no jurisdiction to set aside" the Liability Award.  (Andrew Decl. ¶ 24 and Ex. 14.)

26.     When the Federal High Court of Nigeria subsequently granted the order requested by Nigeria (purporting to set aside the Liability Award and suspend further proceedings in the Arbitration), the Arbitration nonetheless proceeded.  Nigeria claimed to "maintain[] its position on the award on liability" (Andrew Decl. ¶ 25 and Ex. 15), yet it continued to participate in the Arbitration.[1]

---

[1] Nigeria separately asked that the Nigerian court set aside Procedural Order No. 12 and remove the arbitrators from the Tribunal.  (Andrew Decl. ¶ 26 and Ex. 16 at 1.)  That request was not granted and the proceeding was dismissed.  (Andrew Decl. ¶ 26.)

27.     On January 31, 2017, following multiple written submissions and two days of hearings on the issue of P&ID's damages, the Tribunal issued a 34-page Final Award.[2]  The Tribunal found that "[i]f the contract had been performed, P&ID would have received for 20 years an income from the sale of natural gas liquids extracted from the wet gas supplied by the Government."  (Andrew Decl. Ex. 17 at 16.)  Accordingly, P&ID's damages were measured as the present value of that 20-year income, less capital and operating expenditures which would have been incurred in the course of building and running the facility.  (*Id.*)  Based on this calculation, a majority of the Tribunal found as follows:

> We, Leonard, Lord Hoffmann and Sir Anthony Evans, having read the parties' written evidence, pleadings and submissions and having heard their oral evidence and submissions, and having carefully considered the same and for the reasons stated above, make our Final Award as follows, namely we order the Respondent to pay the Claimant the sum of $6,597,000,000 together with interest at the rate of 7% from 20 March 2013 until the date of this award and at the same rate thereafter until payment.

(Andrew Decl. Ex. 17 at 33–34.)

28.     As of March 16, 2018, interest has accrued on the Final Award in the amount of $2,303,889,287.67, and interest continues to accrue at a rate of $1,265,178.08 per day.  (Andrew Decl. ¶ 27.)

29.     Nigeria has not applied to have the Final Award set aside in the United Kingdom (or anywhere else), and the time for doing so expired nearly a year ago.  The United Kingdom's Arbitration Act 1996 requires that a party seeking to overturn an arbitration award do so within 28 days after the award is provided to the parties.  The parties here received the Final Award on

---

[2] Chief Ojo, the arbitrator appointed by Nigeria, issued a dissenting decision stating that he would have awarded a lower sum.  (Andrew Decl. ¶ 28 and Ex. 18.)  Chief Ojo's dissent did not dispute the Tribunal's finding on liability.

February 10, 2017.  Nigeria's time for applying to set aside the Final Award expired on March

10, 2017.  (Andrew Decl. ¶ 29.)

## BASIS FOR CONFIRMATION OF THE FINAL AWARD

30.     The Final Award is a well-reasoned award, issued by prominent jurists, in a

proceeding in which both parties actively participated.  There is no reason why the award should

not be confirmed.

31.     Under the New York Convention, as incorporated into U.S. law through the

Federal Arbitration Act, an arbitral award must be confirmed unless one of a limited number of

grounds for refusal or deferral applies: "Within three years after an arbitral award falling under

the Convention is made, any party to the arbitration may apply to any court having jurisdiction

under this chapter for an order confirming the award as against any other party to the arbitration.

The court shall confirm the award unless it finds one of the grounds for refusal or deferral of

recognition or enforcement of the award specified in the said Convention."  9 U.S.C. § 207.

32.     The party opposing confirmation has the burden of showing that such a ground

applies.  *See Int'l Trading Indus. Inv. Co. v. DynCorp Aero. Tech.*, 763 F. Supp. 2d 12, 20

(D.D.C. 2011).  (Under the New York Convention, "confirmation proceedings are generally

summary in nature. . . . The showing required to avoid summary confirmation is high and the

burden of establishing the requisite factual predicate to deny confirmation of an arbitral award

rests with the party resisting confirmation.").  Nigeria cannot meet that burden here.

33.     The grounds on which a court can refuse or defer confirmation are:

- the lack of a valid arbitration agreement between the parties;
- that the award resolves a dispute outside the scope of the parties' arbitration agreement;
- that the award resolves a dispute that, under the laws of the country where confirmation is sought, cannot be resolved through arbitration;

- that the award debtor had no notice of the arbitration proceedings or was unable to meaningfully participate;

- that the tribunal was composed and/or the arbitration used procedures inconsistent with the parties' arbitration agreement;

- that the award is not yet binding or has been set aside by a competent authority of the country in which, or under the law of which, the award was made; or

- that confirming the award would contravene the public policy of the country where confirmation is sought.

*See* New York Convention art. V.

34.     As explained further in the accompanying Memorandum of Law, none of these grounds applies here.  The plain language of Article 20 of the Agreement makes clear that P&ID and Nigeria agreed that certain disputes could be resolved by arbitration.  (Andrew Decl. Ex. 1 at 14–15.)  The Arbitration concerned precisely such a dispute—i.e., one "concerning the interpretation or performance of [the] Agreement."  (*See id.* at 14.)  Nothing in the laws of the United States prohibits resolving this type of dispute through arbitration; to the contrary, the United States has long favored arbitration for the resolution of international commercial disputes.  *See Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (noting Supreme Court's endorsement of "an emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce") (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)).  Nigeria had notice of the Arbitration and actively participated in each of its stages.  The Tribunal was composed and followed the procedures according to the parties' agreement to arbitrate.  The award is binding on the parties, as provided in the arbitration clause, and the Final Award has not been set aside at the seat of arbitration (i.e., the United Kingdom).  Finally, confirming the award would offend no public policy of the United States.

35.     Accordingly, the New York Convention requires confirmation of the Final Award.

## COUNT I
## (CONFIRMATION OF FINAL AWARD UNDER 9 U.S.C. § 207)

36.     P&ID incorporates each and every allegation in the preceding paragraphs as if set forth fully herein.

37.     The Final Award is governed by the New York Convention (made applicable in this proceeding by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. § 201 *et seq.*) because the Final Award arises out of a commercial contract between P&ID and Nigeria, neither of which are citizens of the United States.  *See* 9 U.S.C. § 202.  In addition, the Final Award was made in the United Kingdom, a nation that is a State party to the New York Convention, and which is a State other than the State where recognition and enforcement is hereby sought.

38.     9 U.S.C. § 207 provides that, in an action to confirm an award governed by the New York Convention, the "court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

39.     None of the New York Convention's enumerated grounds for refusing or deferring recognition apply to the Final Award.  Under 9 U.S.C. § 207, the Final Award should therefore be confirmed.

40.     P&ID respectfully requests that the Court confirm the Final Award by entering judgment in favor of P&ID and against Respondents Federal Republic of Nigeria and Ministry of Petroleum Resources of the Federal Republic of Nigeria in the amount of the Final Award with interest as provided therein, plus the costs of this proceeding.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner Process and Industrial Developments Limited respectfully requests:

a.    an order of this Court pursuant to 9 U.S.C. § 207 confirming the Final Award and entering judgment thereon;

b.    a judgment in favor of Petitioner and against the Federal Republic of Nigeria and the Ministry of Petroleum Resources of the Federal Republic of Nigeria that conforms to the Final Award, including interest at 7% annually to be calculated from March 20, 2013, and costs;

c.    an award of post-judgment compound interest under 28 U.S.C. § 1961;

d.    an award of costs incurred by Petitioner in bringing this proceeding, including reasonable attorneys' fees;

e.    an order of this Court retaining jurisdiction over the matter for any further proceedings as may be necessary to enforce the Final Award and any further awards or judgments which may be obtained by Petitioner against Nigeria; and

f.    any other relief that this Court, in the interests of justice, deems necessary and proper.

Dated: March 16, 2018
      Washington, D.C.

<u>/s/ Marcus J. Green</u>
Michael S. Kim
    D.C. Bar No. 1032401
    michael.kim@kobrekim.com
Josef M. Klazen (*pro hac vice* application
forthcoming)
    D.C. Bar No. 1003749
    josef.klazen@kobrekim.com
Marcus J. Green
    D.C. Bar No. 999223
    marcus.green@kobrekim.com
KOBRE & KIM LLP
1919 M Street NW
Washington, DC 20036
Telephone:  (202) 664-1900

*Attorneys for Petitioner Process and Industrial Developments Limited*