UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
PROCESS AND INDUSTRIAL
DEVELOPMENTS LIMITED,                      :

                Petitioner,                      :

v.                                                                     :        Civil Action No. 18-594

FEDERAL REPUBLIC OF NIGERIA and            :
MINISTRY OF PETROLEUM RESOURCES OF
THE FEDERAL REPUBLIC OF NIGERIA,           :

                Respondents.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF SEAMUS RONALD ANDREW IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD

In support of the Petition to Confirm Arbitration Award filed by Process and Industrial Developments Limited ("P&ID"), I, Seamus Ronald Andrew, do hereby declare and state as follows:

1. I am over the age of 18 and am competent to give this Declaration.

2. All statements set forth in this Declaration are based on my personal knowledge.

3. I am an English Solicitor and the Managing Partner of the London-based law firm SCA Ontier LLP, a position in which I have served (including in respect of the predecessor firms of SCA Ontier LLP) since October 2004.

4. I acted as counsel for P&ID in the arbitration proceeding captioned *In the Matter of the Arbitration Act 1996 (England & Wales) and In the Matter of an Arbitration Under the Rules of the Nigerian Arbitration and Conciliation Act (Cap A18 LFN 2004) Between Process and Industrial Developments Limited, Claimant, and the Ministry of Petroleum Resources of the Federal Republic of Nigeria, Respondent* (the "Arbitration").

5. The Arbitration arose out of a Gas Supply and Processing Agreement (the "Agreement") dated January 11, 2010, between P&ID and the Ministry of Petroleum Resources for and on behalf of Federal Government of Nigeria (collectively, "Nigeria"). A duly certified true and correct copy of the Agreement is attached as Exhibit 1.

6. The Agreement provided, *inter alia*, that in the event of "any difference or dispute . . . concerning the interpretation or performance of [the] Agreement," either party could submit the dispute for arbitration by "serv[ing] on the other a notice of arbitration under the rules of the Nigerian Arbitration and Conciliation Act (Cap A18 LFN 2004)." Ex. 1 at 14–15.

7. On August 22, 2012, P&ID commenced the Arbitration by serving a Notice of Arbitration. A true and correct copy of the Notice of Arbitration is attached as Exhibit 2.

8. Nigeria had notice of, participated in, and was represented by counsel at each stage of the Arbitration.

9. Consistent with the procedure set forth in the Agreement, the parties appointed arbitrators to the arbitral tribunal (the "Tribunal") presiding over the Arbitration. P&ID appointed Sir Anthony Evans, Q.C., a former justice of the Court of Appeal of England and Wales. Nigeria selected Chief Bayo Ojo, S.A.N., a former Attorney General of Nigeria. Sir Evans and Chief Ojo then appointed as presiding arbitrator Lord Leonard Hoffman, former Lord of Appeal in Ordinary, or Law Lord, of the Appellate Committee of the House of Lords, then the highest court in the United Kingdom (and since replaced by the UK Supreme Court).

10. On June 28, 2013, P&ID served upon the Tribunal and upon Nigeria's legal representatives a Statement of Case setting forth the grounds for its claim in the Arbitration. A true and correct copy of P&ID's Statement of Case is attached as Exhibit 3.

11. On October 3, 2013, Nigeria filed a Notice of Preliminary Objection, asserting that the Agreement was void. A true and correct copy of Nigeria's Notice of Preliminary

Objection is attached as Exhibit 4.  Among other things, Nigeria argued that the Agreement was void because the Ministry "is a policy instrument of the government of the Federal Republic of Nigeria; it is not a juristic person" and therefore lacks the capacity to enter into contracts.  (Andrew Decl. Ex. 4 at 4.)

12.     As part of its response to Nigeria's Notice of Preliminary Objection, P&ID submitted a written witness statement by the Chairman of P&ID, and an expert report on Nigerian law from the Honorable S.M.A. Belgore, a former Justice of the Nigerian Supreme Court.  A true and correct copy of P&ID's February 10, 2014 Witness Statement is attached as Exhibit 5, and a true and correct copy of Justice Belgore's expert opinion is attached as Exhibit 6.  In his expert opinion, Justice Belgore agreed with Nigeria's contention that "the Ministry of Petroleum Resources of the Federal Republic of Nigeria does not have a separate legal personality," but explained that the Agreement was still valid because the Ministry "is perfectly able to enter into a contract," but "[w]hen it does so, it does not act as an entity separate from Government – rather it acts *as* Government."  (Andrew Decl. Ex. 6 at 4–5 (emphasis in original).)

13.     On July 8, 2014, the Tribunal issued to the parties a unanimous Part Final Award dated July 3, 2014, determining that it had jurisdiction over the Arbitration and rejecting the challenges to the validity of the Agreement raised in Nigeria's Notice of Preliminary Objection and supporting submissions.  A true and correct copy of the Part Final Award dated July 3, 2014 is attached as Exhibit 7.  The Tribunal rejected Nigeria's capacity-to-contract defense, explaining that "the distinction between the various Ministries and the Government is illusory," such that "[t]he Ministries *are* the Government, operating in different spheres."  (Andrew Decl. Ex. 7 ¶ 40 (emphasis in original).)

14. Over the following year, the parties litigated Nigeria's liability to P&ID, with each party submitting several written arguments. Each side also relied on witness-statement evidence. In addition, P&ID submitted another expert report from Justice Belgore.

15. On July 17, 2015, the Tribunal issued a second unanimous Part Final Award (the "Liability Award"), determining, *inter alia*, that Nigeria "repudiated the [Agreement] by failure to perform its obligations" thereunder and that P&ID was "entitled to damages (in an amount to be assessed) for the Government's repudiation of the [Agreement]." A true and correct copy of the Liability Award is attached as Exhibit 8.

16. On December 23, 2015, Nigeria applied to the Commercial Court in London, under Section 68 of the Arbitration Act 1996, for "[a]n order setting aside and/or remitting for further consideration all or part of the" Liability Award. A true and correct copy of Nigeria's application to the Commercial Court in London is attached as Exhibit 9.

17. Under the Arbitration Act 1996, an English court only has jurisdiction to set aside an arbitral award if the seat of the arbitration is within the Court's jurisdiction. *See* Arbitration Act 1996, s. 2(1) ("The provisions of this Part apply where the seat of the arbitration is in England and Wales or Northern Ireland.").

18. In its application to the Commercial Court in London to have the Liability Award set aside, Nigeria submitted a witness statement from Folakemi Adelore, the Director of Legal Services of the Ministry. *See* Exhibit 9 at 18–29. In her witness statement, Ms. Adelore wrote, "The Ministry understood that in order to challenge the Award, it would need to instruct a firm of solicitors in the U.K. given that any such challenge would have had to be before the English courts under the English Arbitration Act 1996." *Id.* at 21. In explaining Nigeria's delay in filing the application, Ms. Adelore stated that "[t]he issue of jurisdiction of this Court and the seat of the Arbitration had first to be considered." *Id.* at 23.

19. On February 10, 2016, the Commercial Court in London dismissed Nigeria's application to set aside the Liability Award, finding, *inter alia*, that (1) the application was "made more than 4 months after the expiry of the 28 day time limit" for such applications, and (2) "the grounds of the appeal have no merit." A true and correct copy of the Commercial Court's February 10, 2016 Order is attached as Exhibit 10.

20. On February 24, 2016, after the Commercial Court had dismissed Nigeria's set-aside application, Nigeria filed an Originating Motion initiating a proceeding in the Federal High Court of Nigeria, where it sought, *inter alia*, an order setting aside and/or remitting for further consideration all or part of the Liability Award. A true and correct copy of Nigeria's February 24, 2016 Originating Motion is attached as Exhibit 11. In its Originating Motion, Nigeria contended that the seat of arbitration was in fact Nigeria and that the "Nigerian courts have exclusive supervisory jurisdiction in relation to matters arising from the arbitration proceedings." (Andrew Decl. Ex. 11 at 2.)

21. P&ID did not contest the Nigerian proceedings. After P&ID had become aware of the Nigerian proceedings, it notified the Tribunal and subsequently requested that the Tribunal make a ruling on the seat of the arbitration to determine the significance, if any, of the Nigerian proceedings to the Arbitration.

22. On April 26, 2016, the Tribunal issued a reasoned decision (entitled "Procedural Order No. 12") determining that London, United Kingdom, was the seat of the Arbitration. A true and correct copy of Procedural Order No. 12 is attached as Exhibit 12.

23. Nearly one month after the Tribunal issued Procedural Order No. 12, the Federal High Court of Nigeria issued a three-page order, without analysis, "setting aside and/or remitting for further consideration all or part of the" Liability Award. A true and correct copy of the Federal High Court of Nigeria's order, dated May 24, 2016, is attached as Exhibit 13.

24. After having been informed of the Federal High Court of Nigeria's decision, Lord Hoffmann informed the parties that the Tribunal would be proceeding with the Arbitration. He explained: "As the parties will be aware from Procedural Order No. 12, the Tribunal has decided that the seat of the arbitration is in England. It follows that the Federal High Court had no jurisdiction to set aside its award." A true and correct copy of Lord Hoffman's May 27, 2016 e-mail is attached as Exhibit 14.

25. Notwithstanding the Nigerian court's order, the parties continued with the Arbitration and litigated the damages (or "quantum") phase of the proceedings. On June 21, 2016, Nigeria wrote to the Tribunal that it intended "to participate in the damages phase of the arbitration while maintaining its position on the award on liability." A true and correct copy of Nigeria's June 21, 2016 e-mail is attached as Exhibit 15. Thus, while the Nigerian order purported to have set aside the Liability Award, Nigeria continued to participate in the quantum phase of the Arbitration.

26. On May 6, 2016, Nigeria filed another Originating Motion with the Federal High Court of Nigeria, which requested that the court set aside Procedural Order No. 12 (in which the Tribunal determined that London, United Kingdom, was the seat of the arbitration) and disempanel the Tribunal. A true and correct copy of Nigeria's May 12, 2016 Originating Motion filed on May 6, 2016 is attached as Exhibit 16. This Originating Motion appears to have been refiled on May 9, 2016. Reports from P&ID's Nigerian counsel, who monitored but did not participate in the Nigerian proceedings on behalf of P&ID, suggested that this Originating Motion was filed yet again on May 13, 2016, and had been entitled Suit No. FHC/L/CS/624/2016. No such relief was granted by the Nigerian court, and P&ID's Nigerian counsel have confirmed that, on November 21, 2016, the court struck out Suit No. FHC/L/CS/624/2016 for lack of appearance of counsel for Nigeria.

6

27. On February 10, 2017, the Tribunal issued to the parties a Final Award dated January 31, 2017. A duly certified true and correct copy of the Final Award is attached as Exhibit 17. The Final Award ordered the Ministry to pay damages to P&ID in the amount of $6,597,000,000 plus interest to be calculated at a rate of 7 percent per annum from March 20, 2013. By my calculation, as of March 16, 2018, $2,303,889,287.67 in interest had accrued on the Final Award. Interest continues to accrue at a daily rate of $1,265,178.08.

28. Chief Ojo issued a Dissenting Final Award dated January 31, 2017. A true and correct copy of Chief Ojo's Dissenting Final Award is attached as Exhibit 18.

29. To my knowledge, Nigeria has made no attempt to set aside the Tribunal's Final Award. Under Section 70(3) of the Arbitration Act 1996, the time within which Nigeria could have filed any such challenge or appeal with the English courts pursuant to Sections 67–69 of the Arbitration Act 1996 expired at latest on March 10, 2017, which was 28 days after the Tribunal issued the Final Award to the parties.

30. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 16th day of March, 2018.

*[Signature]*

Seamus Ronald Andrew