# EXHIBIT 7

IN THE MATTER OF THE ARBITRATION ACT 1996 (ENGLAND AND WALES)

AND

AND IN THE MATTER OF AN ARBITRATION UNDER THE RULES OF THE NIGERIAN ARBITRATION AND CONCILIATION ACT (CAP A18 LFN 2004)

BETWEEN:

PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED

**Claimant**

and

THE MINISTRY OF PETROLEUM RESOURCES
OF THE FEDERAL REPUBLIC OF NIGERIA

**Respondent**

---

## PART FINAL AWARD

---

Tribunal:
Lord Hoffmann (Presiding Arbitrator)
Chief Bayo Ojo
Sir Anthony Evans

June 2014

1

A.  THE PARTIES AND THEIR LAWYERS

1. The Claimant ("P&ID") is an engineering and project management company registered at Trident Chambers, P.O. Box 146, Road Town, Tortola, in the British Virgin Islands with a Nigerian office at 12 Vaal Street, off Rhine Street, Ministers Hill, Maitama, Abuja. It is represented by Harcus Sinclair, 3 Lincoln's Inn Fields, London WC2A 3AA, United Kingdom.

2. The Respondent ("the Government" or "the Ministry") is the Ministry of Petroleum Resources of the Federal Government of the Federal Republic of Nigeria whose office address is 11th Floor, Block D, NNPC Towers, Herbert Macaulay Way, Central Business District, Abuja, Nigeria. It was first represented by Ajumogobia & Okeke, 2nd Floor, Sterling Towers, 20 Marina, Lagos, Nigeria and is now represented by Twenty Marina Solicitors LLP, 2nd Floor, Sterling Towers, 20 Marina, Lagos, Nigeria.

B.  SUMMARY OF THE DISPUTE

3. On 11 January 2010 Claimant and Respondent ("the parties") entered into a written Gas Supply and Processing Agreement ("GSPA") whereby the Government agreed that for a term of 20 years it would make to available to P&ID 400 MMScuFD of Wet Gas and P&ID agreed to process the gas and return approximately 85% by volume to the Government in the form of Lean Gas.

4. For the purpose of enabling the Wet Gas to be processed, P&ID agreed to construct two or more process streams with ancillary facilities.

5. The supply of Wet Gas by the Government was to take place in two phases. In Phase 1, the Government was to supply 150 MMScuFD "during or before the last quarter of 2011". In Phase 2, the remaining 250 MMScuFD were to be supplied "on or before the third quarter of 2012".

6. The Claimant alleges that the Government, in breach of its obligations, did not provide any Wet Gas by the dates stipulated or at all. On 20 March 2013, no Wet Gas having been delivered, P&ID wrote to the Ministry alleging that it had repudiated the GSPA and accepting the repudiation. It claims about US$ 6 billion damages for lost profits.

### C.  GOVERNING LAW AND ARBITRATION CLAUSE

7. Clause 20 of the GSPA, so far as relevant, provides:

> "The Agreement shall be governed by, and construed in accordance with the laws of the Federal Republic of Nigeria.
>
> The Parties agree that if any difference or dispute arises between them concerning the interpretation or performance of this Agreement and if they fail to such difference or dispute amicably, then a Party may serve on the other a notice of arbitration under the rules of the Nigerian Arbitration and Conciliation Act (Cap A18 LFN 2004) which, except as otherwise provided herein, shall apply to any dispute between such Parties under this Agreement. Within thirty (30) days of the notice of arbitration being issued by the initiating Party, the Parties shall each appoint an arbitrator and the arbitrators thus appointed by the Parties shall within fifteen (15) days from the date the last arbitrator was appointed, appoint a third arbitrator to complete the tribunal…
>
> The arbitration award shall be final and binding upon the Parties. The award shall be delivered within two months after the appointment of the third arbitrator or within such extended period as may be agreed by the Parties. The costs of the arbitration shall be borne equally by the Parties. Each party shall, however, bear its own lawyers' fees.
>
> The venue of the arbitration shall be London, England or otherwise as agreed by the Parties. The arbitration proceedings and record shall be in the English language…"

### D.  PROCEDURAL HISTORY

8. The arbitration was commenced by a Notice of Arbitration served by the Claimant on 22 August 2012. By letter dated 19 September 2012 the Claimant appointed Sir Anthony Evans as arbitrator and by letter dated 30 November 2012 the

3

Ministry, acting by Ibrahim H Dikko, its Legal Adviser, appointed Chief Bayo Ojo S.A.N. as arbitrator. On 29 January 2013 Sir Anthony Evans and Chief Bayo Ojo appointed Lord Hoffmann as Presiding Arbitrator.

9. On 13 May 2013 Messrs Twenty Marina Solicitors, on behalf of the Respondent, agreed a procedural timetable as follows:

> 1. The Claimant shall serve a Statement of Claim complying with Article 18 of the Rules of the Nigerian Arbitration and Conciliation Act 1990 ("the Rules") on or before [28 June 2013].
>
> 2. The Respondent shall serve a Statement of Defence complying with Article 19 of the Rules on or before [31 July 2013].
>
> 3. There shall be a Procedural Conference on the earliest convenient date after [31 July 2013].
>
> 4. For the purpose of Article 2 of the Rules all timings shall be at London, United Kingdom.

10. By e-mail dated 14 May 2013 the Presiding Arbitrator approved the timetable on behalf of the Tribunal as Procedural Order No 1.

11. The Claimant served a Statement of Case on 28 June 2013.

12. On 7 August 2013 the Presiding Arbitrator sent an e-mail to the parties in the following terms:

> The Tribunal notes with concern that the Respondent has neither complied with Procedural Order No 1, requiring it to serve a Statement of Defence on or before 30 July 2013, or applied for an extension of the time within which to do so.
>
> The Tribunal proposes to discuss the future progress of the arbitration with the parties at a telephone conference on 21 August 2013. The parties are requested to arrange a convenient time on that date with my clerk, Ms Kate Trott.

4

12. On 14 August 2013 the solicitors for the Claimant and the Respondent notified the Tribunal that a telephone hearing on 21 August 2013 would be convenient.

13. On 16 August 2013 the Respondent's solicitors sent an e-mail to the Tribunal and the Claimant in the following terms:

> We regret to bring to your attention the fact that it has only become apparent to us as counsel that we will not have complete instructions that will enable us provide proper representation for the Respondent at the telephone hearing scheduled for 21 August 2013.
>
> Indeed the need to secure detailed information correspondence, reports and further instructions is also responsible for the delay in the submission of our statement of defence.
>
> In the circumstances, we are constrained to seek for a postponement of the telephone hearing to a date in the week commencing 2 September 2013. We also seek an extension of time within which to submit a statement of defence by 30 days from the date of the telephone hearing.

14. On 19 August 2013 the Claimant sent an e-mail to the Tribunal and the Respondent proposing that the Tribunal should make Procedural Order No 2 in the following terms:

> UPON the Respondent having failed to serve any Statement of Defence on or before 31 July 2013;
>
> AND UPON the Respondent having failed, on or before 31 July 2013, to show sufficient cause for such failure, as required by Article 28 of the Arbitration Rules set out in the First Schedule to the Arbitration and Conciliation Act of Nigeria ("the Rules").
>
> IT IS ORDERED [BY CONSENT] THAT
>
> 1. The arbitral proceedings shall continue;
>
> 2. The Respondent shall serve a Statement of Defence complying with Article 19 of the Rules on or before Friday 4 October 2013;
>
> 3. There shall be a Procedural Conference on a date after Friday 4 October 2013;
>
> 4. In the event that the Respondent fails to serve a Statement of Defence in accordance with paragraph 2 above, the Arbitral Tribunal

> shall be entitled to continue the proceedings in accordance with section 21(b) of the Nigerian Arbitration and Conciliation Act 1990;
>
> 5. For the purpose of Article 2 of the Rules all timings shall be at London, United Kingdom.

15. On 19 August 2013 the Presiding Arbitrator sent an e-mail to the parties in the following terms:

    > 1. The Tribunal is minded to make an order in the terms of the draft submitted by the Claimant's solicitors in their e-mail of 19 August 2013. If the Respondent has any objection, the Tribunal should receive it before 6 pm London time on Friday 23 August 2013.
    > 2. The telephone conference arranged for 21 August 2013 is vacated.

16. No objection was received and on 14 September 2013 the Tribunal made Procedural Order No 2 in the terms of paragraphs 1 to 5 of the Claimant's draft.

17. On 3 October 2013 the Respondent served a Notice of Preliminary Objection in which it alleged that the GSPA was void under Nigerian law because the Ministry lacked legal capacity to contract and because the Claimant had failed to comply with section 54 of the Companies and Allied Matters Act Cap 20 LFN 2004. It also alleged that the arbitration agreement was itself void for lack of capacity and that the tribunal therefore lacked jurisdiction.

18. On 11 October 2013 the Claimant's solicitors wrote to the Respondent's solicitors inviting them to agree that the Tribunal should rule upon its jurisdiction pursuant to section 31(4) of the Arbitration Act 1996 (England and Wales):

    > Where an objection is duly taken to the tribunal's substantive jurisdiction and the tribunal has power to rule on its own jurisdiction, it may-
    >
    > (a) rule on the matter in an award as to jurisdiction, or
    > (b) deal with the objection in its award on the merits.
    >
    > If the parties agree which of these courses the tribunal should take, the tribunal shall proceed accordingly.

6

19. On 14 October 2013 the Respondent's solicitors replied accepting the proposal that the Tribunal should rule in an award on its jurisdiction.

20. On 6 November 2013 the Presiding Arbitrator sent an e-mail to the parties in the following terms:

> 1. The Tribunal agrees with the parties that it would be desirable that it should rule, as a preliminary issue, as to whether or not it has jurisdiction to decide upon the validity of the arbitration clause.
>
> 2. The Tribunal also considers that as this question is bound to involve an investigation of whether the contract was in fact void for the reasons advanced by the Respondent, the Tribunal should also (but only in the event that it decides that it has jurisdiction to do so) proceed as a preliminary issue to decide whether the contract was void or not.

21. On 22 November 2013 the Respondent's solicitors replied in the following terms:

> The Respondent agrees that the question on whether or not the Tribunal has jurisdiction to decide upon the validity of the arbitration clause, is bound to involve an investigation of whether the contract was in fact void, therefore the Tribunal may decide on this latter point as a preliminary issue (but only in the event that it decides that it has jurisdiction to do so).

22. The Claimant's solicitors also agreed and on 7 January 2014 the Tribunal accordingly made the following Procedural Order No 3:

> IT IS ORDERED BY CONSENT THAT:
>
> 1. The arbitral proceedings shall continue;
>
> 2. The following questions shall be decided as preliminary issues ("the Preliminary Issues"):
>
> (a) Whether the Tribunal has jurisdiction to rule upon its own jurisdiction to decide any of the matters in issue in the arbitration;
>
> (b) If the answer to question (a) is yes, whether it has jurisdiction to decide whether the contract is valid and binding upon the parties;

7

> (c) If the answer to question (b) is yes, whether the contract is void for any of the reasons stated in the Notice of Preliminary Objection;
>
> 3. The Respondent shall serve its submissions in relation to the Preliminary Objection and the Preliminary Issue with documents and evidence in support on or before Friday 24 January 2014;
>
> 4. The Claimant shall serve its Response to the Respondent's submissions with documents and evidence in support on or before Friday 14 February 2014;
>
> 5. The Respondent shall serve its Reply to the Claimant's Response with documents and evidence in support on or before Friday 28 February 2014;
>
> 6. There shall be a telephone conference upon a date to be arranged not later than 25 January 2014 to fix a date for an oral hearing on the preliminary issues and to deal with any other procedural matters.
>
> 7. The parties shall exchange skeleton arguments and serve them upon the Tribunal four clear days before the date of the oral hearing.
>
> 8. For the purpose of Article 2 of the Rules all timings shall be at London, United Kingdom.
>
> 9. The parties have leave to apply to vary the provisions of this Order.

23. In accordance with paragraph 3 of Procedural Order No 3, the Respondent served its submissions on the preliminary issues on 24 January 2014. No evidence or documents were served in support.

24. In accordance with paragraph 4 of Procedural Order No 3, the Claimant served its submissions on 14 February 2014, together with a witness statement by Mr Michael Quinn, Chairman of P&ID (together with exhibits) and an expert report by the Hon Justice Belgore.

25. On 15 February 2014 the Tribunal made by consent Procedural Order No 4 fixing 14 May 2014 as the date for an oral hearing of the preliminary issues at the International Disputes Resolution Centre, 70 Fleet Street, London EC4Y 1EU.

26. On 28 February 2014 the Respondent served a Reply to the Claimant's submissions.

27. On 17 April 2014 the Respondent notified the Tribunal that it was unable to serve an expert report in response to that of Justice Belgore by 18 April but hoped to be able to say when it would be able to do so by 25 April.

28. On 7 May 2014 the Respondent's solicitors notified the Tribunal that "due to the inability of our client to provide us with complete instructions for the engagement of an expert to prepare a statement in rebuttal to the statement of Justice Belgore (Rtd)" it would be unable to serve its skeleton argument as provided in Procedural Order No 3 and might not be able to attend the hearing on 14 May 2014.

29. On 8 May 2014 the Presiding Arbitrator asked the Respondent's solicitors for confirmation as to whether or not they would be attending the hearing on 14 May 2014, indicating that if they were not going to attend, the Tribunal might decide to dispense with a hearing and rule on the preliminary issues on the basis of the written material which had been submitted.

30. On 9 May 2014 the Respondent's solicitors replied:

> Due to the inability of our client to provide us with complete instructions in respect of this arbitration, we are constrained to inform the Tribunal that it appears we will be unable to attend the hearing scheduled for the 14th of May 2014.

31. No application was made for an adjournment of the hearing. On 11th May 2014 the Tribunal notified the parties that it proposed to dispense with an oral hearing and by e-mail dated 11 May 2014 the Claimant notified the Tribunal that it did not require an oral hearing.

32. The materials before the Tribunal for the purposes of its rulings on the preliminary issues are accordingly the Claimant's Request for Arbitration and Statement of Case, the Notice of Preliminary Objection and the Respondent's Submissions in support and Reply; the Claimant's Submissions on the Preliminary issues, the witness statement of Mr Quinn and the expert report of Justice Belgore.

### E.  THE EVIDENCE

33. We have been assisted by the expert report of Justice Belgore, who is a distinguished Nigerian jurist and former Chief Justice of his country. Although the Respondent adduced no expert evidence of its own, it cited a number of cases in its submissions. We have read and considered these, although for the most part we have not thought it necessary to refer to them. As the English law relevant to the preliminary issues is very similar to Nigerian law, the members of the Tribunal whose legal background is solely English have also been able to compare the views of Justice Belgore with the conclusions which they consider an English court would have reached.

34. The witness statement of Mr Quinn has provided helpful background on uncontroversial matters but the only facts which we found it necessary to mention are the dates of incorporation of the Claimant and its sister company in Nigeria.

### F.  THE PRELIMINARY ISSUES

*Issue (a):  Whether the Tribunal has jurisdiction to rule upon its own jurisdiction to decide any of the matters in issue in the arbitration*

35. This question did not appear to be in dispute. Article 21 of the Arbitration Rules scheduled to the Nigerian Arbitration and Conciliation Act is clear upon the point:

> 1. The arbitral tribunal shall have the power to rule on objections that it has no jurisdiction, including any objections with respect to the existence or validity of the arbitration clause or of separate arbitration agreement.
>
> 2. The arbitral tribunal shall have the power to determine the existence

> or the validity of the contract of which an arbitration clause forms a part...
>
> 4. In general, the arbitral tribunal should rule on a plea concerning its jurisdiction as a preliminary question. However, the arbitral tribunal may proceed with the arbitration and rule on such a plea in their final award.

36. By the law of the seat of arbitration, England, section 30(1) of the Arbitration Act 1996 confers a similar jurisdiction:

> **30. Competence of tribunal to rule on its own jurisdiction.**
>
> (1) Unless otherwise agreed by the parties, the arbitral tribunal may rule on its own substantive jurisdiction, that is, as to—
>
> (a) whether there is a valid arbitration agreement,
>
> (b) whether the tribunal is properly constituted, and
>
> (c) what matters have been submitted to arbitration in accordance with the arbitration agreement.

*Issue (b)   If the answer to question (a) is yes, whether it has jurisdiction to decide whether the contract is valid and binding upon the parties.*

37. Issue (b) has been separated from issue (c) because the Respondents recognize that even if the principal contract is for some reason invalid, the arbitration agreement is a separate contract and may nevertheless be valid, thereby giving the Tribunal jurisdiction to decide whether the principal contract is valid or not. This principle of severability is expressed in Article 21.2 of the Nigerian Arbitration Rules ("an arbitration clause...shall be treated as an agreement independent of the other terms of the contract") and section 7 of the English Arbitration Act 1996. The Respondent's contention is that the grounds of invalidity upon which it relies affect the validity of both the principal contract and the arbitration clause, thereby depriving the Tribunal of jurisdiction.

38. In practice, however, the dispute is about whether the alleged grounds of invalidity impair any part of the GSPA, whether its principal provisions or the arbitration clause. Thus an answers to issues (b) and (c) will be the same. Before

11

answering either (b) or (c), we shall therefore discuss in general terms the grounds of invalidity upon which the Respondent relies.

### (i) Lack of capacity

39. The Respondent submits that it does not have capacity to contract because only persons recognized as such by the law, whether natural or juristic, can have such capacity and the Respondent is neither. No one suggests that the Ministry is a natural person and so the question is whether it is a juristic one. The GSPA is expressed to be made between the Claimant and "the Ministry of Petroleum Resources for and on behalf of the Federal Government of Nigeria". Is the Federal Government of Nigeria a juristic person, able to enter into contracts? It is hard to see how the contrary argument could be advanced and the Respondent does not attempt to do so. It accepts that "the Government of the Federation...is constitutionally endowed with a legal personality".[1] But it says that the Ministry, by contrast, is an "unincorporated department of government", lacking in a separate legal personality.

40. Quite apart from the fact that the Ministry is expressed to contract for and on behalf of the Government, we think that the distinction between the various Ministries and the Government is illusory. The Ministries *are* the Government, operating in different spheres.[2] As Justice Belgore points out, section 5(1) of the Constitution of the Federal Republic of Nigeria 1999 provides that the executive powers of the Federation are vested in the President and may be exercised by him "through...Ministers of the Government of the Federation". By section 147 of the Constitution, the President may assign to any Minister "responsibility for any business of the Government".

41. There may in some cases be room for argument over whether a public body is an organ of government or a separate legal entity but there appears to us no room for doubt that a Ministry is part of the Government.

---

[1] Submission of 24 January 2014, p. 5.
[2] Report of Justice Belgore, paragraph 10.

### (ii) The Companies and Allied Matters Act 2004

42. Section 54 of the Companies and Allied Matters Act 2004 ("CAMA") deals with foreign companies "intending to carry on business in Nigeria":

> (1) [E]very foreign company which before or after the commencement of this Decree was incorporated outside Nigeria, and having the intention of carrying on business in Nigeria shall take all steps necessary to obtain incorporation as a separate entity in Nigeria for that purpose, but until so incorporated, the foreign company shall not carry on business in Nigeria or exercise any of the powers of a registered company and shall not have a place of business or an address for service of documents or processes in Nigeria for any purpose other than the receipt of notices and other documents, as matters preliminary to incorporation under this Decree.
>
> (2) (2) Any act of the company in contravention of subsection (1) of this section shall be void.

43. The Respondent's submission is that the act of entering into the GSPA counted as an act of carrying on business in Nigeria and was therefore void.

44. The facts, according to the uncontradicted witness statement of Mr Quinn, are that in 2006, with a view to carrying on the project envisaged by the GSPA, he and his colleagues caused two companies to be incorporated: the Claimant, incorporated on 30 May 2006 in the British Virgin Islands and Process and Industrial Developments (Nigeria) Ltd ("P&ID Nigeria"), incorporated on 21 July 2006 in Nigeria. The GSPA provided that when the project was operative, the Government was to receive a 10% carried interest in its equity.

45. The Claimant accepts that the business contemplated by the GSPA would have had to be carried on by P&ID Nigeria, in order to comply with section 54. But it submits that no such business was being carried on when the GSPA was executed and its execution was not in itself the carrying on of business.

46. The Respondent relies upon the decision of the Court of Appeal (Abuja Division) in *Pawa Complex International Inc and Pawa Associates (Nig) Ltd v Petroleum (Special) Trust Fund* (2008) 9 CLRN 16. The first appellant ("Pawa Florida")

13

was incorporated in Florida and the second appellant ("Pawa Nigeria") in Nigeria. The Trust Fund appointed Pawa Florida as consultant in connection with a development project. It caused Pawa Nigeria to be incorporated and at some indeterminate date gave it power of attorney to perform the consultancy contract. However, the judge found[3] that –

> "apart from not effecting the legalization of [Pawa Nigeria] prior to commencing its intended business [Pawa Florida] went ahead to run that business itself despite the appointment of [Pawa Nigeria] as its attorney. Despite that purported appointment, [Pawa Florida] continued to run the business as if the irrevocable power of attorney had not been donated…"

47. Giving the judgment of the Court of Appeal, Peter-Odile JCA declined to interfere with these findings of fact. He approved an earlier dictum that section 54 prohibited only "running business in Nigeria", which meant conducting it "as continuous operations or permanent occupation". But in this case, that was what Pawa Florida had done. The case is no authority for the proposition that merely entering into a contract which contemplates a business which will be run by a Nigerian company can infringe section 54.

48. Justice Belgore in his expert report likewise expresses the view that "entering into a contract to do business in Nigeria entity is not per se 'carrying on business' [in Nigeria]". We think that the authorities cited by the Justice support this proposition. Indeed, the language of the section may be said to contemplate that a foreign company will take steps which indicate an intention to carry on business in Nigeria (such as entering into the GSPA) and to require that a Nigerian company be incorporated only at the stage when such business is actually about to be commenced.

49. We therefore consider that section 54 does not render any part of the GSPA unlawful.

*Issue (c): If the answer to question (b) is yes, whether the contract is void for any of the reasons stated in the Notice of Preliminary Objection.*

---

[3] At pp. 24-25.

50. It follows from our reasons for the answer to issue (b) that the answer to issue (c) is no.

### G.   DISPOSITION

51. We, Leonard, Lord Hoffmann, Chief Bayo Ojo and Sir Anthony Evans, having read the parties submissions and pleadings and written evidence, and having carefully considered the same and for the reasons stated above, make our Part Final Award as follows:

   (1)   We declare that –

   (a)   The Tribunal has jurisdiction to rule upon its own jurisdiction to decide any of the matters in issue in the arbitration;

   (b)   The Tribunal has jurisdiction to decide whether the contract (i.e the GSPA) is valid and binding between the parties;

   (c)   The contract (i.e. the GSPA) is not void for any of the reasons stated in the Notice of Preliminary Objections.

   (2)   We reserve for later decision all other matters in dispute in the reference.

Place of arbitration: London, United Kingdom.


Signed:


Leonard, Lord Hoffmann                    *[signature: Hoffmann]*

15

Chief Bayo Ojo

Sir Anthony Evans

3 ~~June~~ 2014
July

16