# EXHIBIT 12

IN THE MATTER OF THE ARBITRATION ACT 1996 (ENGLAND AND WALES)

AND

AND IN THE MATTER OF AN ARBITRATION UNDER THE RULES OF THE NIGERIAN ARBITRATION AND CONCILIATION ACT 1988

BETWEEN:

**PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED**

<u>**Claimant**</u>

and

**THE MINISTRY OF PETROLEUM RESOURCES OF THE FEDERAL REPUBLIC OF NIGERIA**

<u>**Respondent**</u>

---

## PROCEDURAL ORDER No. 12

---

Tribunal:

Lord Hoffmann (Presiding Arbitrator)

Chief Bayo Ojo, SAN

Sir Anthony Evans

1

## A. Introductory

1. On 24 February 2016 the Respondent ("the Government") commenced proceedings before the Federal High Court in Lagos for an order pursuant to sections 29, 30 and 48 of the Nigerian Arbitration and Conciliation Act 1988 ("the Nigerian Arbitration Act") setting aside the Tribunal's second Partial Final Award dated 17 July 2016.  There is a dispute between the parties as to whether the Nigerian courts are entitled to exercise such supervisory or "curial" jurisdiction over the arbitration, this being agreed to depend upon whether Nigeria or England is the "seat" or "place" of arbitration.  This is an important question, not only for the purpose of determining the jurisdiction to supervise the proceedings and award, but also for the purposes of the enforceability of the award.  Article V of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards provides that a Contracting State may refuse enforcement of an award only on a limited number of grounds, one of which is that the award  "(v)…has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."  Nigeria (and almost all other countries in the world) are parties to the New York Convention and Article V(v) is reproduced in section 52(2)(a)(viii) of the Nigerian Arbitration Act.  The words "country in which, or under the law of which, that award was made" have been generally interpreted as referring to the widely understood international concept of the seat or place of the arbitration or arbitration proceedings.  Thus an order setting aside an arbitral award by a court in a country which is not the seat of arbitration has no effect upon its enforceability under the Convention.

2. The question of the seat of arbitration was first raised by the Government in its originating motion in the High Court in Lagos on 24 February 2016. It was contested by P&ID and the parties made their submissions to the Tribunal in letters or e-mails dated 8 March 2016 and 11 March 2016 (P&ID) and 11 and 13 March 2016 (the Government). P&ID, before the injunction granted by the Nigerian court, requested that the Tribunal give a ruling on the matter. The Tribunal considers that it must therefore consider the question of the seat of arbitration for the purpose of deciding the future conduct of the arbitration. The Tribunal has the power to determine its own jurisdiction (section 12 of the Nigerian Arbitration Act) and its opinion on the disputed question may also be of assistance to the Nigerian court.

3. The Tribunal will consider the matter under three heads. First, the relevant law. Secondly, the factual background to the arbitration agreement and the light it may throw upon the intentions of the parties. Thirdly, the conduct of the parties during the course of the arbitration.

### B. The Law

4. The arbitration arises out of a Gas Supply and Processing Agreement ("GSPA") dated 11 January 2010 made between The Ministry of Petroleum Resources of the Federal Republic of Nigeria ("the Government") and Process and Industrial Developments Limited ("P&ID"), a company incorporated in the British Virgin Islands. The relevant parts of article 20 provided as follows:

> "The Agreement shall be governed by, and construed in accordance with the laws of the Federal Republic of Nigeria.

> The Parties agree that if any difference or dispute arises between them concerning the interpretation or performance of this Agreement and if they fail to settle such difference or dispute amicably, then a Party may serve on the other a notice of arbitration under the rules of the Nigerian Arbitration and Conciliation Act 1988 which, except as otherwise provided herein, shall apply to any dispute between such Parties under this Agreement….Within thirty (30) days of the notice of arbitration being issued by the initiating Party, the Parties shall each appoint an arbitrator and the arbitrators thus appointed by the Parties shall within fifteen (15) days from the date the last arbitrator was appointed appoint a third arbitrator to complete the Tribunal…The arbitration award shall be final and binding upon the Parties. The award shall be delivered within two months after the appointment of the third arbitrator or within such extended period as may be agreed by the Parties…. The venue of the arbitration shall be London, England or otherwise as agreed by the Parties. The arbitration proceedings and record shall be in the English language…"

5. As the GSPA (including article 20 itself) is to be construed in accordance with the laws of the Federal Republic of Nigeria, the Tribunal considers that the meaning of words "the venue of the arbitration shall be London, England" must be construed in accordance with Nigerian law. The relevant provision is section 16 of the Nigerian Arbitration Act:

> **16.** (1) Unless otherwise agreed by the parties, the place of the arbitral proceedings shall be determined by the arbitral tribunal having regard to the circumstances of the case, including the convenience of the parties.
>
> (2) Notwithstanding the provisions of subsection (1) of this section and unless otherwise agreed by the parties, the arbitral tribunal may meet at any place it considers appropriate for consultation among its

4

>   members, for hearing witnesses, experts or the parties,
>   or for the inspection of documents, goods or other
>   property.

6. It appears to the Tribunal that by stipulating that "the venue of the arbitration shall be London, England" the parties have agreed on the "place of the arbitral proceedings" within the meaning of section 16(1) and that the Tribunal's power to determine that place is excluded. The question is, what is the effect of the choice of London by the parties? The Claimant says that the effect is to make London the seat of arbitration and to invoke the supervisory jurisdiction of the English courts, to the exclusion of the Nigerian courts. The Government says that the effect is only to agree that, as a matter of convenience, the hearings shall take place in London but not to make it the seat of arbitration. The seat of arbitration, the Government says, is Nigeria because, first, the GSPA is governed by Nigerian law and secondly, because the parties have agreed that "except as otherwise provided herein" the rules of the Nigerian Arbitration and Conciliation Act 1988 shall apply to any dispute".

7. The Nigerian Arbitration Act is based upon the UNCITRAL Model Law, which has been adopted in 72 countries and was intended to create uniformity of law in international arbitration. One would therefore expect that the Nigerian legislature intended its statute to be given the same meaning as that of the Model Law. Article 20 of the Model Law is in substantially the same language as section 16 of the Nigerian Arbitration Act and reads as follows:

*Article 20.   Place of arbitration*

> (1) The parties are free to agree on the place of arbitration. Failing such agreement, the place of arbitration shall be determined by the arbitral tribunal having regard to the circumstances of the case, including the convenience of the parties.
>
> (2) Notwithstanding the provisions of paragraph (1) of this article, the arbitral tribunal may, unless otherwise agreed by the parties, meet at any place it considers appropriate for consultation among its members, for hearing witnesses, experts or the parties, or for inspection of goods, other property or documents.

8. Likewise, article 18 of the UNCITRAL Arbitration Rules (2010 revision) provides:

   *Article 18*

   > (1) If the parties have not previously agreed on the place of arbitration, the place of arbitration shall be determined by the arbitral tribunal having regard to the circumstances of the case. The award shall be deemed to have been made at the place of arbitration.
   >
   > (2) The arbitral tribunal may meet at any location it considers appropriate for deliberations. Unless otherwise agreed by the parties, the arbitral tribunal may also meet at any location it considers appropriate for any other purpose, including hearings.

9. Each of these provisions is divided into two subsections. The first deals with the choice by the parties (or determination by the Tribunal) of the "place of arbitration" (UNCITRAL) or "place of the arbitral proceedings" (Nigeria). The second deals with the venue for various physical events which may take place during the arbitral proceedings, such as deliberations, witness hearings, submissions and inspections. The first is primarily a matter for the choice of the parties, with the Tribunal having a power to fix the place only if the parties have not done so. The

6

second is a matter for the discretion of the Tribunal, which can be exercised unless the parties have expressly excluded it.

10. The general international understanding of the UNCITRAL and similar provisions is that the first subsection is concerned with what in English law is called the "seat" of the arbitration, a juridical concept of a link between the arbitration and a system of law, while the second is concerned with the various physical acts which may occur during the arbitration. As Redfern and Hunter *Law and Practice of International Commercial Arbitration* (6th ed) at 3.56 puts it:

> [T]he place, or 'seat', of the arbitration is not merely a matter of geography. It is the territorial link between the arbitration itself and the law of the place in which that arbitration is legally situated. When one says that London, Paris or Geneva is the place of arbitration, one does not refer solely to a geographical location. One means that the arbitration is conducted within the framework of the law of arbitration of England, France or Switzerland or, to use an English expression, under the curial law of the relevant country. The geographical place of arbitration is the factual connecting factor between that arbitration law and the arbitration proper, considered as a nexus of contractual and procedural rights and obligations between the parties and the arbitrators.

*11.* Likewise Dr Peter Binder, in his *Analytical commentary to the UNCITRAL Arbitration Rules 2010,* says of article 18 (cited above):

> It was clarified…by the Working Group [on the revision of the Rules] that the term "place" as used in

7

  art.18(1) of the Rules referred to the seat of arbitration which determined the law applicable to the arbitral procedure and court jurisdiction. Article 18(2), on the other hand, referred to the physical locations where meetings might be held.

12. It will be noted that Redfern and Hunter use the terms "seat of arbitration" and "place of arbitration" interchangeably and other commentators also use word like "venue" and "locale". The distinction is not between "seat" and "place" or some other word denoting a geographical location. That would be to introduce fine linguistic distinctions. The true distinction embodied in sections 16(1) and 16(2) is between the place (or seat or venue) *of the arbitration* (or of *the arbitration proceedings*) on the one hand and the place of *events in the arbitration on the other*. Section 16(1) of the Nigerian Arbitration Act provides that the parties may agree on the place *of the arbitral proceedings* (as a legal concept) but section 16(2) gives the Tribunal a discretion to hold *particular events* in a place other than the chosen place of the arbitration. Only one place can be chosen under section 16(1) to be the place of the arbitral proceedings as a whole, irrespective of where particular events may take place, whereas several places can be chosen under section 16(2).

13. This is the point made by the Supreme Court of Nigeria in *Nigerian National Petroleum Corporation v Lutin Investments Ltd* (2006) 2 NWLR (Pt.965) 506. The arbitration clause said that any reference should be "deemed a submission to arbitration within the [Nigerian Arbitration Act]" and the proceedings appear to have been in every respect Nigerian, but the arbitrator decided to sit in London to hear the evidence of a witness described as a "fugitive from justice". The Court

decided that he was entitled under section 16(2) to do so. Justice Onnoghen put the point most clearly when he said:

> "I hold the view that under our law, an arbitrator or an arbitral tribunal has the power and discretion to decide as regards where it holds its meetings, conduct hearings, take evidence etc. I further hold the view that such place as decided by the arbitrator or arbitral tribunal may be different from the seat of the arbitration except the parties expressly agree to the contrary in their arbitration agreement."

14. The Court also held that the parties had not chosen the "place of the arbitral proceedings" under section 16(1) and that the arbitrator was therefore entitled to do so. However, it was not suggested that by hearing evidence in London the arbitrator had actually determined that England should be the place of arbitration for the purposes of section 16(1). The Court did not regard itself as deprived of its supervisory jurisdiction and must therefore have assumed that the seat of arbitration was Nigeria. It held that the arbitrator had a discretion to sit in London by virtue of section 16(2) and rejected a submission that "at any place" in that subsection should be confined to places in Nigeria.

15. In the opinion of the Tribunal, the parties' selection of London as "the venue *of the arbitration*" rather than of any particular steps (such as hearings) *in the arbitration* indicates that London was selected under section 16(1) as the place of the arbitration in the juridical sense, invoking the supervisory jurisdiction of the English court, rather than in relation to any particular events in the arbitration. Indeed, the parties, having chosen the juridical place of arbitration under section 16(1) (or it having been determined by the Tribunal) have no power under section

9

16(2) to determine where hearings shall take place. That power, unless altogether excluded, is vested only in the Tribunal.

16. As for the choice of the procedural rules of the Nigerian Arbitration Act, this cannot in the opinion of the Tribunal displace the express choice of the place of arbitration pursuant to section 16(1). There is no inconsistency because although the choice of England as the place of arbitration carries with it the application of certain mandatory rules of the English Arbitration Act 1996 (such as the right to challenge an award in an English court under sections 67 and 68), section 4 of the English Act provides:

> (2) The …"non-mandatory provisions" [of the Act] allow the parties to make their own arrangements by agreement but provide rules which apply in the absence of such agreement.
>
> (5) The choice of a law other than the law of England and Wales or Northern Ireland as the applicable law in respect of a matter provided for by a non-mandatory provision of this Part is equivalent to an agreement making provision about that matter."

17. Thus the effect of article 20 of the GSPA is that, the parties having chosen that England should be the place of the arbitration but that it should be conducted according to the Nigerian procedural rules, the latter apply except so far as inconsistent with the mandatory provisions of the English Act.

### C. The Factual Background

18. The GSPA was made between the Government of Nigeria and a British Virgin Island company which, according to the evidence of the late Mr

Michael Quinn, had been formed as a special purpose vehicle for the proposed project by a group of expatriates who had been working in the oil and gas industry in Nigeria for up to 30 years. It had an office in Nigeria. Both parties were thus in practice based in Nigeria. It is difficult to speculate upon the motives for the choice of London as the place of the arbitration proceedings but one possibility is that the parties agreed that a dispute between the Nigerian government and expatriate businessmen should be determined in a neutral jurisdiction and subject to the supervision of its courts.

### D. The Conduct of the Parties

19. The arbitration was commenced by notice of arbitration served by P&ID on 22 August 2012. On 19 September 2012 P&ID appointed Sir Anthony Evans as arbitrator. On 30 November 2012 the Government appointed Chief Bayo Ojo as arbitrator. On 29 January 2013 the party-appointed arbitrators appointed Lord Hoffmann third and presiding arbitrator.

20. The parties agreed that it was not practical for the dispute to be resolved within time for an award to be delivered within two months of 29 January 2013 and on 9 May 2013 agreed a procedure by which P&ID was to serve a Statement of Claim before 28 June 2013 and the Government was to serve a Statement of Defence on or before 31 July 2013.

21. The Government did not serve a Statement of Defence by the agreed date but instead served on 3 October 2013 a Notice of Preliminary Objection disputing the jurisdiction of the Tribunal and the validity of the GSPA. On 11 October 2013 P&ID's lawyers wrote to the Government's lawyers:

> "Although our client considers the points raised in the Respondent's Preliminary Objection to be misconceived and devoid of merit, it considers that they should be determined as soon as possible. Therefore we invite you to agree that the issues raised be ruled upon by the Tribunal pursuant to Section 31(4) of the Arbitration Act 1996 ("the 1996 Act"), which provides that if the parties agree that the Tribunal should rule upon its own jurisdiction in an award as to jurisdiction, then the Tribunal shall proceed accordingly."

22. On 14 October 2013 the Government's lawyers replied:

> "The Respondent responds to your said latter as follows;
> - The Respondent accepts the Claimant's request that the tribunal should rule on its own jurisdiction in an award as to jurisdiction; and
> - The Respondent will be proceeding as contemplated by the parties under the Nigerian Arbitration and Conciliation Act, Cap A18 LFN 2004.

23. On 24 October 2013 P&ID's lawyers replied:

> The parties appear to be in agreement that the Arbitral Tribunal should rule on its own jurisdiction in an award as to jurisdiction. For the avoidance of doubt, we referred to Section 31 (4) of the Arbitration Act 1996 in our letter of 11 October 2013 because it is one of the Mandatory provisions

12

> of the 1996 Act, and the juridical seat of this arbitration is London. However, and for the further avoidance of doubt, we acknowledge that the parties have agreed to arbitrate "under the rules of the Nigerian Arbitration and Conciliation Act", and we therefore accept that the rules governing the internal procedure of the arbitration are those to be found in the Nigerian Arbitration and Conciliation Act 2004, principally in the rules set out in the First Schedule thereto ("the Nigerian Arbitration Rules"), but also in sections 14 to 23 inclusive of the 2004 act, headed "Conduct of Arbitral Proceedings". In this regard we note that Article 21 of the Nigerian Arbitration Rules provides that the Arbitral Tribunal shall have the power to rule on an objection that it has no jurisdiction, including any objections with respect to the existence of validity of the arbitration clause or of a separate arbitration agreement.

24. There was no contradiction by the Government's lawyers of this statement.

25. After arranging for an oral hearing which was cancelled because the Government notified the Tribunal that it would not appear, and having regard to the uncontradicted expert evidence of Justice S.M.A Belgore, the Tribunal on 3 July 2014 delivered a Part Final Award by which it dismissed the objections. In accordance with section 26(3)(c) of the Nigerian Arbitration Act, which requires that an award state "the place of the arbitration as agreed or determined under section 16(1) of this Act", the award stated that the place of arbitration was London. (The equivalent English provision in section 52(5) of the Arbitration Act 1996, which requires an award to state the "seat of arbitration", is not one of the mandatory provisions listed in Schedule 1 to the Act).

26. On 21 July 2014 the Tribunal issued Procedural Order No 5 directing the Government to serve its Statement of Defence by 19 September 2014. On 10 November 2014, no Statement of Defence having been served, P&ID applied to the Tribunal to make a peremptory order in the form of a draft headed "In the matter of the [English] Arbitration Act 1996." The power to make such an order (which enables the court to enforce an order of the Tribunal with which a party has failed to comply) is contained in section 42 of the 1996 Act, which by section 2 applies only "where the seat of the arbitration is in England and Wales or Northern Ireland."

27. On 13 November 2014 the Government wrote to the Tribunal asking for P&ID's application to be suspended to enable settlement talks to take place and proposing a meeting in Abuja. On 14 November 2014 P&ID's solicitors replied agreeing to talks but saying "May we suggest…and given that this is a London seat arbitration, that we meet in London instead of Abuja." There was no contradiction of this statement and the parties afterwards met in London.

28. Nothing came of the settlement negotiations and on 16 February 2015 the Tribunal, upon the application of P&ID, made a peremptory order pursuant to section 42 of the Arbitration Act 1996, directing the Government to serve its Statement of Defence by 27 February 2015.

29. On 27 February 2015 the Government served a Statement of Defence.

30. On 1 July 2015 the Tribunal held an oral hearing in London and on 12 June 2015 the Government served a Final Submission in writing.

31. On 17 July 2015 the Tribunal delivered a Second Partial Final Award, in which it held that the Government was liable in damages for a repudiatory breach of the GSPA. Pursuant to section 26(3)(c) of the Nigerian Arbitration Act, the second Partial Award stated that the place of arbitration was London.

32. On 17 August 2015 the Tribunal wrote to the parties proposing a case management conference on 3 September 2015 to consider procedural matters for the next and final phase of the arbitration, which would be to determine the quantum of damages payable by the Government.

33. On 20 August 2015 the Government's lawyers wrote to the Tribunal requesting that the conference be postponed to 10 September 2015 so that it could make settlement proposals. The Tribunal agreed.

34. After a further request by the Government for postponement, the conference was fixed for 10 am London time on 28 September 2015.

35. At 9:18 am on 28 September 2015 the Government's lawyers sent the Tribunal an e-mail saying that as a Minister of Justice had not yet been appointed to the new Nigerian government, they would be "unable to make any major contribution to the Case Management Conference scheduled for today and therefore request for a postponement."

36. On 27 October 2015 the Tribunal made Procedural Order No 10 in the form of an order *nisi* giving the Government leave to apply to discharge or vary it provided such application was made before 6 November 2015. It directed P&ID to serve all the documents and evidence upon which it intended to rely for the quantum hearing by 4 December 2015 and the

Government to serve its documents and evidence by six weeks thereafter. No application to discharge or vary was made.

37. On 23 December 2015 the Government applied to the Commercial Court in London for an order under section 68 of the Arbitration Act 1996, setting aside the second Partial Final Award. This jurisdiction is exercisable by the English court only if the seat of arbitration is in England. As the application was out of time, the Government applied for an extension of the time. In support of this application, it filed an affidavit by Ms Folakemi Adelore, explaining the delay. In paragraph 33, he said:

> "Since receipt of the documents on 25 November 2015, Stephenson Harwood and Leading Counsel have been considering the merits of the Applications, advising the Ministry on the same and preparing the Applications. The issue of jurisdiction of this Court and the seat of the Arbitration had first to be considered, in particular given the differing headings on the various procedural orders and the Part Final Award dated June 2014."

38. On the 10 February 2016 Phillips J dismissed the application on the grounds both of delay and lack of substantive merit.

39. On 24 February 2016 the Government commenced its proceedings in the Federal High Court in Lagos.

## E. Conclusion

40. The Tribunal is of opinion that upon the true construction of article 20 of the GSPA the "place of the arbitral proceedings" was agreed to be in London and that London thereby became what in international arbitration is generally referred to as the seat of arbitration. Even if this were not the case, the Tribunal finds that in the course of the arbitration over nearly three years, the parties and the Tribunal have consistently acted upon the assumption that London was the seat of the arbitration. Arbitration is based upon the consent of the parties and the Tribunal considers that the Government must be taken to have consented to this being the correct construction of the GSPA.

Place of arbitration:  London

Signed on behalf of the Tribunal:

Lord Hoffmann
(Presiding Arbitrator)

26 April 2016