# EXHIBIT 16

**Concurrent Originating Motion**

**IN THE FEDERAL HIGH COURT**
**IN THE LAGOS JUDICIAL DIVISION**
**HOLDEN AT LAGOS**

SUIT NO. FHC/L/CS/ $623$/2016

**IN THE MATTER OF THE ARBITRATION AND CONCILIATION ACT CAP. A.18 LAWS OF THE FEDERATION OF NIGERIA 2004 AND THE RULES THEREUNDER**

**IN THE MATTER OF AN ARBITRATION**

**BEFORE**

| | |
|---|---|
| **LORD LEONARD HOFFMANN** | **PRESIDING ARBITRATOR** |
| **SIR ANTHONY EVANS** | **ARBITRATOR** |
| **CHIEF BAYO OJO, SAN** | **ARBITRATOR** |

**BETWEEN**

**THE MINISTER OF PETROLEUM RESOURCES**
**(For and On behalf of the Ministry of Petroleum Resources)**       **APPLICANT**

**AND**

**1. PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED**

| | | |
|---|---|---|
| **2. LORD LEONARD HOFFMANN** | **(PRESIDING ARBITRATOR)** | |
| **3. SIR ANTHONY EVANS** | **(ARBITRATOR)** | **RESPONDENTS** |
| **4. CHIEF BAYO OJO, SAN** | **(ARBITRATOR)** | |

**ORIGINATING MOTION**

**Brought Pursuant to Sections 30 & 48 of the Arbitration and Conciliation Act Cap A18 Laws of the Federation of Nigeria 2004, and under The Inherent Jurisdiction of this Honourable Court**

**TAKE NOTICE** that this Honourable Court will be moved on ……………… the …… day of ……………… 2016 at 9 o'clock in the forenoon or so soon thereafter as Counsel may be heard on behalf of the Applicant for the following reliefs:

1. **AN ORDER** setting aside the decision (partial arbitral award) of Lord Hoffmann, Chief Bayo Ojo, SAN and Sir Anthony Evans titled Procedural Order No. 12 dated 26th April 2016.

2. **AN ORDER** removing Lord Hoffmann, Chief Bayo Ojo, SAN and Sir Anthony Evans as arbitrators and members of the arbitral Tribunal in the arbitral proceedings.

And for such further or other orders as this Honourable Court may deem fit to make in the circumstances.

## GROUNDS OF THE APPLICATION

1. The arbitration proceedings were commenced pursuant to Clause 39 of the Gas Supply and Processing Agreement dated 11 January 2010 ("the Agreement").

2. The substantive law of the Agreement is Nigerian law.

3. The Agreement was to be executed in Nigeria and by parties who are Nigerians.

4. The arbitration proceedings was initiated under the rules of the Arbitration and Conciliation Act, CAP A18 LFN 2004 ("ACA").

5. Parties agreed and the arbitration proceedings were indeed conducted in accordance with the ACA.

6. The parties have effectively agreed that the seat of arbitration is Nigeria and consequently Nigerian law is the *lex arbitri.*

7. The Agreement is closely connected with Nigeria.

8. Nigerian courts have exclusive supervisory jurisdiction in relation to matters arising from the arbitration proceedings.

9. The Respondents confused London as the seat of the arbitration because London is the venue for hearings in the arbitration.

10. The decision (partial arbitral award) titled Procedural Order No. 12 is indeed an "award" even though characterized as "Procedural Order".

11. The decision (partial arbitral award) titled Procedural Order No. 12 purported to determine the seat of the arbitration.

12. By virtue of Section 30 of the ACA, a court may on the application of a party, set aside an arbitral award where the arbitrator(s) has misconducted himself. A court may also set aside an award in circumstances set out in Section 48 of the ACA.

13. The Applicant seeks to set aside the decision (partial arbitral award) titled Procedural Order No. 12 on the ground that the tribunal wrongly exercised its discretion in making the said decision and also misconducted itself to wit:

i. The tribunal in reaching its decision (partial arbitral award) titled Procedural Order No. 12 breached the rules of natural justice.

ii. The decision (partial arbitral award) titled Procedural Order No. 12 is against the public policy of Nigeria.

iii. In the alternative to (i) and (ii) above, the Applicant was under some incapacity at the time the decision (partial arbitral award) titled Procedural Order No. 12 was issued.

14. By section 30 (2) of the ACA, an arbitrator (s) or arbitrator who has misconducted himself may on the application of any party be removed by the court.

Dated this ⁙day of May 2016



Olasupo Shasore, SAN
Bello Salihu
Lateefat Hakeem-Bakare
Safiat Kekere-Ekun ✓
Abiodun Anibaba
Applicant's Counsel
Twenty Marina Solicitors LLP
Sterling Towers
20 Marina Lagos
Telephone: 01-2719368-9

"This Originating Motion is to be served out of the Lagos State and in the Federal Capital Territory, the United Kingdom and the British Virgin Islands"

For Service on:

1st Respondent
Process and Industrial Developments Limited
Trident Chambers
P.O Box 146
Road Town
Tortola
British Virgin Islands

2nd Respondent
Lord Leonard Hoffman
Brick Court Chamber
7-8 Essex Street

London
WC2R 3LD

**3rd Respondent**
**Sir Anthony Evans**
**Essex Court Chambers**
**24 Lincoln's Inn Fields**
**London**
**WC2A 3EG**

**4th Respondent**
**Chief Bayo Ojo, SAN**
**Bayo Ojo & Co.**
**4th Floor, ITF Building**
**6, Adetokunbo Ademola**
**Crescent, Wuse 2**
**Abuja, Nigeria**

**IN THE FEDERAL HIGH COURT**
**IN THE LAGOS JUDICIAL DIVISION**
**HOLDEN AT LAGOS**

**SUIT NO. FHC/L/CS/** 623/2016

**IN THE MATTER OF THE ARBITRATION AND CONCILIATION ACT CAP. A.18 LAWS OF THE FEDERATION OF NIGERIA 2004 AND THE RULES THEREUNDER**

**IN THE MATTER OF AN ARBITRATION**

**BEFORE**

| | |
|---|---|
| **LORD LEONARD HOFFMANN** | **PRESIDING ARBITRATOR** |
| **SIR ANTHONY EVANS** | **ARBITRATOR** |
| **CHIEF BAYO OJO, SAN** | **ARBITRATOR** |

**BETWEEN**

**THE MINISTER OF PETROLEUM RESOURCES**
**(For and On behalf of the Ministry of Petroleum Resources)**          **APPLICANT**

**AND**

**1. PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED**

| | | |
|---|---|---|
| **2. LORD LEONARD HOFFMANN** | **(PRESIDING ARBITRATOR)** | |
| **3. SIR ANTHONY EVANS** | **(ARBITRATOR)** | **RESPONDENTS** |
| **4. CHIEF BAYO OJO, SAN** | **(ARBITRATOR)** | |

**AFFIDAVIT IN SUPPORT**

I, **Safiat Kekere-Ekun,** female Nigerian citizen of 20 Marina Lagos, do hereby make oath and state as follows:

1. I am a legal practitioner in the law firm of Twenty Marina Solicitors LLP, counsel to the Applicant herein and I have the consent of the Applicant and my employers to depose to this affidavit.

2. Unless otherwise stated, the facts deposed to herein derive from my personal knowledge of the facts and circumstances of this case by virtue of my position as described in Paragraph 1 above.

The Arbitration Agreement

3. The parties herein entered into a Gas Supply and Processing Agreement dated 11th January 2010 ("the GSPA"). Clause 20 of the GSPA contains parties' agreement on Applicable Law and Dispute Resolution.

4. By the said Clause 20, parties agreed that the GSPA shall be governed by and construed in accordance with the laws of the Federal Republic of Nigeria. With respect to dispute resolution and the initiation of same, parties agreed that in the event of failure to amicably settle any dispute or difference arising from the Contract, either party may serve on the other party a Notice of Arbitration in accordance with the Rules of the Arbitration and Conciliation Act, CAP A18 Laws of the Federation of Nigeria 2004 ("ACA").

5. It was also agreed at Clause 20 that the **_venue_** of the arbitration shall be London, England or as otherwise agreed by the parties. The Contract did not contain any express agreement as to the **_"seat"_** of arbitration however, the parties effectively agreed that the seat of the arbitration is Nigeria. Attached and marked **Exhibit A** is a copy of the GSPA.

## The Arbitration Proceedings

6. A dispute arose between the parties and by a Notice of Arbitration dated 22nd August 2012 ("Notice of Arbitration"), the Respondent commenced arbitration proceedings against the Applicant. The Notice of Arbitration was issued pursuant to the Rules of the ACA as agreed by the parties in Clause 20 of the Agreement. Attached and marked **Exhibit B** is a copy of the Notice of Arbitration.

7. The arbitration proceedings progressed and on 1st June 2015, a hearing took place at the International Dispute Resolution Center in London. The proceedings having been bifurcated, the hearing of 1st June 2015 was restricted to issues of liability.

8. On 17th July 2015, the tribunal issued its award on liability ("the Award").

9. The Applicant on 24th February 2016 instituted an action in this Honourable Court, in Suit No. FHC/L/CS/264/2016 praying this Honourable Court to extend time within which to challenge the Award. The Applicant by the same action is also seeking to set aside the Award.

10. Subsequent to instituting the action referred to in paragraph 9 above and in furtherance of a previous direction by the tribunal with respect to procedural steps to be taken by the Applicant to wit: filing of Applicant's statement on damages, the Applicant by its letter of 7th March 2016 sought an extension of time to within which it may file its statement on damages. Attached and marked **Exhibit C** is a copy of the letter.

11. This was followed by exchange of correspondence between the parties on the propriety of the grant of the extension of time sought by the Applicant herein and the seat of the arbitration. By its e-mail of 14th March 2016, the Tribunal noted the correspondence between the parties and stated that it would give a ruling on same but "does not invite any further submissions" from the parties. I must say that the Applicant before this e-mail (nor at any time at all during the proceedings) had not made any submissions to the tribunal on the issue of the seat of the arbitration. Attached and marked **Exhibit D** is a copy of the e-mail.

12. The Applicant by its e-mail of the same day responded to the Tribunal clarifying the request made of the Tribunal which is an extension of time and that it has not made an application for the determination of seat which the Applicant does not believe is in controversy. Attached and marked **Exhibit E** is a copy of the e-mail.

13. The tribunal by its e-mail of 16th March 2016 granted the extension sought by the Applicant and remarked that "particularly in view of the *dilatory* manner in which this arbitration has been conducted by the Respondents in the past, such an extension is far too long and would be unfair to the Claimants". Attached and marked **Exhibit F.**

14. In the course of the arbitral proceedings and contrary to the parties' agreement, the 1st Respondent as an afterthought suggested that the seat of the arbitration is London.

15. Notwithstanding the pendency of the action in Suit No. FHC/L/CS/264/2016 referred to above, the Respondent in an attempt to undermine and defeat the said suit by its e-mail of 1st April 2016 applied to the Tribunal to determine the seat of the arbitration and deliver a **RULING** accordingly. Attached and marked **Exhibit G** is a copy of the said e-mail.

16. In order to prevent the Respondent from depriving the Applicant of the opportunity to exercise its constitutional right of access to this court and to prevent the Respondent from foisting on the Applicant and this Honourable Court a *fait accompli*, the Applicant applied to this Honourable Court for an order restraining parties from further participating in the arbitral proceedings pending the determination of the Applicant's substantive application in Suit No. FHC/L/CS/264/2016.

17. Despite being aware of the subsistence of the Applicant's application for interlocutory injunction, the Respondent by its e-mail of 19th April 2016 invited the Tribunal to proceed to give a "prompt ruling in relation to the seat of the arbitration". Attached and marked **Exhibit H** is a copy of the e-mail.

18. On 19th April 2016, the Tribunal responded to the Respondent's e-mail of 19th April 2016 (Exhibit H), indicating that it would give a ruling on the seat of the arbitration if this Honourable Court granted an injunction affecting the arbitration. The tribunal further stated that its members would consult on whether it would be appropriate to give a ruling in advance of any decision by this Honourable Court. Attached and marked **Exhibit I** is a copy of the e-mail.

19. On 20th April, 2016, this Honourable Court heard and granted the Applicant's application for interlocutory injunction. Attached and marked **Exhibit J** is a copy of the order.

20. Despite the pendency of Suit No. FHC/L/CS/264/2016 and the subsistence of a valid order of this Honourable Court restraining parties from further participation in the arbitral proceedings, the Respondent in its e-mail of 21st April 2016 requested the Tribunal to give a ruling on the seat of the arbitration. Attached and Marked **Exhibit K** is a copy of the e-mail.

21. Acceding to the Respondent's request, the Tribunal on 26th April 2016 gave a decision (partial arbitral award) on the seat of the arbitration. The decision (partial arbitral award) was titled Procedural Order No. 12. Attached and marked **Exhibit L** is a copy of the decision (partial arbitral award).

22. In giving its decision (partial arbitral award), the Tribunal was aware of the pendency of Suit No. FHC/L/CS/264/2016 and the order of this Honourable Court which restrained the Applicant from further participating in the arbitral proceedings hence the Applicant could not have presented arguments/submissions to the Tribunal on the question of the seat of the arbitration.

23. The decision (partial arbitral award) sought to be set aside was reached by the Tribunal without affording the Applicant the opportunity to present its case on the question determined by the decision.

24. It would therefore be in the interest of justice to set aside the Tribunal's decision (partial arbitral award) of 26th April 2016 titled Procedural Order No. 12.

25. Given the disposition of the tribunal towards the Applicant in this case climaxed by its pre-conceived opinion as manifested in its ruling granting extension of time to the Applicant (Exhibit F), I am of the belief that the Applicant would not be accorded equal treatment and full opportunity of presenting its case in the arbitration proceedings.

26. It would therefore be in the interest of justice that the arbitrators to wit: Lord Hoffmann, Chief Bayo Ojo, SAN and Sir Anthony Evans, be removed as arbitrators in the arbitration proceedings.

27. The Respondent would not be prejudiced by the grant of this application and the interest of justice will be better served by the grant of this application.

28. I depose to this affidavit in good faith and in accordance with the Oaths Act.

**DEPONENT**

Sworn to at the Federal High Court Registry,
Lagos, this ...../........ day of ...MAY....., 2016.

**BEFORE ME**



**GAS SUPPLY AND PROCESSING AGREEMENT**


**FOR**


**ACCELERATED GAS DEVELOPMENT**


**BETWEEN**


**THE MINISTRY OF PETROLEUM RESOURCES OF THE
FEDERAL REPUBLIC OF NIGERIA**


**AND**


**PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED**


**DATED THE   11TH DAY OF JANUARY 2010**

## TABLE OF CONTENTS

ARTICLE 1 DEFINITIONS AND INTERPRETATIONS.................................... 3

ARTICLE 2 OBJECTIVE ................................................................................ 6

ARTICLE 3 SCOPE OF WORK ...................................................................... 6

ARTICLE 4 FUNDING ................................................................................... 7

ARTICLE 5 DURATION OF THE AGREEMENT............................................ 7

ARTICLE 6 RESPONSIBILITIES OF THE GOVERNMENT .......................... 7

ARTICLE 7 RESPONSIBILITIES OF P&ID ................................................... 8

ARTILCE 8 COMMERCIAL TERMS............................................................. 8

ARTICLE 9 JOINT OPERATING COMMITTEE ........................................... 10

ARTICLE 10 NIGERIAN CONTENT.............................................................. 10

ARTICLE 11 FORCE MAJEURE .................................................................... 11

ARTICLE 12 CONFIDENTIALITY.................................................................. 11

ARTICLE 13 PROPRIETARY INFORMATION ............................................. 12

ARTICLE 14 INDEMNITY ............................................................................. 13

ARTICLE 15 CHANGES TO AGREEMENT................................................... 13

ARTICLE 16 ASSIGNMENT .......................................................................... 13

ARTICLE 17 THIRD PARTIES ....................................................................... 13

ARTICLE 18 LANGUAGE .............................................................................. 14

ARTICLE 19 WRITTEN PRESS RELEASES ................................................... 14

ARTICLE 20 APPLICABLE LAW AND DISPUTE RESOLUTION.................... 14

ARTICLE 21 ENTIRE UNDERSTANDING .................................................... 15

ARTICLE 22 WARRANTIES........................................................................... 15

ARTICLE 23 NOTICES .................................................................................. 16

APPENDIX A ................................................................................................ 18

APPENDIX B ................................................................................................ 19

Ministry of Petroleum Resources

**THIS GAS SUPPLY AND PROCESSING AGREEMENT** is entered into this 11th day of January 2010.

**BETWEEN**

**THE MINISTRY OF PETROLEUM RESOURCES FOR AND ON BEHALF OF THE FEDERAL GOVERNMENT OF NIGERIA (FGN)** (hereinafter referred to as "the Government") whose office address is situated at the 11th Floor, Block D, NNPC Towers, Herbert Macaulay Way, Central Business District, Abuja, Nigeria hereby represented by .Dr........Is.M.a............iu........l.u.t..a.i.Alis.l..........., the Honourable Minister of Petroleum Resources, which expression shall where the context so admits includes its assigns and successors in office of the first part.

**AND**

**PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED** a corporation organised and existing under the laws of the British Virgin Islands and it's assignees (which expression shall, where the context so permits means and include any successors or permitted assigns) hereby represented by.....M.I.C.H.A.E.L...Q.U.I.N.N.hereinafter referred to as "P&ID") of the other part.

Each of the Parties may be referred to individually as "Party" or collectively as "the Parties".

**WHEREAS:**

a) The Government holds as a key strategic objective, the production of adequate quantities of natural gas to satisfy the power generation and other domestic uses needed for national economic growth.

b) The Government of Nigeria has substantial undiscovered potential gas reserves, discovered but undeveloped gas reserves, developed gas reserves and associated gas reserves in its onshore and offshore territories largely in acreage allocated to international and indigenous operators.

c) The Government through the NNPC owns approximately fifty-seven (57) percent of the gas resources in acreage allocated to the international operators.

d)   The Government desires to develop and utilise it's gas resources at optimal capacity to meet the growth in gas demand at the various sectors of the economy including domestic, regional and export markets;

e)   The Government is currently engaged in the development of a strategic natural gas policy, to ensure the smooth achievement of its objective for the effective development of gas in Nigeria to meet short term supply requirement for power generation;

f)   The Government has explored viable structures that could be used to meet the highlighted objectives and considered P&ID as capable of implementing and executing the Project;

g)   The Government has identified certain number of oil/gas flared points and desires to eliminate gas flaring and wishes to set up a domestic LPG production base as well as make the lean gas produced available for various other domestic uses.

h)   P&ID possesses the requisite finance, technology and competence for the fast track development of the Project.

i)   P&ID has undertaken all necessary studies, including the identification of suitable associated gas fields and is ready to commence a fast track development of the project in accordance with the terms of this Agreement.

j)   The Parties are entering into this Agreement to ensure the fastrack implementation of the Project and to ensure the timely provision of pipeline quality Lean Gas for power generation.

**IN CONSIDERATION OF THE MUTUAL RIGHTS, INTERESTS, COVENANTS AND OBLIGATIONS CONTAINED HEREIN IT IS HEREBY AGREED BETWEEN THE PARTIES AS FOLLOWS:**

1.    <u>DEFINITIONS AND INTERPRETATIONS</u>

i.    "Affiliate" means with respect to a Party, any company or legal entity that Controls, or is controlled by, such Party or is controlled by a company or legal entity that also controls such Party. For purposes of this Agreement, "control" means the right, directly or indirectly, to exercise fifty percent (50%) or more of the voting rights in the election of directors, or if there are no such voting

Page 3 of 19

rights, ownership of fifty percent (50%) or more of the equity share capital or other ownership interests, and "controls and "controlled shall be construed accordingly;

ii.   "Agreement" means this Gas Processing Agreement;

iii.   "CDM Project" means a clean development project as provided for in the Kyoto Convention and a CDM Project is duly authorised to engage in approved market based mechanisms in relation the Carbon Credits;

iv.   "Effective Date" means the date of signing of this Agreement;

v.   "GPFs" means the Gas Processing Facilities to be constructed and operated at the Site and off-shore from the Site where applicable;

vi.   "Lean Gas" means pipeline quality gas having a composition of not less than 95 mol percent Methane and Ethane;

vii.   "MMSCuFD" means Millions of Standard Cubic Feet per Day;

viii.   "NGLs" means all hydrocarbons remaining after processing the Wet Gas removing the Lean Gas;

ix.   "Parties" means the Ministry of Petroleum Resources of the Federal Government of Nigeria represented by the Honourable Minister of Petroleum Resources and Process and Industrial Developments Limited;

x.   "Pioneer Status" means tax free status in Nigeria for P&ID and its assignees in relation to the Project encompassing the provision of equipment and materials for the project and as operators of the plant for the first 5 years of operations.

xi.   "Project" means the establishment of the GPFs and the supply of Wet Gas thereto and the delivery of Lean Gas and their successful operation by the Parties as set out in this Agreement;

xii   Project Team" means the management team appointed by P&ID to carry out the implementation of the Project and shall include the P&ID nominees to the Joint Operating Committee.

xiii."Proprietary Information" means all data and information generated pursuant to the work carried out by the parties including but not limited to reports, documents, drawings and graphs, and any patentable inventions made during and as a

result of all work carried out by the P&ID Project Management Team for this project, inclusive of any and all patents or patent applications with regard thereto;

xiv.   "Site" means the land in Calabar on which the GPFs are located.

xv.   "Start Date" means the earliest date on which the Government commences the regular supply and delivery of not less than 150 MMSCuFD of Wet Gas to the Site;

xvi."Wet Gas" means associated gas removed, during oil production, at the separator having a Propane content of not less than 3.5 mol percent and a Butane content of not less than 1.8 mol percent, compressed and delivered, via pipeline to the Site;

Except where expressly provided to the contrary in this Agreement:

the Schedules and the Appendices form part of this Agreement and in the event of any conflict between the main body of this Agreement and a Schedule the main body of this Agreement shall prevail;

reference to any Party or any Person includes that Party's or that Person's successors and permitted assigns;

reference to any consent not to be unreasonably withheld is deemed to be qualified by the requirement that such consent shall not be unreasonably conditioned or delayed;

reference to include and including is deemed to be qualified by the additional term without limitation;

reference to any publication, statute, rule, regulation, instrument or standard means the same as amended, supplemented or replaced from time to time;

reference to any agreement means the same as amended, supplemented or replaced from time to time;

in the computation of periods of time from a specified day or Day to a later specified day or Day:

(i)   from means from and including and until and to means to and including; and

Page 5 of 19

(ii)   any requirement that an action may or shall be taken within a specified number of Days means that such action may or shall be taken within the number of Days so specified starting at 00:00 hours local Nigerian time on the Day on which the requirement to take such action arose;

## 2.   OBJECTIVE

The objective of this Agreement is to provide for the construction of Gas Processing Facilities by P&ID encompassing the provision of Wet Gas by the Government and the processing of the said Wet Gas by P&ID utilising two or more process streams with a total capacity of up to 400 MMSCuFD together with all utilities, support and maintenance facilities at the Site and the provision of Lean Gas by P&ID to the Government as set forth in this Agreement and its Appendices and to operate and maintain the facilities in an efficient manner.

## 3.   SCOPE OF THE WORK

The scope of works of this Agreement is as follows:

a.   P&ID shall construct GPFs on the Site allocated to them by Cross River State Government with related ancillary plant and equipment off-shore as required. The GPFs shall be constructed on a timely basis to ensure the earliest possible delivery to the Government, or its nominees, of approximately 340 MMSCuFD Lean Gas for power generation and industrial use by third parties.

b.   To ensure this fastrack is achieved P&ID will construct and incorporate two or more process streams with a total capacity of 400 MMSCuFD together with all utilities, maintenance and support facilities at the Site in accordance with the schedule of works forming Appendix B hereto.

c.   The Government shall make available at the P&ID Site boundary, 400 MMSCuFD Wet Gas (free of water) in the manner set out in Appendix A having a minimum $C_3$ (Propane) content of 3.5% mol and $C_4$ (Butane) content of 1.8% mol from OMLs 123 and OML 67 or such other locations as the Government may decide from time to time to ensure the ongoing feedstock delivery volume and quality requirements for the duration of this Agreement as defined under Article 5 of this Agreement.



    d.   P&ID will process the Wet Gas to be supplied by the Government and shall provide to the Government or its nominees approximately 85% of the wet gas feedstock molecular volume in the form of Lean Gas at the Site boundary.

## 4.   FUNDING

a. Save as otherwise provided in this Agreement, each Party shall bear the costs and expenses of its own personnel during the period of this Agreement.

## 5.   DURATION OF THE AGREEMENT

This Agreement shall come into being on the Effective Date being the date of signing of the Agreement as defined in Article 1 herein and shall remain in force for a period of twenty (20) years with effect from the Start Date of the Agreement after which it shall automatically terminate without prior notice to the Parties except where extended by a mutual agreement of the Parties or until the Capital Cost of the Project is fully repaid whichever occurs latest subject to the Government at all times having the right to audit the Accounts of the P&ID .

## 6.   RESPONSIBILITIES OF THE GOVERNMENT

a)   The Government shall deliver to the Site boundary the agreed quantities and quality of gas as defined under Article 3c and in the manner set out in Appendix A of this Agreement;

b)   The Government shall ensure that all necessary pipelines and associated infrastructure are installed and all requisite arrangements with agencies and/or third party are in place to ensure the supply and delivery of Wet Gas in accordance with Article 3 so as to facilitate the timely implementation of gas processing by the GPFs as provided for in this Agreement.

c)   The Government agrees to assist P&ID, and where necessary intercede with the relevant Government agencies, to obtain all requisite permits, licenses and approvals required from the relevant Government agencies or others for the fastrack implementation of this project.



d) If the Government or any of its agencies changes or amends any statute, rule, regulation, instrument or standards, and such change or amendment adversely affects the rights of P&ID under this Agreement, the Parties shall amend the terms of this Agreement in a manner that will restore the rights of P&ID. The Government shall grant to P&ID all such waivers and exemptions necessary to ensure that the rights of P&ID are not adversely affected by any change or amendment to statute, rule, regulation, instrument or standards.

## 7.   RESPONSIBILITIES OF P&ID

a) P&ID shall use best endeavours to ensure the fastrack implementation of this Project to construct and incorporate two or more process streams with a total capacity of 400 MMSCuFD together with all utilities maintenance and support facilities at the Site. Thereafter P&ID shall maintain and operate the GPFs on a professional basis to ensure a regular supply of Lean Gas (approximately 340 MMSCuFD) for power generation;

b) c) P&ID shall, during the Project implementation period, submit to the JOC as set out in Article 9 updated work programs or such other documentation as may be necessary to enhance the development of the Project;

c) P&ID shall do all that is necessary to obtain relevant approvals required for the success of the Project.

## 8.   COMMERCIAL TERMS

a) The Government shall deliver to the Site boundary, 400 MMSCuFD of Wet Gas as set out in Article 3 c) and in Appendix A of this Agreement having a minimum C3 (Propane) content of 3.5% mol and C4 (Butane) of 1.8% mol at No Cost to P&ID.

b) P&ID will process the Wet Gas, recompress the residual Lean Gas, representing approximately 85% of the Wet Gas feed, and make it available, for power generation or other Industrial usage at the discretion of the Government, at the Site boundary at No Cost to the Government.

c) Title to and ownership of the Wet Gas to be delivered by the Government to the Site shall remain vested in the Government and shall be delivered back to the Government at the Site boundary



Page 8 of 19

after processing in the form of Lean Gas but the NGLs removed from the Wet Gas during processing shall be retained by P&ID and shall be deemed the sole property of P&ID and the said NGLs may be sold by P&ID either domestically within Nigeria or exported in accordance with commercial criteria.

d) P&ID shall provide all funding necessary for the timely construction, implementation and efficient operation of the GPFs and the said GPFs will be the sole property of P&ID and may be sold or otherwise disposed of by P&ID subject always to the provisions of this Agreement PROVIDED that Government shall be given the right of first refusal.

e) As further consideration P&ID shall transfer to the Government or its nominee a total of ten percent (10%) of the Equity of P&ID in the following manner:

    (i)    P&ID shall transfer to the Government or it's nominee five percent (5%) the Equity of P&ID upon the commencement of the delivery of not less than 150 MMSCuFD of Wet Gas to the Site as set forth as Phase 1 in Appendix A

    (ii)    P&ID shall transfer to the Government or its nominee a further five percent (5%) of the Equity of P&ID the said Equity to be transferred pro rata as the delivery of the remaining 250 MMSCuFD is successfully implemented as set forth as Phase 2 in Appendix A.

    (iii)    All of the Equity to be transferred under this Article 8 (f) shall consist of fully paid Ordinary Shares free of all liens and charges and no sums whatsoever shall be payable by the Government in respect of the Equity so transferred.

f) Following the initial transfer of five percent (5%) Equity to the Government or its nominee as provided for at Article 8 (e) above no new shares whether Ordinary, Preference or otherwise may be issued without the written agreement of the Government such agreement not to be unreasonably withheld and the Government shall be entitled to representation on the Board of P&ID in proportion to the Equity held by the Government at any given time.

g) The Parties are aware that the 24inch Adanga pipeline presently under construction from the Addax operated OML 123 directly to Calabar and due for completion in 2010 will have a throughput capacity of 600 MMSCUFD and can adequately provide the required first delivery of 150 MMSCuFD of Wet Gas to the Site and that an additional pipeline of up to 70km in length may be required to link up to the Adanga pipeline in order to facilitate the delivery of the remaining 250 MMSCuFD of Wet Gas to the Site from other sources to be

Page 9 of 19

chosen by the Government. It such a requirement is necessary, P&ID undertakes to build and install the said additional pipeline to provide for the delivery of the remaining 250 MMScuFD of Wt Gas to the Site, at no cost to the Government, and P&ID will retain the ownership and provide the maintenance for the pipeline.

h) P&ID shall enjoy Pioneer Status with no import duties, clearance charges or taxes payable within Nigeria in respect of all equipment and materials utilised in the construction and commissioning of the GPFs and with no taxes payable in respect ot the operation of the GPFs for a period of five (5) years from the commencement of commercial operations at the GPFs.

i) The Government will actively support the designation of the Project as a CDM Project and P&ID will take all necessary steps to achieve such designation. All earnings or revenues arising from the Project status as a CDM Project will accrue 50% (fifty percent) to P&ID and 50 (fifty percent) to the Government.

## 9.   JOINT OPERATING COMMITTEE

a)   The Joint Operating Committee (JOC) established by the Parties under the previous Memorandum of Understanding dated 22nd July 2009 and comprising of two representatives from the Ministry of Petroleum Resources and two representatives from NNPC nominated by the Government and two representatives nominated by P&ID, shall meet at regular intervals during the Project implementation period to discuss in detail the implementation progress of the Project. Where deemed necessary by any JOC member of the Government or P&ID shall nominate such other expert support from other agencies as may be necessary to ensure that Project timelines are maintained.

b)   The JOC shall carry out further activities as may be determined by the Parties.

c)   Any cost that may accrue from the JOC activities shall be borne equally by the Parties.

## 10.   NIGERIAN CONTENT

a)   The Nigerian content of project development, construction and operation shall be maximised to the extent reasonably possible without detracting from the fastrack implementation schedule.

**11.    FORCE MAJEURE**

a)    Any failure or delay on the part of either Party in the performance of its obligations or duties under this Agreement, shall be excused to the extent attributable to force majeure save for obligations to pay sums due and payable. A force majeure situation includes delays, defaults or inability to perform under this Agreement due to any event beyond the reasonable control of either Party. Such event may be, but is not limited to, any act, event, happening, or occurrence due to natural causes, acts or perils of navigation, fire, hostilities, war (declared or undeclared), blockage, labour disturbances, strikes, riots, insurrection, civil commotion, quarantine restrictions, epidemics, storms, floods, earthquakes, accidents, blowouts, lightning, and, acts of or orders of the Government. If activities under this Agreement are delayed, curtailed or prevented by force majeure, then the time for carrying out the obligation and duties thereby affected, and rights and obligations hereunder, shall be extended for a period equal to the period of such delay.

b)    The Party who is unable to perform its obligations as a result of the force majeure event shall promptly notify the other Party thereof not later than forty-eight (48) hours after becoming aware of the establishment of the force majeure event, stating the cause, and both Parties shall do all that is reasonably within their powers to remove such cause.

**12.    CONFIDENTIALITY**

Each of the Parties, their employees, agents and representatives hereby undertake that they shall not, whether during the period of this Agreement or at any time after the expiration or termination thereof, disclose any information acquired by it, from or through the other Party (either directly or indirectly, oral or written) to any person, firm or company. Such information shall include all information, data, designs, drawings, computer programmes, recordings, writings, correspondences and any other technical, commercial or operational information relating to the other Party's business and activities or any of its Affiliate companies ("Confidential Information").

The above provisions shall not extend to information which:

(i)    Prior to the time of disclosure or acquisition has become lawfully in the public domain or was obtained by the Party disclosing it without any confidentiality obligations, or was obtained from a third party who is lawfully entitled to be in possession of such information;

(ii)    Any Party shall disclose, where such disclosure is demanded by an order of a court of competent jurisdiction, or a tax authority, or a lawfully constituted commission of inquiry, provided that prior to making such disclosure, written notification of the demand received by such Party has been given to the other Party and thereafter the Party being compelled to make the disclosure can do so.

## 13.    PROPRIETARY INFORMATION

(i)    All intellectual property and other proprietary rights in and to the Proprietary Information shall be the joint property of the Parties;

(ii)    The Parties and their Affiliates shall only be entitled to use the Proprietary Information in the evaluation, pursuit and development of the project and for no other purpose.

(iii)    The Parties agree that Proprietary information shall be confidential and that no Party or its Affiliates shall use, copy, sell, trade, publish or otherwise disclose the Proprietary information to anyone save as otherwise provided in this Agreement or with the written approval of the other Party. Notwithstanding the foregoing, a Party may disclose Proprietary information if and to the extent:

(a)    that such information is already in the public domain, other than as a result of a breach of the obligation with respect to Proprietary information and Confidential information under this Agreement by any of the Parties;

(b)    required to be disclosed under applicable laws including rules of applicable stock exchange, tax authority, Governmental authorities or courts or competent panel of enquiry;

(c) such disclosure is to be made to its Affiliates and the directors agents, officers and employees of the Party and their Affiliates; and

(d) such disclosure to professional advisers and consultants of any Party and its Affiliates on a need to know basis.

## 14.   INDEMNITY

Each Party shall be responsible for any claims made by or injury to its representative(s) and in respect of damage to such Party's property while such representative is providing services arising from the activities under this Agreement. In that regard, each Party agrees to indemnify, defend and hold harmless the other Party from and against any claims, or causes of action arising out of or in connection with such personal injury or damage to property.

## 15.   CHANGES TO AGREEMENT

No amendments, modifications or changes to this Agreement shall be valid unless approved in writing by both Parties.

## 16.   ASSIGNMENT

Either Party may assign its rights and obligations to an Affiliate as defined in this Agreement or to a designated financial institution where such an assignment comprises an integral constituent element of the financing structure of the Project but assignment to a non-affiliate shall not be permitted without the written consent of the other party such consent not to be unreasonably withheld but in all cases of assignment the assignor shall not be released of any of its liabilities and responsibilities under this Agreement.

## 17.   THIRD PARTIES

a) This Agreement is intended for the Parties hereto, and nothing contained in this Agreement shall be construed to create any duty to, standard of care with reference to, or rights in any person not a Party to this Agreement. This Agreement shall not confer any right to any third party claiming the right to entitlement or benefits under this Agreement.

b) No Partnership: None of the provisions of this Agreement shall be deemed to constitute a Partnership between the Parties, and no Party shall have the authority to bind or shall be deemed to be the agent of the other Parties in any way.

## 18. LANGUAGE

The language for the purposes of administering this Agreement shall be English.

## 19. WRITTEN PRESS RELEASES

The Parties shall consult, coordinate and agree on the release of any written press releases, announcements or responses to media enquiries concerning this Agreement in advance of any such announcement. If a Party or its Affiliate wishes to issue or make a press release, it shall not do so unless prior to its release, such Party furnishes to the other Party a copy of such press release for its review and written approval (which approval shall not be unreasonably withheld).

The Party shall provide a copy of such press release and related background information to the other Party within a minimum of seven (7) days, if practical, but in any event not less than seventy-two (72) hours, prior to its planned release.

## 20. APPLICABLE LAW and DISPUTE RESOLUTION

The Agreement shall be governed by, and construed in accordance with the laws of the Federal Republic of Nigeria.

The Parties agree that if any difference or dispute arises between them concerning the interpretation or performance of this Agreement and if they fail to settle such difference or dispute amicably, then a Party may serve on the other a notice of arbitration under the rules of the Nigerian Arbitration and Conciliation Act (Cap A18 LFN 2004) which, except as otherwise provided herein, shall apply to any dispute between such Parties under this Agreement. Within thirty (30) days of the notice of arbitration being issued by the initiating Party, the Parties shall each appoint an arbitrator and the arbitrators thus appointed by the Parties shall within fifteen (15) days from the date the last arbitrator was appointed, appoint a third arbitrator to complete the tribunal. In the event that the arbitrators do not agree on the





Page 14 of 19

appointment of such third arbitrator within the aforementioned fifteen (15) days, or any extension of such deadline that the Parties may mutually agree, such an arbitrator or third arbitrator shall be appointed by the President of the Court of Arbitration of the International Chamber of Commerce ("ICC") in accordance with the relevant ICC rules on the application of either Party (notice of the intention to apply having been duly issued to the other) and, when appointed, the third arbitrator shall convene meetings of the arbitration panel, act as chairman thereof and decide the differences or dispute should the arbitrators fail to reach a unanimous decision. No arbitrator shall be appointed if such person has been employed or contracted by either of the Parties or their respective Affiliates within five (5) years prior to the notice of arbitration.

When an arbitrator refuses or neglects to act, or is incapable of acting or dies, a new arbitrator shall be appointed in his place and the above provisions of appointing arbitrators shall, mutatis mutandis, govern the appointment of such arbitrator.

The arbitration award shall be final and binding upon the Parties. The award shall be delivered within two months after the appointment of the third arbitrator or within such extended period as may be agreed by the Parties. The costs of the arbitration shall be borne equally by the Parties. Each Party shall, however, bear its own lawyers' fees.

The venue of the arbitration shall be London, England or otherwise as agreed by the Parties. The arbitration proceedings and record shall be in the English language.

The Parties shall agree to appropriate arbitration terms to exclusively resolve any disputes arising between them from this Agreement.

## 21.   ENTIRE UNDERSTANDING

This Agreement including Appendix A and Appendix B comprises the full and complete understanding of the Parties hereto with respect to all the matters addressed in this Agreement and the said Appendix A and Appendix B shall form an integral part of this Agreement.

## 22.   WARRANTIES

Each Party represents and warrants that it has the right and authority to enter into this Agreement and to perform and observe all of its

obligations under this Agreement and that the execution, delivery and performance of this Agreement has been duly and validly authorised by all necessary corporate or other action, and that by entering into this Agreement, it will not violate, conflict with, or cause a material default under any other contract, agreement, indenture, decree, judgement, undertaking, conveyance, lien, or encumbrance to which it is a party or by which it may become subject.

23.   **NOTICES**

Any notice, request, demand or other correspondence required under this Agreement or any notice which either Party may desire to give to the other Party shall be in writing and shall be hand-delivered, sent by facsimile, or similar means of delivery to the Party intended to receive the same, as the case may be, and shall be effective upon receipt at the following addresses:

**If to Government:** Honourable Minister of Petroleum Resources
NNPC Towers
Herbert Macaulay Way
Abuja, Nigeria

**If to: Process and Industrial Developments Limited (P&ID)**

The Chairman
Process and Industrial Developments Limited
15B Buchanan Crescent,
Off Aminu Kano Crescent
Wuse II, Abuja
FCT, Nigeria

Attention: Mr. Neil C. Hitchcock, Projects Director

Page 16 of 19

**IN WITNESS** whereof the Parties have executed this AGREEMENT by their duly authorised signatories effective the day and year first above written:

**SIGNED, SEALED AND DELIVERED**

By the within named .............................................................................
**HON. MINISTER OF PETROLEUM RESOURC**

In the presence of:

Name: GRACE  E. O. TAIGA

Address: MINISTRY  OF  PETROLEUM  RESOURCES

Occupation: DIRECTOR  LEGAL

Signature: .............................................

**SIGNED, SEALED AND DELIVERED**

By the within named .............................................................................
**PROCESS AND INDUSTRIAL DEVELOPMENTS LTD**

In the presence of:

Name: MUHAMMAD  KUCHAZI

Address: 43 MADEIRA ST. JMANI ESTATE MAITAMA ABUJA

Occupation: BUSINESS

Signature: .............................................

Page 17 of 19

# APPENDIX A

**Delivery of Wet Gas to P&ID**

Phase 1    During or before the last quarter of 2011 a continuous supply of 150 MMSCuFD  of Wet Gas, having a minimum Propane content of 3.5 mol% and minimum Butane content of 1.8 mol%, will be supplied to the Site for processing by P&ID.

Phase 2    On or before the third quarter of 2012 a further additional continuous supply of 250 MMSCuFD  of Wet Gas, having a minimum Propane content of 3.5 mol% and minimum Butane content of 1.8 mol%, will be supplied to the Site for processing by P&ID.

**Delivery of Lean Gas to the Government**

Phase 1    During the last quarter of 2011 following supply of the 150 MMSCuFD of Wet Gas to the Site, P&ID will process the gas and return to the Government, at the Site, a continuous supply of Lean Gas amounting to approximately 85% by volume of the Wet Gas provided. The Lean Gas will be compressed to 92 bar G.

Phase 2    On or before the third quarter of 2012 following supply of the additional 250 MMSCuFD of Wet Gas to the Site, P&ID will process the gas and return to the Government, at the Site boundary, a continuous supply of Lean Gas amounting to approximately 85% by volume of the Wet Gas provided. The Lean Gas will be compressed to 92 bar G.

# APPENDIX B

SCHEDULE OF WORK





## Process and Industrial Developments Limited

Engineers, Consultants and Managing Contractors

> LIAISON OFFICE: 12, VAAL STREET,
> OFF RHINE STREET,
> MINISTERS HILL, MAITAMA,
> ABUJA, FCT, NIGERIA
> TEL: +234 9 413 4098
> EMAIL: INFO@PANDID.NET

The Honourable Minister of Petroleum Resources,
Federal Ministry of Petroleum Resources,
Block D, 11ᵗʰ Floor,
NNPC Towers,
Herbert Macaulay Way,
Central Business District,
P.M.B. 449, Abuja.

OFFICE OF THE HONOURABLE MINISTER

2 2 AUG 2012

22ⁿᵈ August 2012

Honourable Minister,

**Re:    Gas Supply and Processing Agreement for Accelerated Gas Development between the Ministry of Petroleum Resources of the Federal Republic of Nigeria and Process and Industrial Developments Limited dated 11 January 2010 - Notice of Arbitration**

We refer to the above-referenced agreement dated 11 January 2010 ("the Agreement"). As you will be aware, a dispute has arisen between the parties in respect of the performance of the Agreement concerning the failure of the Government of Nigeria ("the Government") to make available to Process and Industrial Developments Ltd ("P&ID") the quantity of wet gas stipulated in clause 3(c) and Appendix A of the Agreement for Phase 1 of the Project.

P&ID have sought to resolve this matter amicably with the Government. We have written to you and to other Government departments and officials on a number of occasions identifying the Government's failure to comply with its obligations under the Agreement, seeking assistance and intervention with other parties, and, more recently, making proposals for the amendment of the Agreement so as to permit the parties to work together to progress the implementation of the Project. We appreciate that you, your department, and many others, have taken steps to resolve the issues that have

TRIDENT CHAMBERS, P.O. BOX 146, ROAD TOWN, TORTOLA.
BRITISH VIRGIN ISLANDS.
EMAIL: INFO@PANDID.NET

**231**

arisen. Unfortunately, however, the Government remains in breach of its obligations to P&ID under the Agreement.

In the circumstances, P&ID is compelled to refer this dispute to arbitration in accordance with clause 20 of the Agreement and would respectfully ask that you treat this letter as its Notice of Arbitration for those purposes.

For convenience, we set out the terms of clause 20 in full:

"**20.  APPLICABLE LAW and DISPUTE RESOLUTION**
*The Agreement shall be governed by, and construed in accordance with the laws of the Federal Republic of Nigeria.*

*The Parties agree that if any difference or dispute arises between them concerning the interpretation or performance of this Agreement and if they fail to settle such difference or dispute amicably, then a Party may serve on the other a notice of arbitration under the rules of the Nigerian Arbitration and Conciliation Act (Cap A18 LFN 2004) which, except as otherwise provided herein, shall apply to any dispute between such Parties under this Agreement.  Within thirty (30) days of the notice of arbitration being issued by the initiating Party, the Parties shall each appoint an arbitrator and the arbitrators thus appointed by the Parties shall within fifteen (15) days from the date the last arbitrator was appointed, appoint a third arbitrator to compete the tribunal.   In the event that the arbitrators do not agree on the appointment of such third arbitrator within the aforementioned fifteen (15) days, or any extension of such deadline that the Parties may mutually agree, such an arbitrator or third arbitrator shall be appointed by the President of the Court of Arbitration of the International Chamber of Commerce ("ICC") in accordance with the relevant ICC rules on the application of either Party (notice of the intention to apply having been duly issued to the other) and, when appointed, the third arbitrator shall convene meetings of the arbitration panel, act as chairman thereof and decide the differences or dispute should the arbitrators fail to reach a unanimous decision.   No arbitrator shall be appointed if such person has been employed or contracted by either of the parties or their respective Affiliates within five (5) years prior to the notice of arbitration.*

*When an arbitrator refuses or neglects to act, or is incapable of acting or dies, a new arbitrator shall be appointed in his place and the above provisions of appointing arbitrators shall, mutatis mutandis, govern the appointment of such arbitrator.*

*The arbitration award shall be final and binding upon the Parties.  The award shall be delivered within two months after the appointment of the third arbitrator or within such extended period as may be agreed by the parties.  The costs of the arbitration shall be borne equally by the Parties. Each Party shall, however, bear its own lawyers' fees.*

**232**

*The venue of the arbitration shall be London, England or otherwise as agreed by the Parties. The arbitration proceedings and record shall be in the English language*

*The Parties shall agree to appropriate arbitration terms to exclusively resolve any disputes arising between them from this Agreement."*

In accordance with the provisions of Article 3 of Schedule 1 to the Nigerian Arbitration and Conciliation Act:

(1) Please accept this letter as P&ID's demand that any and all disputes concerning the interpretation or performance of the Agreement be referred to arbitration, including but not necessarily limited to the dispute identified above in respect of the Government's breach(es) of clause 3 and Appendix A of the Agreement.

(2) The names and address of the parties are:

(a) (for the Ministry of Petroleum Resources (for an on behalf of the Federal Government of Nigeria)

> The Honourable Minister of Petroleum Resources
> NNPC Towers
> Herbert Macaulay Way
> Abuja
> Nigeria

(b) (for P&ID)

> The Chairman
> Process and Industrial Developments Ltd
> 15B Buchanan Crescent
> Off Aminu Kanu Cresent
> Wuse II, Abuja, FCT
> Nigeria
>
> Attn: Mr. Neil C. Hitchcock, Projects Director

(c) Please note that the current address of P&ID is as follows:

> 12, Vaal Street,
> off Rhine Street, Ministers Hill,
> Maitama,
> Abuja,
> FCT, Nigeria

(3) The arbitration agreement is contained in clause 20 of the Agreement set out above.

Page 3 of 4

**233**

(4) The dispute arises out of the Agreement.

(5) The claim is for breach of contract as described above. P&ID reserves the right to make such further or alternative claims as it may be advised to make in relation to the matters referred to above. At present, P&ID estimates its loss of profit as a result of the matters referred to above over the 20 year term of Phase 1 of the Project to be not less than US$1,991,816,709 (one billion nine hundred and ninety one million eight hundred and sixteen thousand seven hundred and nine US Dollars). P&ID reserves the right to modify the amount of its claim, including so as to claim in respect of other losses and/or in respect of expenses. P&ID will also claim interest on such sums as may be awarded to it as well as its legal costs and the costs of the arbitration.

(6) P&ID will be seeking damages and/or other relief.

(7) Clause 20 of the Agreement provides for the constitution of the arbitral tribunal. P&ID shall appoint its arbitrator within 30 days of the date of receipt by the Government of this notice. P&ID calls on the Government to appoint its arbitrator also within 30 days of the date of receipt of this notice.

For the avoidance of doubt, nothing in this letter is intended to amount to an acceptance on the part of P&ID of any repudiatory breach of the Agreement on the part of the Government. So far as P&ID is concerned, the Agreement remains in full force. In particular, P&ID intends .notwithstanding the present dispute and the commencement of arbitration to proceed with Phase 2 of the Agreement.

As with our letter of 27 July 2012, the necessity of writing to you in these terms and that it has been necessary to give this notice of commencement of arbitration is very much regretted. Notwithstanding that, it remains our earnest hope that the present difficulties can be resolved to the satisfaction of both parties so that the Project can be implemented for the benefit of all concerned as originally envisaged.

Yours respectfully,

Neil C. Hitchcock
Projects Director

**234**

**TWENTY MARINA SOLICITORS LLP**
BARRISTERS & SOLICITORS

STERLING TOWERS
20 MARINA LAGOS
P.O. BOX 9945 LAGOS

TELEPHONE: 2912225
FAX: 2719882, 4622686
E-MAIL: TMS@TMSLLP.COM
WWW.TMSLLP.COM

7 March 2016

| | | |
|---|---|---|
| Lord Leonard Hoffman | Sir Anthony Evans | Chief Bayo Ojo, SAN |
| Brick Court Chamber | Essex Court Chambers | Bayo Ojo & Co. |
| 7-8 Essex Street | 24 Lincoln's Inn Fields | 4th Floor, ITF Building |
| London | London | 6, Adetokunbo Ademola |
| WC2R 3LD | WC2A 3EG | Crescent, Wuse 2 |
| | | Abuja, Nigeria |

By e-mail only: 'Leonard Hoffman' leonard.hoffman@brickcourt.co.uk; 'Sir Anthony Evans' AEvans@essexcourt.net; 'Chief Bayo Ojo, SAN cabayoojo@aol.com

Dear Tribunal,

**RE: PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED AND THE MINISTRY OF PETROLEUM RESOURCES OF THE FEDERAL MINISTRY OF NIGERIA**

We write in respect of the above arbitration.

We are aware of the 11th of March 2016 date for the Respondent to file its statement on damages.

We are preparing our statement on damages however we are yet to conclude due to the process of the government approval for appointment of exerts.

In light of the above, we hereby request for a further extension of time to the 1st week in June 2016 to enable us file our statement on damages.

As the Tribunal is aware, we are dissatisfied with the Award on liability; we are currently contesting the Award in a court of law.

We thank you in anticipation of your granting the further extension.

Yours faithfully,

Olasupo Shasore, SAN
**Twenty Marina Solicitors LLP**

**Safiat Kekere-ekun**

**Subject:**  FW: ***SPAM*** Re: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS
DEVELOPMENTS LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

**From:** Leonard Hoffmann [mailto:leonard.hoffmann@brickcourt.co.uk]
**Sent:** Monday, March 14, 2016 8:34 AM
**To:** Olasupo Shasore <os@shasore.com>; Seamus Andrew <seamus.andrew@scaontier.com>
**Cc:** cabayoojo@aol.com; Sir Anthony Evans <AEvans@essexcourt.net>; Kate Trott <kate.trott@brickcourt.co.uk>;
safiat.kekere-ekun@tmsllp.com; Ian Sellars <Ian.Sellars@scaontier.com>; Lateefat Hakeem-Bakare <lateefat.hakeem-
bakare@tmsllp.com>; Abiodun Anibaba <abiodun.anibaba@tmsllp.com>
**Subject:** ***SPAM*** Re: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND
MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

Dear colleagues

The Tribunal notes the correspondence between the parties as to (1) the seat of arbitration (2) the respondent's application
for an extension of the time for it to serve its evidence.  The Tribunal will shortly give a ruling on these matters and does not
invite any further submissions.

Yours sincerely

Leonard Hoffmann
(Presiding Arbitrator)

1

## Safiat Kekere-ekun

**Subject:**                FW: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

**From:** Olasupo Shasore [mailto:os@shasore.com]
**Sent:** Monday, March 14, 2016 8:39 AM
**To:** Leonard Hoffmann <leonard.hoffmann@brickcourt.co.uk>; Seamus Andrew <seamus.andrew@scaontier.com>
**Cc:** cabayoojo@aol.com; Sir Anthony Evans <AEvans@essexcourt.net>; Kate Trott <kate.trott@brickcourt.co.uk>; safiat.kekere-ekun@tmsllp.com; Ian Sellars <Ian.Sellars@scaontier.com>; Lateefat Hakeem-Bakare <lateefat.hakeem-bakare@tmsllp.com>; Abiodun Anibaba <abiodun.anibaba@tmsllp.com>
**Subject:** Re: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

Dear Tribunal

Respondent has not made an application for determination of seat which we do not believe is in controversy. We merely asked for extension of time

Best Regards

Sent from my Samsung Galaxy smartphone.

1

**Safiat Kekere-ekun**

**Subject:** FW: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

**From:** Leonard Hoffmann [mailto:leonard.hoffmann@brickcourt.co.uk]
**Sent:** Wednesday, March 16, 2016 9:16 AM
**To:** Olasupo Shasore <os@shasore.com>; cabayoojo@aol.com; 'Sir Anthony Evans' <AEvans@essexcourt.net>; Seamus Andrew <seamus.andrew@scaontier.com>
**Cc:** Kate Trott <kate.trott@brickcourt.co.uk>; safiat.kekere-ekun@tmsllp.com; Ian Sellars <Ian.Sellars@scaontier.com>; Lateefat Hakeem-Bakare <lateefat.hakeem-bakare@tmsllp.com>; Abiodun Anibaba <abiodun.anibaba@tmsllp.com>
**Subject:** Re: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

Dear colleagues

The Tribunal has considered the Respondent's application for an extension of the time to serve its statement of defence and accompanying evidence on quantum until a date in June 2016. The Tribunal considers that, particularly in view of the dilatory manner in which this arbitration has been conducted by the Respondents in the past, such an extension is far too long and would be unfair to the Claimants.

The Tribunal extends the time for service of the defence and documents until **8 April 2016.** It also requests the parties to agree on a date for a procedural conference by telephone in the weeks commencing 18th or 25th April.

Yours sincerely

Leonard Hoffmann
(Presiding Arbitrator).

## Safiat Kekere-ekun

**Subject:** FW: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

**Attachments:** Process and Industrial Developments Limited - Order - 30.03.2016.pdf

**From:** Seamus Andrew [mailto:seamus.andrew@scaontier.com]
**Sent:** Friday, April 01, 2016 5:39 PM
**To:** 'Leonard Hoffmann' <leonard.hoffmann@brickcourt.co.uk>; cabayoojo@aol.com; 'Sir Anthony Evans' <AEvans@essexcourt.net>
**Cc:** 'Olasupo Shasore' <os@shasore.com>; 'Kate Trott' <kate.trott@brickcourt.co.uk>; 'Abiodun Anibaba' <aanibaba@ajumogobiaokeke.com>; safiat.kekere-ekun@tmsllp.com; Lateefat Hakeem-Bakare <lateefat.hakeem-bakare@tmsllp.com>
**Subject:** RE: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

Dear Lord Hoffmann,

Further to the exchange of correspondence in March in relation to the question of the seat of the arbitration, we write to bring a recent development to the attention of the Tribunal.

The Tribunal will recall that the Ministry commenced proceedings on 24 February 2016 before the Nigerian Courts seeking to challenge the Award on Liability, and an extension of time in which to do so.

As we stated in our email of 8 March 2016, we were instructed not to participate in those proceedings, *inter alia* because they were and are wholly inconsistent with the seat of the arbitration, which is London.

The Nigerian proceedings, which are in effect a rerun of the Ministry's unsuccessful attempt to challenge the Liability Award in the Commercial Court at the end of last year, have now been delivered by courier to the registered office of the Claimant in the British Virgin Islands. Whilst we do not regard this as effective service, we note that the documents delivered include the attached Order of the Nigerian Court dated 23 March 2016 granting substituted service and adjourning the case *"for hearing"* to 20 April 2016.

The Claimant does not know if the Ministry intends to seek its final relief at the hearing on the 20 April 2016. However it is apparent that the Ministry is intent upon pursuing its Nigerian proceedings regardless of the points that we have made in relation to the juridical seat of the arbitration, and that the Ministry is doing so upon the footing that the seat of the arbitration is Nigeria. The Claimant has no current intention of participating in those proceedings, and would only consider doing so if the Tribunal were to take the view that the seat of the arbitration is Nigeria rather than London.

In the circumstances the Claimant respectfully enquires as to whether it is likely that the Tribunal will render its decision in relation to the seat of the arbitration prior to the scheduled hearing in Nigeria on 20 April 2016.

Yours sincerely

**Seamus Andrew**
*Managing Partner*

**SCA ONTIER LLP**
One New Ludgate, 60 Ludgate Hill, London, EC4M 7AW, United Kingdom
DX248 London/Chancery Lane
Tel +44 (0) 20 7183 1701 | Fax+44 (0) 20 7183 1702 | Mobile +44 (0) 771 733 0708

 **SCA ONTIER**

BOLIVIA · BRAZIL · COLOMBIA · CHILE. CHINA · MEXICO · PARAGUAY · PERU · PORTUGAL · SPAIN · UNITED KINGDOM · U.S.A. · VENEZUELA

 

This e-mail (including any attachments) is intended only for the recipient(s) named above and should not be read, copied or otherwise used by any other person. It may contain confidential or privileged information. If you are not a named recipient, please contact the sender and delete the e-mail from your system. SCA ONTIER LLP is a Limited Liability Partnership registered in England Registered No. OC327289. A list of the members is open to inspection at the registered office. Authorised and Regulated by the Solicitors Regulation Authority

2

## Safiat Kekere-ekun

**Subject:**      FW: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS
LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

**From:** Seamus Andrew [mailto:seamus.andrew@scaontier.com]
**Sent:** Tuesday, April 19, 2016 1:26 PM
**To:** 'Leonard Hoffmann' <leonard.hoffmann@brickcourt.co.uk>; 'Sir Anthony Evans' <AEvans@essexcourt.net>;
cabayoojo@aol.com
**Cc:** 'Olasupo Shasore' <os@shasore.com>; 'Kate Trott' <kate.trott@brickcourt.co.uk>; safiat.kekere-ekun@tmsllp.com;
'Abiodun Anibaba' <abiodun.anibaba@tmsllp.com>; Lateefat Hakeem-Bakare <lateefat.hakeem-bakare@tmsllp.com>
**Subject:** RE: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF
PETROLEUM RESOURCES OF NIGERIA

Dear Members of the Tribunal

As the Tribunal is aware, the Respondent has brought proceedings in the courts of Nigeria seeking to have the
Award dated 17 July 2015 ("the Liability Award") set aside for procedural misconduct (notwithstanding that it
has already made such an application, unsuccessfully, before the English courts). It has also applied for an
anti-arbitration injunction enjoining itself and the Claimant (but not the Tribunal) from taking any further
steps in the arbitration. Both of these applications have been brought, necessarily, on the express basis that the
seat of the arbitration is Nigeria, and that Nigeria is therefore the supervisory court for this arbitration.

As the Tribunal is also aware, the Ministry's substantive proceedings are set down for hearing in Nigeria
tomorrow, 20 April 2016.

Although we pointed out in our email of 1 April 2016 that the Claimant did not know if the Ministry intended to
seek its final relief at the hearing on 20 April 2016, we note that no clarification on this point has been
forthcoming from the Ministry's representatives and we therefore assume that the Ministry intends to argue
tomorrow for an order setting aside the Liability Award.

In the circumstances it is respectfully submitted that the matter of an express ruling as to the seat by the
Tribunal is now especially urgent. Although any order of the Nigerian Court would be ineffective if the seat of
the arbitration is London, as the Claimant has submitted, the actions of the Ministry are designed to
undermine the integrity of the arbitral process and amount to a serious breach of the Ministry's obligation to
participate in the arbitration in good faith. The parties agreed to the incorporation of the Nigerian Arbitration
Rules, which expressly provide for the Tribunal, rather than a national court, to determine the issue of seat
where it has not been otherwise agreed by the parties. The Ministry's application for injunctive relief is in direct
contravention of the agreed Arbitration Rules.

In the circumstances, we would be most grateful for a prompt ruling from the Tribunal in relation to the issue
of the seat of the arbitration or, alternatively, an indication as to when the Tribunal's ruling on the issue of the
seat of the arbitration is likely to be made.

We look forward to hearing from the Tribunal.

Yours faithfully

**Seamus Andrew**
*Managing Partner*

**SCA ONTIER LLP**
One New Ludgate, 60 Ludgate Hill, London, EC4M 7AW, United Kingdom
DX248 London/Chancery Lane

1

Tel +44 (0) 20 7183 1701  |  Fax+44 (0) 20 7183 1702  | Mobile +44 (0) 771 733 0708

 SCA ONTIER

BOLIVIA · BRAZIL · COLOMBIA · CHILE. CHINA · MEXICO · PARAGUAY · PERU · PORTUGAL · SPAIN · UNITED KINGDOM · U.S.A. · VENEZUELA

 

This e-mail (including any attachments) is intended only for the recipient(s) named above and should not be read, copied or otherwise used by any other person. It may contain confidential or privileged information. If you are not a named recipient, please contact the sender and delete the e-mail from your system. SCA ONTIER LLP is a Limited Liability Partnership registered in England Registered No. OC327289. A list of the members is open to inspection at the registered office. Authorised and Regulated by the Solicitors Regulation Authority

## Safiat Kekere-ekun

**Subject:**           FW: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS
                         LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

**From:** Leonard Hoffmann [mailto:leonard.hoffmann@brickcourt.co.uk]
**Sent:** Tuesday, April 19, 2016 2:57 PM
**To:** Seamus Andrew <seamus.andrew@scaontier.com>; 'Sir Anthony Evans' <AEvans@essexcourt.net>;
cabayoojo@aol.com
**Cc:** 'Olasupo Shasore' <os@shasore.com>; Kate Trott <kate.trott@brickcourt.co.uk>; safiat.kekere-ekun@tmsllp.com;
'Abiodun Anibaba' <abiodun.anibaba@tmsllp.com>; Lateefat Hakeem-Bakare <lateefat.hakeem-bakare@tmsllp.com>
**Subject:** Re: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF
PETROLEUM RESOURCES OF NIGERIA

Dear colleagues

The Tribunal acknowledges receipt of the e-mail below.  Until now, the Tribunal has not considered that there was an issue
arising in the arbitration which required it to pronounce upon where the seat is located. It has not been invited to do so by the
Nigerian court. However, if that court were to grant an injunction affecting the arbitration, the Tribunal would of course have
to rule on the question of the seat in order to decide what effect should be given to the injunction. The e-mail below invites
the Tribunal to give such a ruling in advance of any decision in Nigeria.  The members of the Tribunal will consult on whether it
would be appropriate to do so.

Yours sincerely

Leonard Hoffmann
(Presiding Arbitrator)

**From:** Seamus Andrew <seamus.andrew@scaontier.com>
**Date:** Tuesday, 19 April 2016 at 13:25
**To:** Leonard Hoffmann <leonard.hoffmann@brickcourt.co.uk>, "AEvans@essexcourt.net" <AEvans@essexcourt.net>,
"cabayoojo@aol.com" <cabayoojo@aol.com>
**Cc:** 'Olasupo Shasore' <os@shasore.com>, Kate Trott <kate.trott@brickcourt.co.uk>, "safiat.kekere-ekun@tmsllp.com"
<safiat.kekere-ekun@tmsllp.com>, 'Abiodun Anibaba' <abiodun.anibaba@tmsllp.com>, Lateefat Hakeem-Bakare
<lateefat.hakeem-bakare@tmsllp.com>
**Subject:** RE: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF
PETROLEUM RESOURCES OF NIGERIA

Dear Members of the Tribunal

As the Tribunal is aware, the Respondent has brought proceedings in the courts of Nigeria seeking to have the
Award dated 17 July 2015 ("the Liability Award") set aside for procedural misconduct (notwithstanding that it
has already made such an application, unsuccessfully, before the English courts).  It has also applied for an
anti-arbitration injunction enjoining itself and the Claimant (but not the Tribunal) from taking any further
steps in the arbitration.  Both of these applications have been brought, necessarily, on the express basis that the
seat of the arbitration is Nigeria, and that Nigeria is therefore the supervisory court for this arbitration.

As the Tribunal is also aware, the Ministry's substantive proceedings are set down for hearing in Nigeria
tomorrow, 20 April 2016.

Although we pointed out in our email of 1 April 2016 that the Claimant did not know if the Ministry intended to
seek its final relief at the hearing on 20 April 2016, we note that no clarification on this point has been

1

forthcoming from the Ministry's representatives and we therefore assume that the Ministry intends to argue tomorrow for an order setting aside the Liability Award.

In the circumstances it is respectfully submitted that the matter of an express ruling as to the seat by the Tribunal is now especially urgent. Although any order of the Nigerian Court would be ineffective if the seat of the arbitration is London, as the Claimant has submitted, the actions of the Ministry are designed to undermine the integrity of the arbitral process and amount to a serious breach of the Ministry's obligation to participate in the arbitration in good faith. The parties agreed to the incorporation of the Nigerian Arbitration Rules, which expressly provide for the Tribunal, rather than a national court, to determine the issue of seat where it has not been otherwise agreed by the parties. The Ministry's application for injunctive relief is in direct contravention of the agreed Arbitration Rules.

In the circumstances, we would be most grateful for a prompt ruling from the Tribunal in relation to the issue of the seat of the arbitration or, alternatively, an indication as to when the Tribunal's ruling on the issue of the seat of the arbitration is likely to be made.

We look forward to hearing from the Tribunal.

Yours faithfully

**Seamus Andrew**
*Managing Partner*

**SCA ONTIER LLP**

One New Ludgate, 60 Ludgate Hill, London, EC4M 7AW, United Kingdom

DX248 London/Chancery Lane

Tel +44 (0) 20 7183 1701  |  Fax+44 (0) 20 7183 1702  | Mobile +44 (0) 771 733 0708



BOLIVIA ·  BRAZIL ·  COLOMBIA · CHILE.  CHINA ·   MEXICO ·  PARAGUAY  ·  PERU  · PORTUGAL ·  SPAIN ·  UNITED KINGDOM ·  U.S.A. · VENEZUELA

 

This e-mail (including any attachments) is intended only for the recipient(s) named above and should not be read, copied or otherwise used by any other person. It may contain confidential or privileged information. If you are not a named recipient, please contact the sender and delete the e-mail from your system. SCA ONTIER LLP is a Limited Liability Partnership registered in England Registered No. OC327289. A list of the members is open to inspection at the registered office. Authorised and Regulated by the Solicitors Regulation Authority

**IN THE FEDERAL HIGH COURT OF NIGERIA**
**IN THE LAGOS JUIDICIAL DIVISION**
**HOLDEN AT LAGOS**

**IN THE MATTER OF THE ARBITRATION AND CONCILIATION ACT**
**CAP. A.18 LAWS OF THE FEDERATION OF NIGERIA 2004 AND THE**
**RULES THEREUNDER**

**SUIT NO: FHC/L/CS/264/2016**

**BETWEEN:**
**THE MINISTER OF PETROLEUM RESOURCES**
**(For and on behalf of the Ministry of**     **APPLICANT**
**Petroleum Resources)**

    **AND**

**PROCESS AND INDUSTRIAL DEVELOPMENTS**   **RESPONDENT**
**LIMITED BVI**

**ORDER**

**UPON THIS MOTION ON NOTICE** dated
and filed on the 5th day of April, 2016
coming before the court and praying
as follows:

(1)   **AN ORDER** restraining the parties
      in this suit whether by themselves
      or through their agents, servants,
      privies, assigns, representatives or
      anybody whatsoever from

ADEBAYO - TOYEEN
CERTIFIED TRUE COPY
PRINCIPAL EXECU IVE OFFICER
FEDERAL HIGH COURT
LAGOS

2

seeking and or continuing with any step, action and or participate directly or indirectly in the arbitral proceedings between the parties before: **Lord Leonard Hoffmann ("Presiding Arbitrator"), Sir Anthony Evans, And Chief Bayo Ojo, SAN** pending the hearing and determination of this suit.

(2)   **AND SUCH FURTHER AND/OR OTHER ORDER(S)** as this Honourable Court may deem fit to make in the circumstances.

**UPON READING** through the Affidavit in support deposed to by **Safiat Kekere-Ekun,** Female, Nigerian Citizen of 20 Marina, Lagos State and filed at this Court Registry.

**AND AFTER HEARING** the submission of **Mr O. Sasore SAN** with him are M/S **S. Kekere-Ekun** and **Ani-Baba** Counsel for the Applicant moved in terms of the motion paper.

ADEBAYO - TOYEEN
CERTIFIED TRUE COPY
PRINCIPAL EXECUTIVE OFFICER
FEDERAL HIGH COURT
LAGOS

3

**IT IS HEREBY ORDERED AS FOLLOWS:**

(1)   That an order is granted to the Applicant restraining the parties in this suit whether by themselves or through their agents, servants, privies, assigns, representatives or anybody whatsoever from seeking and or continuing with any step, action and or participate directly or indirectly in the arbitral proceedings between the parties before : **Lord Leonard Hoffmann ("Presiding Arbitrator"), Sir Anthony Evans, And Chief Bayo Ojo, SAN** pending the hearing and determination of the Motion on Notice dated 5/4/2016 .

(2)   The case is adjourned to 23/5/2016.

**ISSUED AT LAGOS, UNDER THE** seal of this Honourable Court and by the Hand of the presiding Judge this 20th day of April, 2016.

Hon. Justice I. N. Buba
Presiding Judge

ADEBAYO - TOYEEN
CERTIFIED TRUE COPY
PRINCIPAL EXECUTIVE OFFICER
FEDERAL HIGH COURT
LAGOS

**ALOKPESI C. N.
REGISTRAR**

**Safiat Kekere-ekun**

| | |
|---|---|
| **Subject:** | FW: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA |
| **Attachments:** | P & ID Vs Min of Petroleum Resources - Proceedings at The Federal      High Co... (257 KB) |

**From:** Seamus Andrew [mailto:seamus.andrew@scaontier.com]
**Sent:** Thursday, April 21, 2016 3:29 PM
**To:** 'Leonard Hoffmann' <leonard.hoffmann@brickcourt.co.uk>; 'Sir Anthony Evans' <AEvans@essexcourt.net>; cabayoojo@aol.com
**Cc:** 'Olasupo Shasore' <os@shasore.com>; safiat.kekere-ekun@tmsllp.com; abiodun.anibaba@tmsllp.com; Lateefat Hakeem-Bakare <lateefat.hakeem-bakare@tmsllp.com>
**Subject:** RE: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

Dear Members of the Tribunal,

We refer to the email below from Twenty Marina Solicitors LLP on behalf of the Ministry notifying the Tribunal of yesterday's Order of the Federal High Court of Nigeria, Lagos Judicial Division.

The Claimant has not been served with a copy of the Order but is aware that it was made by reason of the attached report from the Claimant's Nigerian counsel, who was present in Court in possession of a watching brief with instructions not to participate in any way in the proceedings. All of the Claimant's rights in relation to the injunction are reserved.

We note from the attached report that, contrary to the Tribunal's direction of Tuesday 19 April 2016, it appears that the Ministry's representatives did not inform the Nigerian Court that the Arbitral Tribunal was willing to rule upon the question of the seat of arbitration if the Nigerian Court were to consider it appropriate to request such a ruling. Nor did Mr. Shasore draw to the attention of the Nigerian Court the Claimant's email of 15 April 2016 in which we had set out, *inter alia*, the reasons why the Claimant regarded the Ministry's application for injunctive relief to be misleading. It would also appear that the Nigerian Court was not informed of the decision of Mr Justice Phillips of 10 February 2016.

We note also from the attached report that in addition to moving for injunctive relief, the Ministry's representatives asked the Nigerian Court to hear the Ministry's substantive application which seeks an Order setting aside and/or remitting for further consideration all or part of the Liability Award of 17 July 2015 and an extension of time in which to make that application. As stated in the attached report, the Nigerian Court declined to hear the substantive application immediately but instead adjourned it to 23 May 2016 for hearing.

In the circumstances, and given the Tribunal's indication of Tuesday, we would be grateful if the Tribunal would confirm that a ruling will now be made on the question of seat. If so, it would also assist the Claimant to know if that ruling is likely to be made prior to 23 May 2016.

Yours sincerely

**Seamus Andrew**
*Managing Partner*

**SCA ONTIER LLP**

One New Ludgate, 60 Ludgate Hill, London, EC4M 7AW, United Kingdom

DX248 London/Chancery Lane

Tel +44 (0) 20 7183 1701  |  Fax+44 (0) 20 7183 1702  |  Mobile +44 (0) 771 733 0708

1

 **SCA ONTIER**

BOLIVIA · BRAZIL · COLOMBIA · CHILE. CHINA · MEXICO · PARAGUAY · PERU · PORTUGAL · SPAIN · UNITED KINGDOM · U.S.A. · VENEZUELA

 

This e-mail (including any attachments) is intended only for the recipient(s) named above and should not be read, copied or otherwise used by any other person. It may contain confidential or privileged information. If you are not a named recipient, please contact the sender and delete the e-mail from your system. SCA ONTIER LLP is a Limited Liability Partnership registered in England Registered No. OC327289. A list of the members is open to inspection at the registered office. Authorised and Regulated by the Solicitors Regulation Authority

**From:** Lateefat Hakeem-Bakare [mailto:lateefat.hakeem-bakare@tmsllp.com]
**Sent:** 21 April 2016 12:27
**To:** 'Leonard Hoffmann'; 'Sir Anthony Evans'; cabayoojo@aol.com
**Cc:** Seamus Andrew; 'Olasupo Shasore'; safiat.kekere-ekun@tmsllp.com; abiodun.anibaba@tmsllp.com
**Subject:** RE: ARBITRATION BETWEEN PROCESS AND INDUSTRIAL PROCESS DEVELOPMENTS LIMITED AND MINISTRY OF PETROLEUM RESOURCES OF NIGERIA

Dear Tribunal,

This is to notify you of the order of the Federal High Court of Nigeria, Lagos Judicial Division, delivered on 20 April 1016, granting the following reliefs:

> *"an order restraining the parties in this suit, whether by themselves or through their agents, servants, privies, assigns, representatives or anybody whatsoever from seeking and or continuing with any step, action and or to participate directly or indirectly in the arbitral proceedings between the parties before: Lord Leonard Hoffmann ("Presiding Arbitrator"), Sir Anthony Evans, and Chief Bayo Ojo, SAN pending the hearing and determination of this suit"*

A certified copy of the order shall be forwarded to you in due course.

Yours faithfully,

Lateefat
**Lateefat Hakeem-Bakare**
**Associate**
**Twenty Marina Solicitors LLP**
**2nd Floor, Sterling Towers**
**20 Marina**
**Lagos, Nigeria**

2

Tel:  **+234 1 2719368-9**
Fax:  **+234 1 2719882**
  -  **+234 1 4622686**
E-mail: <u>lateefat.hakeem-bakare@tmsllp.com</u>

**IN THE MATTER OF THE ARBITRATION ACT 1996 (ENGLAND AND WALES)**

**AND**

**AND IN THE MATTER OF AN ARBITRATION UNDER THE RULES OF THE NIGERIAN ARBITRATION AND CONCILIATION ACT 1988**

**BETWEEN:**

**PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED**

<u>**Claimant**</u>

**and**

**THE MINISTRY OF PETROLEUM RESOURCES OF THE FEDERAL REPUBLIC OF NIGERIA**

<u>**Respondent**</u>

---

## PROCEDURAL ORDER No. 12

---

Tribunal:

Lord Hoffmann (Presiding Arbitrator)

Chief Bayo Ojo, SAN

Sir Anthony Evans

1

## A. Introductory

1. On 24 February 2016 the Respondent ("the Government") commenced proceedings before the Federal High Court in Lagos for an order pursuant to sections 29, 30 and 48 of the Nigerian Arbitration and Conciliation Act 1988 ("the Nigerian Arbitration Act") setting aside the Tribunal's second Partial Final Award dated 17 July 2016. There is a dispute between the parties as to whether the Nigerian courts are entitled to exercise such supervisory or "curial" jurisdiction over the arbitration, this being agreed to depend upon whether Nigeria or England is the "seat" or "place" of arbitration. This is an important question, not only for the purpose of determining the jurisdiction to supervise the proceedings and award, but also for the purposes of the enforceability of the award. Article V of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards provides that a Contracting State may refuse enforcement of an award only on a limited number of grounds, one of which is that the award "(v)…has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Nigeria (and almost all other countries in the world) are parties to the New York Convention and Article V(v) is reproduced in section 52(2)(a)(viii) of the Nigerian Arbitration Act. The words "country in which, or under the law of which, that award was made" have been generally interpreted as referring to the widely understood international concept of the seat or place of the arbitration or arbitration proceedings. Thus an order setting aside an arbitral award by a court in a country which is not the seat of arbitration has no effect upon its enforceability under the Convention.

2

2.  The question of the seat of arbitration was first raised by the Government in its originating motion in the High Court in Lagos on 24 February 2016. It was contested by P&ID and the parties made their submissions to the Tribunal in letters or e-mails dated 8 March 2016 and 11 March 2016 (P&ID) and 11 and 13 March 2016 (the Government). P&ID, before the injunction granted by the Nigerian court, requested that the Tribunal give a ruling on the matter. The Tribunal considers that it must therefore consider the question of the seat of arbitration for the purpose of deciding the future conduct of the arbitration. The Tribunal has the power to determine its own jurisdiction (section 12 of the Nigerian Arbitration Act) and its opinion on the disputed question may also be of assistance to the Nigerian court.

3.  The Tribunal will consider the matter under three heads. First, the relevant law. Secondly, the factual background to the arbitration agreement and the light it may throw upon the intentions of the parties. Thirdly, the conduct of the parties during the course of the arbitration.

### B.    The Law

4.  The arbitration arises out of a Gas Supply and Processing Agreement ("GSPA") dated 11 January 2010 made between The Ministry of Petroleum Resources of the Federal Republic of Nigeria ("the Government") and Process and Industrial Developments Limited ("P&ID"), a company incorporated in the British Virgin Islands. The relevant parts of article 20 provided as follows:

> "The Agreement shall be governed by, and construed in accordance with the laws of the Federal Republic of Nigeria.

3

> The Parties agree that if any difference or dispute arises between them concerning the interpretation or performance of this Agreement and if they fail to settle such difference or dispute amicably, then a Party may serve on the other a notice of arbitration under the rules of the Nigerian Arbitration and Conciliation Act 1988 which, except as otherwise provided herein, shall apply to any dispute between such Parties under this Agreement....Within thirty (30) days of the notice of arbitration being issued by the initiating Party, the Parties shall each appoint an arbitrator and the arbitrators thus appointed by the Parties shall within fifteen (15) days from the date the last arbitrator was appointed appoint a third arbitrator to complete the Tribunal...The arbitration award shall be final and binding upon the Parties. The award shall be delivered within two months after the appointment of the third arbitrator or within such extended period as may be agreed by the Parties.... The venue of the arbitration shall be London, England or otherwise as agreed by the Parties. The arbitration proceedings and record shall be in the English language..."

5. As the GSPA (including article 20 itself) is to be construed in accordance with the laws of the Federal Republic of Nigeria, the Tribunal considers that the meaning of words "the venue of the arbitration shall be London, England" must be construed in accordance with Nigerian law. The relevant provision is section 16 of the Nigerian Arbitration Act:

> **16.** (1) Unless otherwise agreed by the parties, the place of the arbitral proceedings shall be determined by the arbitral tribunal having regard to the circumstances of the case, including the convenience of the parties.
>
> (2) Notwithstanding the provisions of subsection (1) of this section and unless otherwise agreed by the parties, the arbitral tribunal may meet at any place it considers appropriate for consultation among its

4

members, for hearing witnesses, experts or the parties,
or for the inspection of documents, goods or other
property.

6. It appears to the Tribunal that by stipulating that "the venue of the
arbitration shall be London, England" the parties have agreed on the
"place of the arbitral proceedings" within the meaning of section 16(1)
and that the Tribunal's power to determine that place is excluded. The
question is, what is the effect of the choice of London by the parties?
The Claimant says that the effect is to make London the seat of
arbitration and to invoke the supervisory jurisdiction of the English
courts, to the exclusion of the Nigerian courts. The Government says
that the effect is only to agree that, as a matter of convenience, the
hearings shall take place in London but not to make it the seat of
arbitration. The seat of arbitration, the Government says, is Nigeria
because, first, the GSPA is governed by Nigerian law and secondly,
because the parties have agreed that "except as otherwise provided
herein" the rules of the Nigerian Arbitration and Conciliation Act 1988
shall apply to any dispute".

7. The Nigerian Arbitration Act is based upon the UNCITRAL Model Law,
which has been adopted in 72 countries and was intended to create
uniformity of law in international arbitration. One would therefore expect
that the Nigerian legislature intended its statute to be given the same
meaning as that of the Model Law. Article 20 of the Model Law is in
substantially the same language as section 16 of the Nigerian Arbitration
Act and reads as follows:

*Article 20.   Place of arbitration*

> (1) The parties are free to agree on the place of arbitration. Failing such agreement, the place of arbitration shall be determined by the arbitral tribunal having regard to the circumstances of the case, including the convenience of the parties.
>
> (2) Notwithstanding the provisions of paragraph (1) of this article, the arbitral tribunal may, unless otherwise agreed by the parties, meet at any place it considers appropriate for consultation among its members, for hearing witnesses, experts or the parties, or for inspection of goods, other property or documents.

8. Likewise, article 18 of the UNCITRAL Arbitration Rules (2010 revision) provides:

*Article 18*

> (1) If the parties have not previously agreed on the place of arbitration, the place of arbitration shall be determined by the arbitral tribunal having regard to the circumstances of the case. The award shall be deemed to have been made at the place of arbitration.
>
> (2) The arbitral tribunal may meet at any location it considers appropriate for deliberations. Unless otherwise agreed by the parties, the arbitral tribunal may also meet at any location it considers appropriate for any other purpose, including hearings.

9. Each of these provisions is divided into two subsections. The first deals with the choice by the parties (or determination by the Tribunal) of the "place of arbitration" (UNCITRAL) or "place of the arbitral proceedings" (Nigeria). The second deals with the venue for various physical events which may take place during the arbitral proceedings, such as deliberations, witness hearings, submissions and inspections. The first is primarily a matter for the choice of the parties, with the Tribunal having a power to fix the place only if the parties have not done so. The

6

second is a matter for the discretion of the Tribunal, which can be exercised unless the parties have expressly excluded it.

10. The general international understanding of the UNCITRAL and similar provisions is that the first subsection is concerned with what in English law is called the "seat" of the arbitration, a juridical concept of a link between the arbitration and a system of law, while the second is concerned with the various physical acts which may occur during the arbitration. As Redfern and Hunter *Law and Practice of International Commercial Arbitration* (6th ed) at 3.56 puts it:

> [T]he place, or 'seat', of the arbitration is not merely a matter of geography. It is the territorial link between the arbitration itself and the law of the place in which that arbitration is legally situated. When one says that London, Paris or Geneva is the place of arbitration, one does not refer solely to a geographical location. One means that the arbitration is conducted within the framework of the law of arbitration of England, France or Switzerland or, to use an English expression, under the curial law of the relevant country. The geographical place of arbitration is the factual connecting factor between that arbitration law and the arbitration proper, considered as a nexus of contractual and procedural rights and obligations between the parties and the arbitrators.

11. Likewise Dr Peter Binder, in his *Analytical commentary to the UNCITRAL Arbitration Rules 2010,* says of article 18 (cited above):

> It was clarified...by the Working Group [on the revision of the Rules] that the term "place" as used in

7

> art.18(1) of the Rules referred to the seat of arbitration
> which determined the law applicable to the arbitral
> procedure and court jurisdiction. Article 18(2), on the
> other hand, referred to the physical locations where
> meetings might be held.

*12.* It will be noted that Redfern and Hunter use the terms "seat of
arbitration" and "place of arbitration" interchangeably and other
commentators also use word like "venue" and "locale". The distinction
is not between "seat" and "place" or some other word denoting a
geographical location. That would be to introduce fine linguistic
distinctions. The true distinction embodied in sections 16(1) and 16(2) is
between the place (or seat or venue) *of the arbitration* (or of *the
arbitration proceedings*) on the one hand and the place of *events in the
arbitration on the other.* Section 16(1) of the Nigerian Arbitration Act
provides that the parties may agree on the place *of the arbitral
proceedings* (as a legal concept) but section 16(2) gives the Tribunal a
discretion to hold *particular events* in a place other than the chosen place
of the arbitration. Only one place can be chosen under section 16(1) to
be the place of the arbitral proceedings as a whole, irrespective of where
particular events may take place, whereas several places can be chosen
under section 16(2).

13. This is the point made by the Supreme Court of Nigeria in *Nigerian
National Petroleum Corporation v Lutin Investments Ltd* (2006) 2
NWLR (Pt.965) 506. The arbitration clause said that any reference
should be "deemed a submission to arbitration within the [Nigerian
Arbitration Act]" and the proceedings appear to have been in every
respect Nigerian, but the arbitrator decided to sit in London to hear the
evidence of a witness described as a "fugitive from justice". The Court

8

decided that he was entitled under section 16(2) to do so. Justice Onnoghen put the point most clearly when he said:

> "I hold the view that under our law, an arbitrator or an arbitral tribunal has the power and discretion to decide as regards where it holds its meetings, conduct hearings, take evidence etc. I further hold the view that such place as decided by the arbitrator or arbitral tribunal may be different from the seat of the arbitration except the parties expressly agree to the contrary in their arbitration agreement."

14. The Court also held that the parties had not chosen the "place of the arbitral proceedings" under section 16(1) and that the arbitrator was therefore entitled to do so. However, it was not suggested that by hearing evidence in London the arbitrator had actually determined that England should be the place of arbitration for the purposes of section 16(1). The Court did not regard itself as deprived of its supervisory jurisdiction and must therefore have assumed that the seat of arbitration was Nigeria. It held that the arbitrator had a discretion to sit in London by virtue of section 16(2) and rejected a submission that "at any place" in that subsection should be confined to places in Nigeria.

15. In the opinion of the Tribunal, the parties' selection of London as "the venue *of the arbitration*" rather than of any particular steps (such as hearings) *in the arbitration* indicates that London was selected under section 16(1) as the place of the arbitration in the juridical sense, invoking the supervisory jurisdiction of the English court, rather than in relation to any particular events in the arbitration. Indeed, the parties, having chosen the juridical place of arbitration under section 16(1) (or it having been determined by the Tribunal) have no power under section

16(2) to determine where hearings shall take place. That power, unless altogether excluded, is vested only in the Tribunal.

16. As for the choice of the procedural rules of the Nigerian Arbitration Act, this cannot in the opinion of the Tribunal displace the express choice of the place of arbitration pursuant to section 16(1). There is no inconsistency because although the choice of England as the place of arbitration carries with it the application of certain mandatory rules of the English Arbitration Act 1996 (such as the right to challenge an award in an English court under sections 67 and 68), section 4 of the English Act provides:

> (2)     The ..."non-mandatory provisions" [of the Act] allow the parties to make their own arrangements by agreement but provide rules which apply in the absence of such agreement.
>
> (5)     The choice of a law other than the law of England and Wales or Northern Ireland as the applicable law in respect of a matter provided for by a non-mandatory provision of this Part is equivalent to an agreement making provision about that matter."

17.   Thus the effect of article 20 of the GSPA is that, the parties having chosen that England should be the place of the arbitration but that it should be conducted according to the  Nigerian procedural rules, the latter apply except so far as inconsistent with the mandatory provisions of the English Act.

### C. The Factual Background

18.   The GSPA was made between the Government of Nigeria and a British Virgin Island company which, according to the evidence of the late Mr

Michael Quinn, had been formed as a special purpose vehicle for the proposed project by a group of expatriates who had been working in the oil and gas industry in Nigeria for up to 30 years. It had an office in Nigeria. Both parties were thus in practice based in Nigeria. It is difficult to speculate upon the motives for the choice of London as the place of the arbitration proceedings but one possibility is that the parties agreed that a dispute between the Nigerian government and expatriate businessmen should be determined in a neutral jurisdiction and subject to the supervision of its courts.

## D. The Conduct of the Parties

19. The arbitration was commenced by notice of arbitration served by P&ID on 22 August 2012.  On 19 September 2012 P&ID appointed Sir Anthony Evans as arbitrator.  On 30 November 2012 the Government appointed Chief Bayo Ojo as arbitrator. On 29 January 2013 the party-appointed arbitrators appointed Lord Hoffmann third and presiding arbitrator.

20. The parties agreed that it was not practical for the dispute to be resolved within time for an award to be delivered within two months of 29 January 2013 and on 9 May 2013 agreed a procedure by which P&ID was to serve a Statement of Claim before 28 June 2013 and the Government was to serve a Statement of Defence on or before 31 July 2013.

21. The Government did not serve a Statement of Defence by the agreed date but instead served on 3 October 2013 a Notice of Preliminary Objection disputing the jurisdiction of the Tribunal and the validity of the GSPA. On 11 October 2013 P&ID's lawyers wrote to the Government's lawyers:

> "Although our client considers the points raised in the Respondent's Preliminary Objection to be misconceived and devoid of merit, it considers that they should be determined as soon as possible. Therefore we invite you to agree that the issues raised be ruled upon by the Tribunal pursuant to Section 31(4) of the Arbitration Act 1996 ("the 1996 Act"), which provides that if the parties agree that the Tribunal should rule upon its own jurisdiction in an award as to jurisdiction, then the Tribunal shall proceed accordingly."

22. On 14 October 2013 the Government's lawyers replied:

> "The Respondent responds to your said latter as follows;
> • The Respondent accepts the Claimant's request that the tribunal should rule on its own jurisdiction in an award as to jurisdiction; and
> • The Respondent will be proceeding as contemplated by the parties under the Nigerian Arbitration and Conciliation Act, Cap A18 LFN 2004.

23. On 24 October 2013 P&ID's lawyers replied:

> The parties appear to be in agreement that the Arbitral Tribunal should rule on its own jurisdiction in an award as to jurisdiction. For the avoidance of doubt, we referred to Section 31 (4) of the Arbitration Act 1996 in our letter of 11 October 2013 because it is one of the Mandatory provisions

of the 1996 Act, and the juridical seat of this arbitration is London. However, and for the further avoidance of doubt, we acknowledge that the parties have agreed to arbitrate "under the rules of the Nigerian Arbitration and Conciliation Act", and we therefore accept that the rules governing the internal procedure of the arbitration are those to be found in the Nigerian Arbitration and Conciliation Act 2004, principally in the rules set out in the First Schedule thereto ("the Nigerian Arbitration Rules") , but also in sections 14 to 23 inclusive of the 2004 act, headed "Conduct of Arbitral Proceedings". In this regard we note that Article 21 of the Nigerian Arbitration Rules provides that the Arbitral Tribunal shall have the power to rule on an objection that it has no jurisdiction, including any objections with respect to the existence of validity of the arbitration clause or of a separate arbitration agreement.

24. There was no contradiction by the Government's lawyers of this statement.

25. After arranging for an oral hearing which was cancelled because the Government notified the Tribunal that it would not appear, and having regard to the uncontradicted expert evidence of Justice S.M.A Belgore, the Tribunal on 3 July 2014 delivered a Part Final Award by which it dismissed the objections. In accordance with section 26(3)(c) of the Nigerian Arbitration Act, which requires that an award state "the place of the arbitration as agreed or determined under section 16(1) of this Act", the award stated that the place of arbitration was London. (The equivalent English provision in section 52(5) of the Arbitration Act 1996, which requires an award to state the "seat of arbitration", is not one of the mandatory provisions listed in Schedule 1 to the Act).

26. On 21 July 2014 the Tribunal issued Procedural Order No 5 directing the Government to serve its Statement of Defence by 19 September 2014. On 10 November 2014, no Statement of Defence having been served, P&ID applied to the Tribunal to make a peremptory order in the form of a draft headed "In the matter of the [English] Arbitration Act 1996." The power to make such an order (which enables the court to enforce an order of the Tribunal with which a party has failed to comply) is contained in section 42 of the 1996 Act, which by section 2 applies only "where the seat of the arbitration is in England and Wales or Northern Ireland."

27. On 13 November 2014 the Government wrote to the Tribunal asking for P&ID's application to be suspended to enable settlement talks to take place and proposing a meeting in Abuja. On 14 November 2014 P&ID's solicitors replied agreeing to talks but saying "May we suggest…and given that this is a London seat arbitration, that we meet in London instead of Abuja." There was no contradiction of this statement and the parties afterwards met in London.

28. Nothing came of the settlement negotiations and on 16 February 2015 the Tribunal, upon the application of P&ID, made a peremptory order pursuant to section 42 of the Arbitration Act 1996, directing the Government to serve its Statement of Defence by 27 February 2015.

29. On 27 February 2015 the Government served a Statement of Defence.

30. On 1 July 2015 the Tribunal held an oral hearing in London and on 12 June 2015 the Government served a Final Submission in writing.

14

31. On 17 July 2015 the Tribunal delivered a Second Partial Final Award, in which it held that the Government was liable in damages for a repudiatory breach of the GSPA.  Pursuant to section 26(3)(c) of the Nigerian Arbitration Act, the second Partial Award stated that the place of arbitration was London.

32. On 17 August 2015 the Tribunal wrote to the parties proposing a case management conference on 3 September 2015 to consider procedural matters for the next and final phase of the arbitration, which would be to determine the quantum of damages payable by the Government.

33. On 20 August 2015 the Government's lawyers wrote to the Tribunal requesting that the conference be postponed to 10 September 2015 so that it could make settlement proposals.  The Tribunal agreed.

34. After a further request by the Government for postponement, the conference was fixed for 10 am London time on 28 September 2015.

35. At 9:18 am on 28 September 2015 the Government's lawyers sent the Tribunal an e-mail saying that  as a Minister of Justice had not yet been appointed to the new Nigerian government, they would be "unable to make any major contribution to the Case Management Conference scheduled for today and therefore request for a postponement."

36. On 27 October 2015 the Tribunal made Procedural Order No 10 in the form of an order *nisi* giving the Government leave to apply to discharge or vary it provided such application was made before 6 November 2015. It directed P&ID to serve all the documents and evidence upon which it intended to rely for the quantum hearing by 4 December 2015 and the

Government to serve its documents and evidence by six weeks thereafter. No application to discharge or vary was made.

37. On 23 December 2015 the Government applied to the Commercial Court in London for an order under section 68 of the Arbitration Act 1996, setting aside the second Partial Final Award. This jurisdiction is exercisable by the English court only if the seat of arbitration is in England. As the application was out of time, the Government applied for an extension of the time. In support of this application, it filed an affidavit by Ms Folakemi Adelore, explaining the delay. In paragraph 33, he said:

> "Since receipt of the documents on 25 November 2015, Stephenson Harwood and Leading Counsel have been considering the merits of the Applications, advising the Ministry on the same and preparing the Applications. The issue of jurisdiction of this Court and the seat of the Arbitration had first to be considered, in particular given the differing headings on the various procedural orders and the Part Final Award dated June 2014."

38. On the 10 February 2016 Phillips J dismissed the application on the grounds both of delay and lack of substantive merit.

39. On 24 February 2016 the Government commenced its proceedings in the Federal High Court in Lagos.

16

## E. Conclusion

40. The Tribunal is of opinion that upon the true construction of article 20 of the GSPA the "place of the arbitral proceedings" was agreed to be in London and that London thereby became what in international arbitration is generally referred to as the seat of arbitration. Even if this were not the case, the Tribunal finds that in the course of the arbitration over nearly three years, the parties and the Tribunal have consistently acted upon the assumption that London was the seat of the arbitration. Arbitration is based upon the consent of the parties and the Tribunal considers that the Government must be taken to have consented to this being the correct construction of the GSPA.

Place of arbitration:  London

Signed on behalf of the Tribunal:

Lord Hoffmann
(Presiding Arbitrator)

26 April 2016

**IN THE FEDERAL HIGH COURT**
**IN THE LAGOS JUDICIAL DIVISION**
**HOLDEN AT LAGOS**

SUIT NO. FHC/L/CS/ 623 /2016

**IN THE MATTER OF THE ARBITRATION AND CONCILIATION ACT CAP. A.18 LAWS OF THE FEDERATION OF NIGERIA 2004 AND THE RULES THEREUNDER**

**IN THE MATTER OF AN ARBITRATION**

**BEFORE**

| | |
|---|---|
| **LORD LEONARD HOFFMANN** | **PRESIDING ARBITRATOR** |
| **SIR ANTHONY EVANS** | **ARBITRATOR** |
| **CHIEF BAYO OJO, SAN** | **ARBITRATOR** |

**BETWEEN**

**THE MINISTER OF PETROLEUM RESOURCES**
**(For and On behalf of the Ministry of Petroleum Resources)**      **APPLICANT**

**AND**

**1. PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED**

| | | |
|---|---|---|
| **2. LORD LEONARD HOFFMANN** | **(PRESIDING ARBITRATOR)** | |
| **3. SIR ANTHONY EVANS** | **(ARBITRATOR)** | **RESPONDENTS** |
| **4. CHIEF BAYO OJO, SAN** | **(ARBITRATOR)** | |

## WRITTEN ADDRESS IN RESPECT OF THE ORIGINATING MOTION

**1.0 INTRODUCTION**

1.1 This written address is delivered by the Applicant in respect of the Originating Motion by which the Applicant is praying this Honourable court for the following reliefs:

     **1. AN ORDER** setting aside the decision (partial arbitral award) of Lord Hoffmann, Chief Bayo Ojo, SAN and Sir Anthony Evans titled Procedural Order No. 12  dated 26th April 2016.

     **2. AN ORDER** removing Lord Hoffmann, Chief Bayo Ojo, SAN and Sir Anthony Evans as arbitrators and members of the arbitral Tribunal in the arbitral proceedings.

And for such further or other orders as this Honourable Court may deem fit to make in the circumstances.

The application is predicated on the grounds contained in the motion paper.

## 2.0   BRIEF FACTS OF THE CASE

2.1   This arbitration proceedings arose from a dispute in respect of the performance of a Gas Supply and Processing Agreement dated 11th January 2010 between the parties herein ("the Agreement"). The Respondent is a company incorporated in the British Virgin Islands and the Applicant is a Ministry of the Federal Government of Nigeria.

2.2.   The Respondent commenced arbitration proceedings pursuant to Clause 20 of the Agreement. As agreed by the parties, the arbitration was held in London, England. Respondent's claim at arbitration is US$ 8.7 Billion.

2.3   After a bifurcated hearing, the tribunal delivered the Award on 17th July 2015. The Applicant was of the view that the tribunal has misconducted itself and commenced an action before this Honourable Court to set aside the Tribunal's Award of 17th July 2015.

2.4   The Applicant also brought an application for interlocutory injunction restraining parties from further participation in the arbitral proceedings pending the determination of the substantive application. This application was heard and granted on 20th April 2016.

2.5   During the pendency of the action and notwithstanding the subsistence of Suit No. FHC/L/CS/264/2016 and the order of interlocutory injunction made therein, the Respondent requested the Tribunal to give a ruling on the seat of the arbitration. The tribunal yielded to this request and on 26th April 2016 gave its decision (partial arbitral award) on the seat of the arbitration. The decision (partial arbitral award) was titled procedural Order No. 12. The Tribunal in giving its decision (partial arbitral award) titled Procedural Order No. 12 did not offer the Applicant any opportunity to present its case on the question of seat determined by the decision. The decision (partial arbitral award) was also delivered in complete disregard of Suit No. FHC/L/CS/264/2016 pending before this Honourable Court.

## 3.0   ISSUES FOR DETERMINATION

3.1   Applicant respectfully submits that the issues for determination in this matter are:

   i.   **Whether the Court ought to set aside the decision (partial arbitral award) tilted Procedural Order No. 12 delivered by tribunal and dated 26th April, 2016 the tribunal having misconducted itself and the said decision ( partial arbitral award) having been in violation of section 48 of the Arbitration and Conciliation Act?**

    ii.    **Whether Lord Hoffmann, Chief Bayo Ojo, SAN and Sir Anthony Evans should be removed as arbitrators and members of the arbitral Tribunal in the arbitral proceedings having misconducted themselves in that capacity.**

**4.0    ARGUMENTS**

**ISSUE 1**

**Whether the Court ought to set aside the decision (partial arbitral award) tilted Procedural Order No. 12 delivered by tribunal and dated 26th April, 2016 the tribunal having misconducted itself and the said decision (partial arbitral award) having been in violation of section 48 of the Arbitration and Conciliation Act?**

<u>**Misconduct**</u>

4.1    Section 30 of the ACA provides as follows;

*"(1) where an arbitrator has misconducted himself, or where the arbitral proceedings, or award has been improperly procured, the court may on the application of a party set aside the award."*

4.2    We submit respectfully that this provision will also apply to proceedings conducted by a tribunal. Although the Act does not define misconduct, the Court of Appeal in *__Mutual Life & General Insurance Ltd v Iheme [2014] 1 NWLR (Pt. 1389) 698 at para A__* defined misconduct as "a dereliction of duty; unlawful or improper behaviour." In *__Taylor Woodrow (Nig) Ltd v S.E. GMBH[1993] 4 NWLR (Pt.286) 127__* the Supreme Court held *inter alia* that the expression "misconduct" is of wide import and that an arbitrator will be guilty of misconduct ( *inter alia*) where the tribunal in making the award breached the rules of natural justice.

4.3    In such cases, we submit that such violation would amount to misconduct on the part of the arbitrator or tribunal and the court has the power to set aside the award. **See also Kano State Urban Development Board v. Fanz Construction Company Ltd. (1986) 5 NWLR (Pt.39) 77.** In the present case, the Respondent made a request to the tribunal to give a ruling on the question of seat and the tribunal proceeded to deliver a reasoned partial award on the question of the seat of the arbitration without affording the Applicant any opportunity of presenting its case on the question. This, we respectfully submit, is a violation of one of the cardinal rules of natural justice – fair hearing.

4.4    We therefore submit that having regard to the position of the law and the facts and circumstances of this case, the tribunal misconducted itself in giving its decision (partial arbitral award) titled Procedural Order No. 12 same having been given in clear violation of the rules of natural justice. We urge the court to set aside the said decision (partial arbitral award).

**The Award was made Contrary to Public Policy - Section 48(b) (ii) of the ACA**

4.5     Section 48 of the ACA sets out the circumstances in which a court may set aside an arbitral award. One of those circumstances is where the court finds that the award is against the public policy of Nigeria. Public policy, we submit are those principles and standards regarded by the legislature or by the courts as being of fundamental concern to the country and the society. Undoubtedly therefore, one of the recognized public policy of Nigeria is that no one having knowledge of pending litigation must take any step or do any act likely or designed to pre-empt the outcome of the litigation. In the same vein, any order of a court of competent jurisdiction even in ignorance of some essential fact which went to the validity of the order remains valid and binding and cannot be ignored until set aside by a court with the jurisdiction to do so. **ALADEGBEMI V FASANMADE (1988) 3 NWLR PT. 85.**

4.6     This position was reinforced by the Court of Appeal in **Ezegbu v F.A.T.B. Ltd [1992] 1 NWLR (Pt. 220.** The court in that case held *inter alia* as follows;

> *"None of the parties in litigation before a court is allowed to take law into his own hands and foist upon the court a fait accompli thereby rendering it impossible for the court to arrive at a decision one way or the other on the merits of the issue before it or render any decision it may make nugatory or futile. In the instant case, by holding the meeting on the 9th November 1992, when the Respondents had notice of the motion to suspend the holding of the meeting, they had pre-empted any decision which could be made by the trial court thereby frustrating or stultifying the exercise by the trial court or the Court of Appeal of its jurisdiction to determine the application one way or the other. Therefore the Court of Appeal can properly set aside the whole proceedings of the meeting 9th November 1991, including all the decisions reached thereat."*

4.7     We submit that the views expressed by the courts in the cases referred to above (and which have been followed by subsequent decisions of the courts) form part of the public policy of Nigeria and must guide the actions and conduct of any person not only a party to litigation but also persons aware of the pendency of any litigation.

4.8     In the present case, both the tribunal and the Respondent had knowledge of the pendency of Suit No. FHC/L/CS/264/2016. They were also aware of the order of interlocutory injunction made by this court on 20th April 2016. Despite this, the tribunal at the request of the Respondent proceeded to give a decision (arbitral award) on the seat of the arbitration. This, we submit is a calculated attempt to *foist a fait accompli* on this Honourable Court and render its decision in **Suit No. FHC/L/CS/264/2016** nugatory.

4.9    The decision (partial arbitral award) titled Procedural order No. 12 now sought to be set aside held that London is the seat of the arbitration. One of the legal consequence of this decision is that it is the English court that has exclusive supervisory jurisdiction on matters relating to the conduct of the arbitration. Followed to its logical conclusion, the decision (arbitral award) is intended to rob this court of its jurisdiction with respect to **Suit No. FHC/L/CS/264/2016** while the suit is subsisting and thereby deprive the court of the opportunity to determine the substantive suit. We submit that having regard to the conduct of the Respondent and the tribunal in the present case, this Honourable Court must apply the full force of the law by reversing the actions of the tribunal in the manner prescribed by the Supreme Court in **ALHAJI BALARABE M. ABUBAKAR V. UNIPETROL NIGERIA PLC ( 2002) 8 NWLR PT. 769 P. 242.**

4.10    In view of the foregoing judicial authorities, we urge your lordship to set aside the decision (partial arbitral award) of the tribunal titled Procedural Order No. 12 same having been contrary to the public policy of Nigeria.

### The Applicant was under some incapacity -Section 48 (a) (i) of ACA

4.11    In alternative to the foregoing submissions, Applicant contends that the decision (partial arbitral award) sought to be set aside was given when the Applicant was under some incapacity. As already noted, this Honourable Court on the application of the Applicant on 20th April 2016 made an order restraining the parties herein from further participating in the arbitration proceedings. The decision (arbitral award) sought to be set aside was given on 26th April 2016 during the subsistence of the order of this Honourable Court. That order is still subsisting same having not been set aside.

4.12    Owing to the position of the law in Nigeria coupled with its public policy, the Applicant could not have participated in any part of the arbitration proceedings including the question of the seat of the arbitration during the subsistence of the restraining order of this Honourable Court. We urge your lordship to so hold.

### Issue II

**Whether Lord Hoffmann, Chief Bayo Ojo, SAN and Sir Anthony Evans should be removed as arbitrators and members of the arbitral Tribunal in the arbitral proceedings having misconducted themselves in that capacity.**

### Removal of Arbitrators

4.13    By section 30 (2) of the ACA, the court is empowered to remove an arbitrator(s) who has misconducted himself on the application of any party to the arbitral proceedings. The Applicant contends that the actions of the tribunal leading to the present action amounts to misconduct within the context of the ACA. Of particular relevance is the language and disposition of the tribunal in **Exhibit F** to the Affidavit in Support of this

Application. We submit that the tribunal having formed a preconceived opinion, the Applicant risks being treated in an unequal manner in the arbitration. We submit further that the tribunal having misconducted itself, the appropriate order is an order removing the individuals constituting the tribunal as arbitrators in the proceedings. We urge your lordship to so hold.

### Wrongful exercise of discretion

4.14    In addition and without prejudice to the foregoing, the Applicant submits that although the issuance of a partial/interim award as done by the tribunal in the present case is at the discretion of the tribunal, the decision to make such partial award can be challenged in the same manner and same proceedings as the partial award itself. **See the Trade Fortitude (1992) 1 Lloyd's Rep. 169 at pp 174-175.** It is the case of the Applicant that the issue of seat was not in controversy between the parties hence there was no need for the decision (partial arbitral award). We submit that the tribunal wrongly exercised its discretion in giving its decision (partial arbitral award) now sought to be set aside. We urge your lordship to so hold.

### Procedural order may constitute an award.

4.15    Applicant submits that it is not inconceivable that the Respondent would argue that the decision ( partial arbitral award) titled Procedural Order No. 12 sought to be set aside is not an "award" hence not capable of being set aside. We urge your lordship to discountenance any such proposition. For purpose of clarity, we have set out below the circumstances when a "procedural order" and an "award" are made in arbitration proceedings.

### Procedural orders

4.16    Procedural orders made in the course of arbitral proceedings relate to the conduct of the arbitration. They are typically concerned with matters such as the scheduling of hearings, exchange of written submissions, exchange of written (witness) evidence, document production and administrative arrangement for hearings. **SEE PRACTITIONERS HANDBOOK FOR INTERNATIONAL ARBITRATION AND MEDIATION; THIRD EDITION BY DANIEL M. KOLKEY, BARBARA REEVES NEAL AND RICHARD CHERNICK AT 223.** On the same page, the authors stated the position of the International Chamber of Commerce working committee on the subject which is to the effect that decisions on jurisdiction, applicable law, other pre-judicial questions and decisions in respect of substantive claims should be made in the form of awards.

### Awards

4.17    Unlike procedural orders, awards are decisions that are <u>final</u> in nature in that they dispose of one or more of the issues in dispute. **See Law and Practice of International Commercial Arbitration; Alan Redfern and Martin with Nigel Blackaby and Constantine Partasides; 4th Edition at page 372**. There are however different categories of awards; final and partial/interim award.

4.18   According to the authors of **Law and Practice of International Commercial Arbitration**, the term "final award" is customarily reserved for an award that completes the mission of the arbitral tribunal. Partial/interim awards is an effective way of determining matters that are susceptible to determination during the course of the proceedings and which, once determined, may save considerable time and money for all involved. The use of partial awards can arise in a variety of circumstances, e.g where there are distinct quantum or liability issues, where initial jurisdiction is in question, where preliminary points of law are raised or where there are distinct substantive claims. **SEE ARBITRATION LAW; ROBERT MERKIN AT PAGE 691.**

4.19   We submit that partial awards are treated as final awards for all purposes and may be challenged on the same grounds as final awards.

4.20   The applicant submits further that the decision (partial arbitral award) now sought to be set aside is a partial award. The tribunal by the decision purported to finally settle the question of seat between the parties.

4.21   From the foregoing, we contend that in differentiating between a procedural order and an award, this court ought to look at the content/decision and not the nomenclature. Although there is a dearth of judicial authority on this subject from Nigerian courts, the US court in **PUBLICIS COMMUNICATIONS V. TRUE NORTH COMMUNICATIONS INC. 206 F. 3D 725, 729** held that even though the arbitral tribunal called its decision an "order", the decision was nonetheless an award. The decision in that case was an order for the production of documents. A similar decision was reached by the Court of Appeal in France in **BRASPETRO OIL SERVICES LIMITED V. MANAGEMENT AND IMPLEMENTATION COMMITTEE OF THE GREAT MAN-MADE RIVER PROJECT (CASE NO. 1998/24637)**. The court in Paris held that the decision of the arbitral tribunal was in reality an award notwithstanding its characterization as a "procedural order". In the opinion of the court;

> *"The qualification of a decision as an award does not depend on the terms used by the arbitrators or by the parties............after a lengthy examination of the parties' positions, it declared that the request could not be granted because Brasoil had not proven that there had been fraud as alleged. The reasoned decision by which the arbitrators considered the contradictory theories of the parties and examined in detail whether they were founded, and, solved, in a final manner, the dispute between the parties concerning the admissibility of Brasoil's request for a review, by denying it and thereby ending the dispute submitted to them appears to be an exercise of its jurisdictional power by the arbitral tribunal......................Notwithstanding its qualification as an "order", the decision of 14 May 1998............is thus indeed an*

*award". See page 355 of* **Law and Practice of International Commercial Arbitration; Alan Redfern and Martin with Nigel Blackaby and Constantine Partasides; 4th Edition.**

4.22   In the present case, the tribunal's decision sought to be set aside ( partial arbitral award) was titled "Procedural Order" but substantially conforms to the form of an award- it is a reasoned decision which purports to finally determine the question of seat. We urge your lordship to follow the reasoning of the courts in the decisions referred to above and discountenance any proposition or suggestion that the decision (partial arbitral award) titled Procedural Order No. 12 is not an award.

**5.    CONCLUSION**

5.1    In light of the foregoing arguments and judicial authorities, we humbly urge this Honourable Court to resolve the above issues in favour of the Applicant, and grant the reliefs sought by the Applicant.

Dated this 9th of May 2016



**Olasupo Shasore, SAN**
**Bello Salihu**
**Lateefat Hakeem-Bakare**
**Safiat Kekere-Ekun**
**Abiodun Anibaba**
**Applicant's Counsel**
**Twenty Marina Solicitors LLP**
**Sterling Towers**
**20 Marina Lagos**
**Telephone: 01-2719368-9**

**For Service on:**

**1st Respondent**
**Process and Industrial Developments Limited**
**Trident Chambers**
**P.O Box 146**
**Road Town**
**Tortola**
**British Virgin Islands**

**2nd Respondent**
**Lord Leonard Hoffman**
**Brick Court Chamber**
**7-8 Essex Street**
**London**
**WC2R 3LD**

**3rd Respondent**
**Sir Anthony Evans**
**Essex Court Chambers**
**24 Lincoln's Inn Fields**
**London**
**WC2A 3EG**

**4th Respondent**
**Chief Bayo Ojo, SAN**
**Bayo Ojo & Co.**
**4th Floor, ITF Building**
**6, Adetokunbo Ademola**
**Crescent, Wuse 2**
**Abuja, Nigeria**

