UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PROCESS AND INDUSTRIAL
DEVELOPMENTS LIMITED,                    :

                       Plaintiff,         :

v.                                       :            Civil Action No. 18-cv-00594-CRC

FEDERAL REPUBLIC OF NIGERIA and          :
MINISTRY OF PETROLEUM RESOURCES OF
THE FEDERAL REPUBLIC OF NIGERIA,         :

                     Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PETITIONER'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO
SET ASIDE THE CLERK'S ENTRY OF DEFAULT AND TO DISMISS**

## **Table of Contents**

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ......................................................................................................................7

      I.        P&ID's original service on Nigeria was proper.......................................................7

      II.     Given P&ID's proper service and Nigeria's willful delay, the clerk's default should not be set aside. ...........................................................................13

      III.    In any event, Nigeria's Motion will become moot upon delivery of the new service packages. ......................................................................................16

CONCLUSION..................................................................................................................17

## Table of Authorities

**Cases**                                                                                         **Page(s)**

*Abur v. Republic of Sudan*
    437 F. Supp. 2d 166 (D.D.C. 2006) .................................................................. 11, 12

*Acree v. Iraq*
     658 F. Supp. 2d 124 (D.D.C. 2009) ................................................................. 13, 15

*Agudas Chasidei Chabad of U.S. v. Russian Federation*
    798 F. Supp. 2d 260 (D.D.C. 2011) ...................................................................... 10

*Barot v. Embassy of the Republic of Zambia*
    785 F.3d 26 (D.C. Cir. 2015) ......................................................................... 11, 16

*Barot v. Embassy of the Republic of Zambia*
    11 F. Supp. 3d 33 (D.D.C.2014) ........................................................................... 11

*Compagnie D'Enterprises CFE, S.A. v. Republic of Yemen*
    180 F. Supp. 2d 12 (D.D.C. 2001) ........................................................................ 14

*Energoinvest DD v. Democratic Republic of Congo*
    355 F. Supp. 2d 9 (D.D.C. 2004) .......................................................................... 14

*Fly Brazil Grp., Inc. v. Gov't of Gabon*
    709 F. Supp. 2d 1274 (S.D. Fla. 2010) ................................................................... 9

*Gates v. Syrian Arab Republic*
    646 F.3d 1 (D.C. Cir. 2011) ................................................................................. 12

*Gulf Oil Co. v. Bill's Farm Ctr., Inc.*
    449 F.2d 778 (8th Cir. 1971) ................................................................................ 14

*Henderson v. United States*
    517 U.S. 654 (1996)............................................................................................ 11

*Honda Power Equip. Mfg., Inc. v. Woodhouse*
    219 F.R.D. 2 (D.D.C. 2003)................................................................................. 15

*Int'l Painters and Allied Trades Union and Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.*
    288 F. Supp. 2d 22 (D.D.C. 2003) .................................................................. 14, 15

*Ipitrade Intern., S. A. v. Federal Republic of Nigeria*
    465 F. Supp. 824 (D.D.C. 1978) .......................................................................... 14

*Joseph v. Office of Consulate General of Nigeria*
   830 F.2d 1018 (9th Cir. 1987) ............................................. 14

*Kettey v. Saudi Ministry of Education*
   No. 13-745 (CKK), 2013 WL 12192012 (D.D.C. July 24, 2013) ........................................... 12

*Kettey v. Saudi Ministry of Education*
   53 F. Supp. 3d 40 (D.D.C. 2014) ............................................. 10

*Lucchino v. Foreign Countries of Brazil, S. Korea, Spain, Mexico, and Argentina*
   631 F. Supp. 821 (E.D. Pa. 1986) ............................................. 9

*Nikbin v. Islamic Republic of Iran*
   471 F. Supp. 2d 53 (D.D.C. 2007) ............................................. 10

*Novak v. World Bank*
   703 F.2d 1305 (D.C. Cir. 1983) ............................................. 16

*Owens v. Republic of Sudan*
   864 F.3d 751 (D.C. Cir. 2017) ............................................. 13

*Transaero, Inc. v. La Fuerza Aerea Boliviana*
   30 F.3d 148 (D.C. Cir. 1994) ............................................. 7, 12

**Statutes**

28 U.S.C. § 1605 ............................................. 9

28 U.S.C. § 1608 ............................................. *passim*

An Act to Implement the Inter-American Convention on International Commercial Arbitration,
   Pub. L. No. 100-669, 102 Stat. 3969 (Nov. 16, 1988) ............................................. 9

Foreign Sovereign Immunities Act of 1976,
   Pub. L. No. 94-583, 90 Stat. 2891 (Oct. 21, 1976) ............................................. 8

**Federal Rules**

Fed. R. Civ. P. 4 ............................................. 16

Fed. R. Civ. P. 55 ............................................. 13

**Federal Regulations**

22 C.F.R. § 93.2 ............................................. *passim*

**Other Authorities**

Clerk's Entry of Default, *Continental Transfert Technique Ltd. v. Federal Gov't of Nigeria* (Dkt. No. 9), No. 08-CV-02026 (D.D.C. Feb. 13, 2009) ..................................................................... 14

Ex. A to Mot. for Entry of Default, *Gates v. Syrian Arab Republic* (Dkt. No. 4-3), No. 06-CV-01500 (D.D.C. Jan. 22, 2007) ................................................................................................. 12

Local Civil Rule 7(g) ........................................................................................................... 2, 15

Petitioner Process and Industrial Developments Limited ("P&ID") submits this memorandum of points and authorities in opposition to the motion (the "Motion," Dkt. No. 17) by Respondents the Federal Republic of Nigeria and the Ministry of Petroleum Resources of the Federal Republic of Nigeria (together, "Nigeria") to vacate the clerk's entry of default (Dkt. No. 12) and to dismiss P&ID's Petition (Dkt. No. 1) to confirm the arbitration award at issue (the "Final Award").

## INTRODUCTION

Nigeria's Motion is a blatant tactic to postpone, on incorrect technical grounds, the confirmation of an arbitration award that Nigeria's own submission recognizes as valid.  There can be no other explanation for the sequence of events leading up to the filing of the Motion:  Nigeria waited more than two months after proper service under the Foreign Sovereign Immunities Act— and having actually received service, as documented by its own declaration—before contacting P&ID, and only then to ask for another two months to respond to the Petition.  When P&ID proposed a shorter extension and a slightly extended time for reply, Nigeria did not further engage but instead filed this Motion, apparently trying to delay the inevitable confirmation of the Final Award and commencement of judgment enforcement efforts through time-consuming motion practice.

Nigeria's willful failure to respond to the Petition, only to file this Motion after the Clerk of Court entered a default, reflects a tactic of avoidance and delay that is consistent with its behavior in other cases:  P&ID is aware of at least three other instances in which Nigeria defaulted on its obligation to appear in the courts of the United States.  The Court should decline Nigeria's invitation to excuse yet another evasion.

1

Given that Nigeria's meritless complaints about service of process can easily be addressed by resending a FedEx package, P&ID is again serving process on Nigeria, in a manner that addresses all of Nigeria's misplaced quibbles about the initial service.  While ordinarily P&ID might rely exclusively on this renewed service, Nigeria's history of avoidance and delay, and the risk that Nigeria might take steps to avoid being served a second time, compels P&ID to also answer the substance of Nigeria's service objections.  Once service has again been effected on Nigeria—which, absent active evasion by Nigeria, should occur within a matter of days—P&ID thus respectfully requests that the Motion be dismissed as moot.  But if the Court finds itself needing to address the sufficiency of the initial service, it should deny the Motion in its entirety.

In its Motion, Nigeria asks the Court to waive its obligation under Local Rule 7(g) to file a verified answer "sufficient to bar the claim" along with its motion to vacate an entry of default. P&ID takes no position on such a waiver, but Nigeria's failure to articulate a defense to the merits of the Petition is telling.  Nigeria acknowledges that it lost the arbitration at issue in the Petition and that the tribunal awarded P&ID US $6,597,000,000 plus interest.  As explained in P&ID's Memorandum of Law in Support of the Petition, the Final Award presents none of the limited circumstances in which a U.S. court can defer or deny confirmation, and Nigeria's Motion makes no effort to show otherwise apart from its erroneous service arguments, even though motions to vacate a default require showing of a meritorious defense.

## BACKGROUND

The Final Award at issue arises out of a dispute between P&ID and Nigeria over Nigeria's failure to perform its obligations under a Gas Supply and Processing Agreement (the "Agreement," Dkt. No. 3-1), as described in the Petition (Dkt. No. 1), P&ID's supporting memorandum of law (Dkt. No. 2), and the Declaration of Seamus Ronald Andrew (Dkt. No. 3).  The Agreement was

executed on January 11, 2010, by P&ID and "the Ministry of Petroleum Resources for and on Behalf of the Federal Government of Nigeria."  (Dkt. No. 3-1 at 2.)

Under the Agreement, Nigeria was obliged to make arrangements to ensure the supply and delivery of wet gas to a state-of-the-art natural gas processing facility in the South East of Nigeria which was to be constructed and operated by P&ID.  When Nigeria failed to uphold its end of the bargain, P&ID referred the dispute to arbitration, consistent with the terms of an arbitration clause in the Agreement.  (*See id.* at 14–15.)  After proceedings spanning more than four years—due in part to Nigeria's repeated requests for extensions of time and other delay tactics—a duly-appointed tribunal of three respected jurists found that Nigeria had repudiated the Agreement by failing to satisfy its obligations and eventually abandoning the project, causing P&ID to lose substantial profits it would have earned over the 20-year period during which Nigeria was to supply P&ID with natural gas.  (Dkt. No. 3 ¶ 15; Dkt. No. 3-8.)  To compensate P&ID for these losses, the tribunal ordered Nigeria to pay P&ID $6,597,000,000 in damages, with 7 percent interest to be calculated from March 20, 2013, the date on which P&ID accepted Nigeria's repudiation of the Agreement.  (Dkt. No. 3-17 at 33–34.)  Although the Final Award was issued over a year ago, Nigeria has paid nothing.  Interest on the Final Award continues to accrue at a rate of $1,265,178.08 per day.  (Dkt. No. 3 ¶ 27.)  In light of Nigeria's failure to pay this debt voluntarily, P&ID filed the Petition on March 16, 2018, to begin the process of collecting what it is owed.

P&ID served Nigeria with process by causing the Clerk of Court to dispatch, via FedEx, two service packages—one for each Respondent—containing the summons, the Petition and all supporting documents, a notice of suit (in the form prescribed by 22 C.F.R. § 93.2(a)–(d)), and a complete copy of the Foreign Sovereign Immunities Act of 1976 (as required by 22 C.F.R.

§ 93.2(e)).  (Klazen Decl. ¶¶ 2–3.[1])  Those packages were dispatched on March 22, 2018, and were addressed to the Respondents "c/o Ministry of Foreign Affairs, Central District FCT, Abuja, Nigeria."  Just five days later, on March 27, 2018, P&ID received confirmation from FedEx that the packages had been delivered to, and signed for at, Nigeria's Ministry of Foreign Affairs—thus completing service of process.  (Dkt. No. 12; *see* 28 U.S.C. § 1608(c)(2); *see also* Klazen Decl. ¶ 3.)

There is no doubt that the service packages reached their destination well before Nigeria's opposition to the Petition was due on May 29, 2018.  *See* 28 U.S.C. § 1608(d) (providing that a foreign state shall serve a responsive pleading with 60 days after service).  Indeed, in support of its Motion, Nigeria has submitted the original service copy of the Affidavit Requesting Foreign Mailing of process for the Ministry of Petroleum Resources.  (Dkt. No. 17-3.)  An internal routing stamp on that document shows that on March 28—only one day after the package was delivered to the Ministry of Foreign Affairs—it had been delivered to the Respondent Ministry Petroleum Resources of the Federal Republic of Nigeria.  Another routing stamp indicates that just one week later, on April 5, the document had been delivered to the Ministry's "LEGAL UNIT."  And in a May 24 Nigerian newspaper article that discussed the Final Award and quoted the Petition, Nigeria's Minister of Petroleum Resources, Ibe Kachikwu, confirmed that Nigeria's obligations were being discussed at the highest levels of government: when asked by a journalist about the

---

[1] The Klazen Declaration, as used herein, refers to the document filed June 26, 2018 in support of this memorandum.

Final Award and another arbitration award entered against Nigeria, Kachikwu reportedly said, "We [the federal government] are aware.  The Attorney-General is handling them."[2]

Even though the Ministry of Petroleum Resources' Legal Unit received the Petition just one week after service was effected, it was not until nearly *two months later*, on May 31—two days *after* the deadline for Nigeria to respond to the Petition—that P&ID heard from Nigeria's counsel for the first time.  (*See* Dkt. No. 17-2 ¶ 4 (discussing "potential for a settlement of the dispute."))  In an e-mail sent the following day, June 1, Balogun Oluwarotimi Olabode, a London-based lawyer with the law firm representing Nigeria here, referenced the caption of the instant action and wrote, "we have been recently retained to defend the interest of the Federal Republic of Nigeria in the above case."  (Klazen Decl. ¶ 4, Ex. 1.)  Now, Nigeria's counsel declares that his firm was only formally retained on June 7, *after* the clerk's default had been entered on June 5. (Dkt. No. 17-2 ¶ 6.)

On June 7, a different lawyer at the firm representing Nigeria informed P&ID's counsel that it intended to move the Court to set aside the clerk's default and seek an additional 60 days to respond to the Petition—which would have doubled Nigeria's time to file an opposition—and he asked whether P&ID would consent to such a request.  (Klazen Decl. ¶ 5.)  Despite Nigeria's default, P&ID responded by offering to stipulate to a slightly shorter extension of time until a date certain (July 13), provided that P&ID would be given some additional time to file a reply.  (*Id.* ¶ 6.)  Nigeria never responded to this offer, which P&ID made on June 11.  (*Id.*)  Instead, Nigeria contacted P&ID the next day to inform it that it would be filing this Motion, perhaps believing that

---

[2] The full article is available at https://www.premiumtimesng.com/news/headlines/269541-exclusive-nigeria-in-big-trouble-as-n2-7-trillion-fine-threatens-collapse-of-economy.html  (last accessed June 26, 2018).

the sheer act of forcing the Court to deal with motion practice would create a lengthier delay than a negotiated extension of time.

Despite the Motion's lack of merit, P&ID, in an effort to avoid further delay, elected to re-serve Nigeria by delivering to the Clerk of Court on June 18, 2018, four additional packages to serve Nigeria with process.  Those packages contain all of the materials initially served, as well as additional materials that Nigeria claims it should have received.  Each package has been addressed to the attention of the "Minister of Foreign Affairs of the Federal Republic of Nigeria" and the "Head of the Ministry of Foreign Affairs of the Federal Republic of Nigeria," which Nigeria asserts is how the service packages should have been addressed.  (Br. at 3.)  Of course, this entire issue is purely academic given that the service packages were received by the Respondents and the Minister of Petroleum Resources personally confirmed that he, the Attorney General, and presumably other high-level Nigerian officials were aware of the situation.  Regardless, two new packages—one for each Respondent—have been sent to the address at which P&ID's original service packages were successfully delivered, while the other two have been sent to a different address that Nigeria now claims is the "proper mailing address" for the Ministry of Foreign Affairs.[3]  (Br. at 7 n.1.)  The Clerk of Court dispatched the packages on June 21, 2018.  (Dkt. No. 22.)  As of the date of this filing, FedEx's online tracking system indicates that the packages have already arrived in Abuja, the capital of Nigeria, for delivery to the Ministry of Foreign Affairs.  (Klazen Decl. ¶ 10.)

---

[3] For its original service packages, P&ID obtained the address of the Ministry of Foreign Affairs from the Ministry's own web page.  In its Motion, Nigeria now points P&ID to a more detailed address on what appears to be a newly launched web page of the Ministry.  (Br. at 7 n.1.)  P&ID has sent new service packages to both addresses.

## ARGUMENT

As stated above, P&ID expects that Nigeria's Motion will be rendered moot imminently, once the service packages have again been delivered to the Ministry of Foreign Affairs in Nigeria. In the meantime, P&ID explains below why Nigeria's arguments about the original service are without merit.

### I.    P&ID's original service on Nigeria was proper.

When FedEx delivered the service packages to Nigeria's Ministry of Foreign Affairs in Abuja, Nigeria, P&ID satisfied the requirements for effective service under 28 U.S.C. § 1608(a)(3). Nigeria does not dispute that it was proper for P&ID to serve Respondents under Section 1608(a)(3), as no "special arrangement for service" exists between Petitioner and Nigeria (*see* 28 U.S.C. § 1608(a)(1)) and there exists no "applicable international convention on service of judicial documents" to which Nigeria is a party (*see* 28 U.S.C. § 1608(a)(2)).  Under Section 1608(a)(3), a foreign state may be served "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."  28 U.S.C. § 1608(a)(3).  If service cannot be made under that provision within 30 days, Section 1608(a)(4) would then permit service to be performed through diplomatic channels.

P&ID served Nigeria under Section 1608(a)(3) by:

- arranging for the Clerk of Court to mail copies of a summons and the Petition for each Respondent to Nigeria's Ministry of Foreign Affairs (Dkt. No. 10; *see Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994) ("[S]ection 1608(a) mandates service of the Ministry of Foreign Affairs, the department most likely to understand American procedure."));

- enclosing a notice of suit in the form required by 22 C.F.R. § 93.2 (Dkt. No. 17-4 at 1–2);

- enclosing a copy of the Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891, as required under 22 C.F.R. § 93.2(e); and

- using a "form of mail requiring a signed receipt," in this case, FedEx (*see* Dkt. No. 12).

As explained above, FedEx delivered the two service packages to Nigeria's Ministry of Foreign Affairs on March 27, 2018, thus completing service of process. Nigeria does not contend that the service packages did not reach their destination. Nor could it: Nigeria's own submission shows that within a week, the Legal Unit for the Ministry of Petroleum Resources had received the package. And the Minister of Petroleum Resources himself reportedly told the press, for an article that quoted P&ID's Petition, that the federal government was aware of its obligations under the Award and that the Attorney General was handling the matter.

Nigeria's quibbles about P&ID's service are meritless and should be rejected (and in fact have been addressed already by sending them new packages).

***Copy of the Foreign Sovereign Immunities Act (FSIA).*** Nigeria argues that the process it received was defective because P&ID "did not append the entire FSIA to the notice of suit as required under the applicable regulations." (Br. at 7.) That is incorrect. Nigeria admits that P&ID "appended a copy of the FSIA as originally enacted in 1976" (*id.*), which is precisely what the rule requires. The applicable regulation, 22 C.F.R. § 93.2(e), provides: "A party shall attach, as part of the Notice of Suit, a copy of the Foreign State [sic] Immunities Act of 1976 (Pub. L. 94-583; 90 Stat. 2891)." The regulation notes the year of enactment and cites to the United States Public Laws and Statutes at Large, thus explicitly referring to the specific act of Congress—namely, "the FSIA as originally enacted in 1976"—that Nigeria admits was served with the Petition. P&ID complied with this requirement by including a complete copy of "Public Law 94-583," as Nigeria's submission confirms. (Dkt. No. 17-4 at 5.)

Nigeria nonetheless asserts that P&ID did not include "the most recent amended provisions, including the exception to sovereign immunity upon which the plaintiff relies: the arbitration exception, 28 U.S.C. § 1605(a)(6)."  (Br. at 7.)  But the regulation refers only to the FSIA; it does not require that later amendments to certain sections of the U.S. Code be included.  In fact, the statutory provision to which Nigeria refers, 28 U.S.C. § 1605(a)(6), is not even part of the "Foreign Sovereign Immunities Act of 1976": it was enacted in 1988 as part of a law titled "An Act to Implement the Inter-American Convention on International Commercial Arbitration."  Pub. L. No. 100-669; 102 Stat. 3969 (Nov. 16, 1988).

Nor does Nigeria cite any authority finding service defective for including a complete copy of the FSIA but not later acts of Congress.  Nigeria cites *Fly Brazil Grp., Inc. v. Gov't of Gabon*, but the service materials there included only a copy of one statutory section, 28 U.S.C. § 1608, which was inadequate because portions of the FSIA are codified in other sections of the U.S. Code. 709 F. Supp. 2d 1274, 1281 (S.D. Fla. 2010).  Nigeria also cites to *Lucchino v. Foreign Countries of Brazil, S. Korea, Spain, Mexico, and Argentina*, where service was held to be inadequate because the plaintiff failed to provide one of the sovereign defendants with any notice of suit at all.  631 F. Supp. 821, 827 (E.D. Pa. 1986).  Neither decision supports Nigeria's attempt to graft onto the text of 22 C.F.R. § 93.2(e) the additional requirement that process include not only the FSIA but also later acts of Congress that were eventually codified in the same provisions of the United States Code.

In any event, P&ID has re-sent to Nigeria the provisions it says it should have received the first time, so this objection will be moot once the new service packages have been delivered.

*"A form of mail requiring signed receipt."*  Nigeria's contention that P&ID "failed to serve Nigeria 'by a form of mail requiring a signed receipt' as mandated by Section 1608(a)(3)"

(Br. at 6) is equally unfounded.  The proofs of delivery provided by FedEx and filed with the Court as P&ID's return of service expressly state that both parcels were delivered to the Ministry of Foreign Affairs and "Signed for by: ODIMBA T."  (Dkt. No. 12 at 1, 4.)  Thus, P&ID complied with the statute.  That the proofs of delivery also state that "no signature is available" is not, as Nigeria contends, "another fatal defect in its attempt to serve Nigeria." (Br. at 7.)  Nothing in Section 1608(a)(3) or any other authority cited by Nigeria states that where the proof of delivery shows the service packages were signed for, the availability of a signature must also be indicated.[4]  In any event, P&ID has since confirmed that FedEx does have a signature on file from the person at the Ministry of Foreign Affairs who signed for the packages.  (Klazen Decl.  ¶ 7, Ex. 2.)

Again, the cases cited by Nigeria are inapposite.  In *Kettey v. Saudi Ministry of Education*, service was held to be improper because the plaintiff provided *his own* "affidavit of service," copies of completed address forms, and postal tracking information that, unlike the receipts P&ID has provided here, contained no indication that the delivery was signed for.  53 F. Supp. 3d 40, 48 (D.D.C. 2014).  And in *Agudas Chasidei Chabad of U.S. v. Russian Federation* and *Nikbin v. Islamic Republic of Iran*, the plaintiffs not only failed to provide proof of signing (like the plaintiff in *Kettey*) but also sent the service materials themselves rather than dispatching them through the Clerk of Court as required under Section 1608(a)(3).  *Agudas*, 798 F. Supp. 2d 260, 269 (D.D.C. 2011); *Nikbin*, 471 F. Supp. 2d 53, 68 (D.D.C. 2007) ("The Rafsanjani service documents were never signed for by a Ministry official or employee; they were merely left in the Ministry mail room.").

---

[4] On the contrary, another subsection of the same statute makes clear that a "signed and returned postal receipt" is not the exclusive means by which FSIA-compliant service may be proven: "Service shall be deemed to have been made . . . as of the date of receipt indicated in the certification, signed and returned postal receipt, *or other proof of service* applicable to the method of service employed."  28 U.S.C. § 1608(c) (emphasis added).

*Delivery to the Ministry of Foreign Affairs.*   Nigeria does not contest that the service packages were delivered to the Ministry of Foreign Affairs and forwarded to Respondents. Nigeria's own exhibit shows that Respondent the Ministry of Petroleum Resources received the service documents within a day of delivery, and that the Ministry's "LEGAL UNIT" received them within a week.  Accordingly, Nigeria's contention that service was defective because the packages were mailed to the "Ministry of Foreign Affairs" instead of to the "Minis*ter*" or "*head of* the Ministry of Foreign Affairs" should be rejected.  The facts show that P&ID fulfilled "'[t]he core function of service,' which is 'to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections.'"  *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 173 (D.D.C. 2006) (quoting *Henderson v. United States*, 517 U.S. 654, 671 (1996)).

Nigeria points to the D.C. Circuit's decision in *Barot v. Embassy of the Republic of Zambia*, which reviewed a decision by a District Court that a package sent to the post-office box for Zambia's Ministry of Foreign Affairs but addressed to the "Embassy of Zambia" did not satisfy the FSIA's service requirements although it was accompanied, in a different portion of the waybill, by a phone number and a note to "contact" the "Min. Foreign Affairs."  785 F.3d 26, 28 (D.C. Cir. 2015).  As the Court recounted, "[i]n denying [the plaintiff's] motion for reconsideration, the district court further explained that the addressee—'Embassy of Zambia'—'would not be located in Zambia at all.'"  *Id.* at 28–29 (quoting *Barot v. Embassy of the Republic of Zambia*, 11 F.Supp. 3d 33, 35 (D.D.C. 2014)).  No such issue is present here, where the service packages were clearly addressed to the care of, delivered to, and signed for at Nigeria's Ministry of Foreign Affairs. Further, the D.C. Circuit concluded that the district court in *Barot* abused its discretion in dismissing the complaint based on its finding of improper service.  785 F.3d at 29.

11

Other decisions from this Circuit have approved process addressed to the "Ministry of Foreign Affairs." *See, e.g.*, *Gates v. Syrian Arab Republic*, 646 F.3d 1, 4 (D.C. Cir. 2011) (affirming finding of proper service where sovereign defendant did not "dispute the clerk of court addressed and dispatched copies of the summons, complaint, notice of suit, and translations thereof to the Syrian *Ministry* of Foreign Affairs" (emphasis added))[5]; *Kettey v. Saudi Ministry of Education*, No. 13-745 (CKK), 2013 WL 12192012, at *1 (D.D.C. July 24, 2013) (instructing plaintiff to effect service under 28 U.S.C. § 1608(a)(3) by "request[ing] that the Clerk of Court 'by any form of mail requiring a signed receipt,' address and dispatch the documents to the Kingdom of Saudi Arabia *Ministry* of Foreign Affairs" (emphasis added)); *see also Transaero*, 30 F.3d at 154 ("[S]ection 1608(a) mandates service of the *Ministry* of Foreign Affairs, the department most likely to understand American procedure." (emphasis added)).  Thus, P&ID properly effected service by delivering the service packages to the Ministry of Foreign Affairs in Nigeria, which reached their destination and fulfilled the "core function of service." *Abur*, 437 F. Supp. 2d at 173.

*Affidavit Requesting Foreign Mailing.*  Nigeria also takes issue with P&ID's checking the box labeled "DHL" on its Affidavit Requesting Foreign Mailing (the "Requesting Affidavit," Dkt. No. 8), presumably because the documents were instead delivered via FedEx.  (Br. at 3.)  Nigeria does not actually argue that this made service improper, nor could it: the Requesting Affidavit is a purely administrative filing required to prompt the Clerk of Court to dispatch the service packages; it has no impact whatsoever on the validity of service itself.  In any event, P&ID completed the Requesting Affidavit in this way because the Clerk's office instructed it to do so.  Although the

---

[5] The service held adequate in *Gates* was addressed to the "Ministry of Foreign Affairs."  The waybill used to mail service listed the "Minister of Foreign Affairs" as a "Contact Person."  Ex. A to Mot. for Entry of Default, *Gates v. Syrian Arab Republic* (Dkt. No. 4-3), No. 06-CV-01500 (D.D.C. Jan. 22, 2007).

Clerk's office advised P&ID that FedEx was an acceptable courier for foreign service, the Clerk's office at the time required that Requesting Affidavits be filed on a form that did not include a check-box option for FedEx mailings.  (*See* Dkt. No. 8; Klazen Decl. ¶ 2.[6]) The Clerk's office therefore instructed P&ID to select the "DHL" option for its FedEx dispatch.  (Klazen Decl. ¶ 2.)

None of Nigeria's quibbles disturb the validity of P&ID's service under 28 U.S.C. § 1608(a)(3).  Nigeria does not dispute that it received the very notice contemplated by the statute; rather, it asks the Court to excuse its deliberate refusal to appear until *after* a clerk's default had been entered in an effort to delay the resolution of an action to which it has no substantive defense. The Court should deny that request.

## II.   Given P&ID's proper service and Nigeria's willful delay, the clerk's default should not be set aside.

If the Court finds that service was properly effected, Nigeria offers no other basis on which the default should be set aside: the Court has jurisdiction and Nigeria offers not even "a hint of a suggestion" of any viable defense other than improper service.[7]  *Acree v. Iraq*, 658 F. Supp. 2d 124 (D.D.C. 2009) (cited in Br. at 8, 9).  Accordingly, the "good cause" requirement for setting aside a default under Federal Rule of Civil Procedure 55(c) has not been met.  And while defaults may be disfavored, "the FSIA expressly authorizes default judgments against absent sovereigns." *Owens v. Republic of Sudan*, 864 F.3d 751, 820 (D.C. Cir. 2017); *see* 28 U.S.C. § 1608(e).  Indeed, the Court has entered default judgments against sovereign states in other cases.  *See, e.g.*,

---

[6] The form has since been revised to include such a box for FedEx mailings.  The new form, which P&ID used for its more recent service of additional process on Nigeria, is available at http://www.dcd.uscourts.gov/sites/dcd/files/AfdReqForeignMlg2018FILL.pdf.

[7] *See* Br. at 9–10 (arguing that default cannot be entered absent proper service, and that "good cause" exists under the Federal Rules of Civil Procedure because service presents a personal jurisdiction defense).

*Energoinvest DD v. Democratic Republic of Congo*, 355 F. Supp. 2d 9 (D.D.C. 2004); *Compagnie*

*D'Enterprises CFE, S.A. v. Republic of Yemen*, 180 F. Supp. 2d 12 (D.D.C. 2001).

But even if Nigeria had offered a valid defense on the merits to satisfy the "good cause"

standard, the clerk's default should still not be set aside given the willfulness of Nigeria's default.

*See Int'l Painters and Allied Trades Union and Industry Pension Fund v. H.W. Ellis Painting Co.,*

*Inc.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2003)  (finding no "good cause" to set aside entry of default

after considering "whether (1) the default was willful, (2) a set-aside would prejudice the plaintiff,

and (3) the alleged defense was meritorious" (internal quotations omitted)).

Nigeria had every reason to know that it owed the Court a timely response to the Petition:

It received proper service under FSIA; it received actual notice from delivery of the service

packages (Dkt. No. 17-3); and the Nigerian Minister of Petroleum Resources reportedly told the

press that the Final Award was being discussed at the highest levels of the Nigerian government.

Yet Nigeria's conduct here is no surprise, as it has habitually defaulted in U.S. proceedings.

Such "delay and evasion are added burdens on litigation, causing waste of judicial and legal time,

are unfair to the litigants and offend the administration of justice," meriting default.  *Gulf Oil Co.*

*v. Bill's Farm Ctr., Inc.*, 449 F.2d 778 (8th Cir. 1971).  Most recently, Nigeria defaulted in this

court in 2009 before ultimately seeking and obtaining relief.  *See* Clerk's Entry of Default,

*Continental Transfert Technique Ltd. v. Federal Gov't of Nigeria* (Dkt. No. 9), No. 08-CV-02026

(D.D.C. Feb. 13, 2009) (counsel for Nigeria appeared more than one year after clerk's default, Dkt.

No. 16, and clerk's default eventually vacated, Dkt. No. 37); *see also Joseph v. Office of Consulate*

*General of Nigeria*, 830 F.2d 1018 (9th Cir. 1987) (motion to vacate default judgment filed three

months after entry of default); *cf. Ipitrade Intern., S. A. v. Federal Republic of Nigeria*, 465 F.

Supp. 824 (D.D.C. 1978) (granting default judgment and ordering confirmation of arbitral award).

History repeats itself.  Despite Nigeria's longstanding knowledge of the Final Award and this litigation, it filed no timely response to the Petition and apparently may have waited until after the default had been entered to formally retain counsel for this case.  Such willful failure to instruct counsel merits a default.  *See Honda Power Equip. Mfg., Inc. v. Woodhouse*, 219 F.R.D. 2, 5 (D.D.C. 2003) (finding default willful where defendants "consistently failed to give attention to [the] lawsuit," including by failing to retain counsel and failing to communicate with counsel once retained).  Nor can "the mere existence of settlement negotiations" excuse Nigeria's failure to defend its interests; indeed, courts in this district have held that defaulting due to ongoing settlement talks is akin to "a deliberate decision to default, which is generally not excusable."  *Int'l Painters*, 288 F. Supp. 2d at 26 (denying motion to vacate default judgment).  In any event, after Nigeria initially proposed a settlement meeting for June 15, 2018, it has now postponed that meeting indefinitely.

Finally, P&ID would be prejudiced if the default were excused: The Final Award was handed down January 2017, but Nigeria continues to avoid its obligation to pay.  If the default is excused, Nigeria will be motivated to deploy further delay and evasion tactics to avoid its obligation to satisfy the Final Award.  While the Court may waive Local Rule 7(g)'s requirement that a verified answer accompany any motion to set aside default, it need not do so where, as here, the waiver sought presages only further delay.  *Cf. Acree*, 658 F. Supp. 2d at 128 (defaulter sought, and received, leave to set aside Local Rule 7(g) requirement of verified answer along with entry of proposed briefing schedule).  Here, the proper responsive filing would be a brief in opposition to P&ID's Petition.

**III.    In any event, Nigeria's Motion will become moot upon delivery of the new service packages.**

Regardless of the merits of Nigeria's arguments about the sufficiency of P&ID's original service, P&ID has already addressed them by re-dispatching packages to Nigeria  that accommodate each asserted deficiency.   To be clear, P&ID's re-service does not concede the validity of Nigeria's arguments.   But P&ID wants to move this straightforward confirmation proceeding toward a resolution on the merits so that P&ID can proceed with enforcing the Final Award.   To that end, the Court can resolve Nigeria's Motion by denying it as moot upon the delivery of P&ID's second set of service materials.   When P&ID effected service the first time, FedEx delivered the packages to the Ministry of Foreign Affairs five days after the Clerk of Court dispatched the packages.   Accordingly, P&ID expects that the re-sent packages—which were dispatched on June 21, 2018 and have already arrived in Abuja, Nigeria—will be delivered within days, assuming that Nigeria does not take measures to deliberately avoid service.

The fact that P&ID has decided to re-serve Nigeria also shows that dismissal of the Petition—which is among the relief that Nigeria seeks in its Motion—is inappropriate.   Indeed, in *Barot*, the D.C. Circuit held that the District Court abused its discretion in dismissing the case based on the plaintiff's failure to serve process through the appropriate representative for a sovereign defendant. 785 F.3d at 29.   As the court explained, outright dismissal is improper where, as here, "[t]here clearly 'exists a reasonable prospect that service can be obtained.'"   *Id.* (quoting *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983)).   Nigeria has offered no reason to believe that P&ID does not have a "reasonable prospect" of obtaining service, and there is no time limit within which P&ID must do so to avoid dismissal.   *See* Fed. R. Civ. P. 4(m) (providing that 90-day limit for service of process "does not apply to service in a foreign country under" 28 U.S.C.

§ 1608).  Thus, even if the Court were to find that P&ID's original service of process was defective and vacate the clerk's default, Nigeria's motion to dismiss the Petition should still be denied.

## CONCLUSION

Nigeria received timely notice of the Petition.  It was not unaware of or confused about its obligation to appear and respond to the Petition.  Nor does Nigeria suggest that its ability to respond was prejudiced in any way by the asserted defects in P&ID's initial service of process.  Were the Court to address the sufficiency of P&ID's original service on Nigeria, it should deny the Motion, conclude that the Court has jurisdiction, and keep the Clerk's default in place.

In any event, P&ID expects that Nigeria's Motion to Dismiss will be rendered moot once the new service packages have been delivered, which P&ID expects to occur imminently.   Once the renewed service has been completed, Nigeria will have an opportunity to respond to the Petition and there will be no need for the Court to resolve this Motion.  As authority cited in Nigeria's own brief shows, dismissal of the Petition is inappropriate where, as here, renewed service can be effected.

Dated: June 26, 2018
       Washington, D.C.

Respectfully Submitted,

*/s/ Josef M. Klazen*
Michael S. Kim
   D.C. Bar No. 1032401
   michael.kim@kobrekim.com

Josef M. Klazen
   D.C. Bar No. 1003749
   josef.klazen@kobrekim.com

KOBRE & KIM LLP
1919 M Street NW
Washington, DC 20036
Tel. +1 202 664 1900

*Attorneys for Petitioner Process and Industrial
Developments Limited*