**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED,<br><br>                     Petitioner,<br>     v.<br><br>FEDERAL REPUBLIC OF NIGERIA AND MINISTRY OF PETROLEUM RESOURCES OF THE FEDERAL REPUBLIC OF NIGERIA,<br><br>                   Respondents. | Case No. 18-cv-00594-CRC |

## RESPONDENTS' OPPOSITION TO PETITIONER'S
## MOTION FOR SETTING OF BRIEFING SCHEDULE

The Federal Republic of Nigeria and the Ministry of Petroleum Resources of the Federal Republic of Nigeria (together "Nigeria" or "Respondents") submit this opposition to the Motion for Setting of Briefing Schedule on the Petition to Confirm Arbitration Award ("Motion") filed by Process and Industrial Developments Limited ("P&ID" or "Petitioner"). Nigeria reserves all rights and defenses and does not waive any of its defenses or its sovereign immunity.

## INTRODUCTION

Nigeria has an absolute right to obtain an authoritative determination of its sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA") before it is required to litigate the merits of P&ID's petition to confirm an arbitration award ("Petition"). P&ID's Motion thus implicates more than a mere briefing schedule; it seeks to abrogate Nigeria's immunity from suit by collapsing this Court's determination of Nigeria's sovereign immunity with the merits. However, the law is clear that Nigeria cannot be compelled to defend this lawsuit on the merits before its sovereign immunity, and this Court's subject matter jurisdiction, have been conclusively decided under the FSIA. P&ID cites no authority to the contrary. Nor does it cite

any authority for the proposition that a foreign state waives its substantive defenses by first invoking its immunity from suit.  The reason is obvious: there is none.

Indeed, FSIA case law, including the U.S. Supreme Court's most recent decision in *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312 (2017), has established beyond doubt that courts are required to decide a foreign state's jurisdictional immunity defense as near to the outset of the litigation as possible, including through an immediate, interlocutory appeal if necessary, before the foreign state can be required to defend on the merits.  Otherwise, the "basic objective" of foreign sovereign immunity, i.e., "to free a foreign sovereign from *suit*," would be defeated.  137 S. Ct. at 1317 (emphasis in original).

Petitioner's reliance on the summary procedures provided in the Federal Arbitration Act ("FAA"), which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("New York Convention"), is of no moment.  Courts have consistently upheld the primacy of the FSIA, which applies to foreign state defendants specifically, over statutes such as the FAA that do not distinguish between sovereign and private parties, including in actions to enforce arbitral awards.  There are no exceptions.  In consequence, the procedural provisions of the FAA must bend to the exigencies of the FSIA.

## STATEMENT OF RELEVANT FACTS

The only relevant fact for deciding P&ID's Motion is undisputed: Nigeria is a foreign state as defined in the FSIA, 28 U.S.C. § 1603(a).

## ARGUMENT

Nigeria's motion to dismiss for lack of jurisdiction under the FSIA is sufficient as an initial response to the Petition.  Indeed, a foreign state has an absolute right to a definitive sovereign immunity determination before being required to defend this lawsuit on the merits.

*See Helmerich & Payne*, 137 S. Ct. at 1317, 1319-20.  Therefore, at the "threshold" of every action against a foreign state, a court must satisfy itself that one of the FSIA's exceptions to immunity applies.  *Id*. at 1324 (quoting *Verlinden B. V. v. Central Bank of Nigeria*, 461 U.S. 480, 493-494 (1983)).  If none of the exceptions applies, then Nigeria's immunity from suit is "complete" and the district court lacks jurisdiction to decide the merits.  *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C. Cir. 2000).

Ordering Nigeria to litigate its merits defenses before this Court has made the threshold jurisdictional immunity determination would deprive Nigeria of the basic benefit of its sovereign immunity—to be free from suit.  *See Helmerich & Payne*, 137 S. Ct. at 1317, 1319, 1323-24; *Phoenix Consulting*, 216 F.3d at 39 ("In order to preserve the full scope of that immunity, the district court must make the 'critical preliminary determination' of its own jurisdiction as early in the litigation as possible; to defer the question is to 'frustrate the significance and benefit of entitlement to immunity from suit.'") (citation omitted); *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 197 (D.C. Cir. 2004) ("because a foreign sovereign 'has immunity from trial and the attendant burdens of litigation,' its claim of immunity from suit should be resolved 'as early in the litigation as possible,' lest the purpose to be served by sovereign immunity be unduly compromised.") (internal citation omitted); *Segni v. Commercial Office of Spain*, 816 F.2d 344, 347 (7th Cir. 1987) ("A foreign government should not be put to the expense of defending what may be a protracted lawsuit without an opportunity to obtain an authoritative determination of its amendability [*sic*] to suit at the earliest possible opportunity."). *See also United States v. Moats,* 961 F.2d 1198, 1203 (5th Cir. 1992)  ("sovereign immunity is an immunity from the burdens of becoming involved in any part of the litigation process, from pre-trial wrangling to trial itself").

That is why a denial of a motion to dismiss under the FSIA is immediately appealable pursuant to the collateral order doctrine. *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004). *See EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78, 87-88 (2d Cir. 2015) (explaining that one of the reasons "the threshold sovereign-immunity determination is immediately reviewable" is that "an appeal from final judgment cannot repair the damage caused to a sovereign that is improperly required to litigate a case"); *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998) ("when the jurisdictional issue is one of *immunity*, including sovereign immunity, appeal from final judgment cannot repair the damage that is caused by requiring the defendant to litigate") (emphasis in original); *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12 F.3d 1270, 1281 (3d Cir. 1993). The same concerns and protections are at play in proceedings to confirm arbitration awards against a foreign state. *Blue Ridge Invs., L.L.C. v. Republic of Argentina*, 735 F.3d 72, 80 (2d Cir. 2013). *See* Resp'ts' Br. 30-32, ECF No. 28-1.[1]

In effect, if this Court enters an order requiring Nigeria to defend this lawsuit on the merits before its jurisdictional immunity has been conclusively resolved, such order in and of itself would constitute an immediately appealable denial of immunity under the FSIA. *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1311 (11th Cir. 2009) ("Inasmuch as the order on appeal required appellants to answer the complaint and called for discovery, it denied them immunity

---

[1] P&ID suggests that this Court should "decid[e] all the issues together," because of the "overlap" between Nigeria's "jurisdictional argument" and one of the defenses under the New York Convention. Pet's Br. 2, n.4, ECF No. 31. That argument is frivolous. In some cases, such as this one, the substantive requirements of the relevant exception to immunity will be "intertwined" with the merits. *Helmerich & Payne*, 137 S. Ct. at 1319. As the Supreme Court has held, if, as part of the jurisdictional analysis, the court "must inevitably decide some, or all, of the merits issues, so be it." *Id. See, e.g., Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 205 n.3, 207 (D.C. Cir. 2015) (ruling that a district court must decide the existence of a valid arbitration agreement "as part of its jurisdictional analysis," even though that inquiry is "largely coextensive" with the foreign state's defenses under the New York Convention); *EML*, 800 F.3d at 88 (reviewing immunity determination pursuant to collateral order doctrine, even though the jurisdictional inquiry overlapped with some of the merits). However, merits defenses that are not intertwined with the jurisdictional inquiry "remain for the merits phase of the litigation." *Helmerich & Payne*, 137 S. Ct. at 1316.

from suit under the FSIA."); *Moats,* 961 F.2d at 1201 (finding that an immediate appeal is

appropriate where "the effect of the order is to require [a foreign state] to defend the lawsuit").

*See also Rein*, 162 F.3d at 756 ("A sovereign that is required to litigate a case on the merits

before it can appeal the assertion of jurisdiction over it has not been afforded the benefit of the

immunity to which it is entitled.").  *Cf. In re Papandreou*, 139 F.3d 247, 254-56 (D.C. Cir. 1998)

(granting extraordinary mandamus relief to protect a foreign state's jurisdictional immunity).

Petitioner claims that, because of the FAA's "summary procedure," Nigeria is required to

present its merits defenses before its sovereign immunity is definitively settled under the FSIA.

Pet's Br. 5, ECF No. 31.  That argument turns the analysis on its head.  The FSIA is the "sole

basis of jurisdiction," and "sets forth the exclusive procedures," for enforcing an arbitral award

against a foreign state.  *Micula v. Gov't of Romania*, 714 F. App'x 18, 21 (2d Cir. 2017) (citing

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 115 (2d Cir. 2017)).

*See also Chevron Corp. v. Republic of Ecuador*, 795 F.3d 200, 203 (D.C. Cir. 2015) (quoting

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439 (1989), and citing

*Verlinden*, 461 U.S. at 488-89); *Belize Soc. Dev., Ltd. v. Gov't of Belize*, 794 F.3d 99, 101 (D.C.

Cir. 2015).  Whatever residual application the procedural aspects of the FAA may have in

actions to confirm arbitral awards against foreign states, it is clear that those procedures cannot

abrogate the foreign state's right to have its sovereign immunity determined as a threshold

matter.  *See Mobil*, 863 F.3d at 114.[2]

In *Mobil*, the Second Circuit squarely addressed this issue in the context of an action to

enforce an arbitration award rendered under another international treaty covered by the

_____

[2] The logic of P&ID's argument concedes as much: but for the summary procedures contemplated by the FAA, P&ID would be required to initiate this action by complaint and there would be no argument that Nigeria is entitled to assert its sovereign immunity, and move to dismiss pursuant to Federal Rule 12(b)(1), before being required to litigate the merits.

arbitration exception, the Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("ICSID Convention").  863 F.3d at 99-100.  The district court entered a final judgment on an expedited basis on the premise that the statute implementing the ICSID Convention, 22 U.S.C. § 1650a ("ICSID statute"), authorized summary proceedings against a foreign state outside the bounds of the FSIA.  *Id*. at 110.  On appeal, the Second Circuit had to "reconcile" the provisions of the ICSID statute, which applies to all parties generally, with the requirements of the FSIA, which applies to foreign state defendants specifically.  *Id*. at 112.

The Second Circuit reversed the district court and ended a longstanding practice in the Southern District of New York of enforcing ICSID awards using a summary procedure not found in the FSIA.  *Id*. at 124-25.  The court of appeals upheld the well-established rule that, in any action against a foreign state, the FSIA supersedes any other statute that does not distinguish between sovereign and private defendants.  *Id*. at 115 (relying on *Amerada Hess*, 488 U.S. at 436-38).  It noted that "the FSIA makes no provision for summary procedures in any instance," and that "nowhere in the FSIA did Congress provide an expedited procedure to enter a federal judgment against a foreign sovereign in *any* circumstance."  *Id*. at 116 (emphasis in original).  The court thus gave "conclusive weight to the affirmative and sweeping provisions in the FSIA's comprehensive statutory scheme."  *Id*. (relying on *Verlinden*, 461 U.S. at 490 (explaining that the purpose of the FSIA is "to provide when and *how* parties can maintain a lawsuit against a foreign state or its entities.") (quoting H. R. Rep. No. 94-1487, at 13) (emphasis added)).  Finally, the court held that an action to enforce an ICSID award against a foreign state had to proceed as a "plenary action" in compliance with the FSIA's jurisdictional and procedural requirements.  *Id*. at 117-18.  *Accord Micula v. Government of Romania*, 104 F. Supp. 3d 42, 44 (D.D.C. 2015) (Mehta, J.) (holding that ICSID awards must be enforced by "plenary action" under the FSIA).

Similarly here, the FAA cannot supply an alternative procedure that impinges upon or restricts a foreign state's absolute right to a preliminary immunity determination under the FSIA. The fact that the FAA implements the New York Convention, as opposed to the ICSID Convention, does not change the analysis.  Like the ICSID statute, the FAA does not distinguish between sovereign and private defendants; thus the FSIA trumps the FAA in proceedings to confirm an award against a foreign state.  *See Creighton Ltd. v. Gov't of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999) (noting, in an action to confirm a New York Convention award: "If Qatar were a private party, then there could be no doubt about the subject matter jurisdiction of the district court; because it is a foreign state, however, we must consider the effect of the FSIA upon the court's power to hear this case.").

None of the cases that Petitioner cites is to the contrary.  To start, any case that did not involve a foreign sovereign immunity defense is irrelevant.[3]  P&ID is thus left with a handful of cases in which the district court decided the merits of a petition to confirm an award at the same time that it denied a motion to dismiss under the FSIA.  Pet's Br. 6-8, ECF No. 31.  P&ID asserts that these cases show how "award-confirmation proceedings are routinely resolved, including against foreign states."  *Id.* at 6.  Not so.  In those cases, the foreign state defendants did not rest on the position that a motion to dismiss under the FSIA was sufficient as an initial response and instead voluntarily opposed the petition on the merits before pressing their sovereign immunity defense through appeal.  *See Balkan Energy Ltd. v. Republic of Ghana*, 302 F. Supp. 3d 144, 149 (D.D.C. 2018); *BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233, 240 (D.D.C. 2015);

---

[3] Even though *Argentine Republic v. Nat'l Grid PLC*, 637 F.3d 365 (D.C. Cir. 2011) involved a foreign state, it is likewise inapposite because Argentina initiated the action with a petition to vacate an award under the FAA and thus foreign sovereign immunity was not at issue.  Nor is *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928 (D.C. Cir. 2007), inconsistent with Nigeria's position.  There, the court did not address whether a motion to dismiss under the FSIA was sufficient as an initial response to a petition to confirm an award.  Rather, the court held that a petition is properly dismissed, as opposed to granted, in a summary procedure where the foreign state voluntarily presented its jurisdictional and merits defenses at the same time.  487 F.3d at 940-41.

*Belize Social Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25, 33 (D.D.C. 2013).  Consequently,

none of those courts had occasion to address any tension between the FAA's summary

procedures and a foreign state's absolute right to have its sovereign immunity conclusively

decided under the FSIA before being obligated to defend a lawsuit on the merits.

　　　For instance, in *Balkan Energy*, No. 17-cv-0584, Judge Mehta granted a "Consent

Motion" on a briefing schedule that did not require Ghana to respond on the merits (Dkt. No.

18), yet Ghana chose to submit an "Answer" (Dkt. No. 23) as a "preliminary response" with its

Reply "out of an abundance of caution" (Dkt. No. 22 at 3 n.3).  Similarly, in *BCB Holdings*,

Judge Kollar-Kotelly granted the petition following Belize's decision to present all jurisdictional

and merits defenses at once.  110 F. Supp. 3d at 240.  By contrast, in a more recent case – which

P&ID does not cite – Judge Kollar-Kotelly withheld her decision on the merits of a petition to

confirm an award after Ukraine asserted its right to an immediate, interlocutory appeal from the

denial of its jurisdictional immunity under the FSIA.  *Tatneft v. Ukraine*, No. 17-cv-582, 2018

U.S. Dist. LEXIS 152356, at *2 (D.D.C. May 2, 2018).  *See also Princz v. Fed. Republic of*

*Germany*, 998 F.2d 1 (D.C. Cir. 1993) (Ginsburg, R.B., & Wald, JJ.) (per curiam) (holding that

district courts are divested of jurisdiction pending resolution of an FSIA appeal).[4]  Thus, far from

"routinely" enforcing awards against foreign states in summary proceedings, district courts yield

to the demands of the FSIA when foreign states assert the full benefits of their immunity defense.

The same bifurcated process is required here.

---

[4] Other courts have similarly suspended all proceedings pending an appeal of an adverse FSIA immunity
determination, even after a judgment had been entered.  *See Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 170
(D.D.C. 2006); *Mamani v. Berzain*, No. 07-22459, 2010 U.S. Dist. LEXIS 147349, at *8 (S.D. Fla. Mar. 16, 2010);
*Beaty v. Republic of Iraq*, No. 03-0215 (JDB), 2007 U.S. Dist. LEXIS 28950, at *5-7 (D.D.C. Apr. 19, 2007).  It
should also be noted that, although Judge Kollar-Kotelly entered a final judgment in *BCB Holdings*, No. 14-cv-
1123, enforcement proceedings did not begin until after the appeal was resolved.  *See* Dkt. Nos. 41, 53.

Lastly, Petitioner misapprehends how the FSIA works when claiming that it would be prejudiced "by delaying the time at which it can start executing on Nigeria's U.S.-based assets" if Nigeria needed to pursue its jurisdictional immunity defense all the way through appeal.  Pet's Br. 4, 6, ECF No. 31.  Any such "delay" is irrelevant, because P&ID has no right to enforce its award in the United States unless and until it can satisfy the jurisdictional requirements of the FSIA.  By contrast, Nigeria has an absolute right to have its sovereign immunity defense definitively adjudicated before it may be obligated to defend this lawsuit on the merits.  *See* supra 2-4.  And the burdens of litigating the merits are no less oppressive here simply because this is a proceeding to confirm an arbitral award.

As Respondents indicated in their memorandum in support of the motion to dismiss, Nigeria has several non-jurisdictional arguments for defending this lawsuit, not the least of which is an attack on the grossly disproportionate damages award – amounting to nearly $9 billion – for a breach of contract involving a project that never even broke ground.  Resps.' Br. 32 n.4, ECF No. 28-1.  To develop that defense, Respondents will show, among other things, how a "risk free" discount rate of 2.65 percent for a startup project in a developing economy such as Nigeria is irrational and, in effect, amounts to an unconscionable penalty.  Therefore, enforcement of the award would violate United States public policy against contractual penalties and against imposing punitive damages on foreign states.  *Id.*  Those defenses raise complex issues and will require Nigeria to expend additional resources in the form of expert reports, legal fees, and time and effort that could be dedicated to other governmental functions.  Thus, if any adverse immunity determination made by this Court were reversed on appeal, it is Nigeria who would have been irreversibly harmed by having been required to defend on the merits and endure the burdens of suit.  *See Helmerich & Payne*, 137 S. Ct. at 1323 (rejecting deferral of immunity

determination to the merits stage, because that "will sometimes mean increased delay, imposing increased burdens of time and expense *upon the foreign nation*") (emphasis added); *Moats*, 961 F.2d at 1201 (enforcing a judgment before an FSIA appeal would lead to "extraordinary harm" and "irreparable loss").  *See also EML*, 800 F.3d at 87-88 n.38; *Blue Ridge*, 735 F.3d at 80; *Price*, 389 F.3d at 197; *Kilburn*, 376 F.3d at 1126; *Rein*, 162 F.3d at 756; *Segni* 816 F.2d at 347.

In short, Petitioner's attempt to end-run the FSIA must be rejected.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny P&ID's Motion and enter a briefing schedule only for Nigeria's motion to dismiss.  Nigeria agrees to an extension of time for P&ID to respond to the motion to dismiss in exchange for an equivalent extension for Nigeria's reply.

Dated: Washington, D.C.
        September 11, 2018

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By:   */s/ Joseph D. Pizzurro*
Joseph D. Pizzurro
(D.C. Bar No. 468922)
1717 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel.:  (202) 452-7373
Fax:  (202) 452-7333
Email:  jpizzurro@curtis.com

- and -

Kevin A. Meehan (admitted *pro hac vice*)
Juan O. Perla (admitted *pro hac vice*)
101 Park Avenue
New York, NY 10178
Tel.: (212) 696-6000
Fax:  (212) 697-1559
Email: kmeehan@curtis.com
Email: jperla@curtis.com

*Attorneys for Respondents Federal Republic of Nigeria and Ministry of Petroleum Resources of the Federal Republic of Nigeria*