UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| PROCESS AND INDUSTRIAL DEVELOPMENTS LIMITED, : | |
| Plaintiff, : | |
| v. : | Civil Action No. 18-cv-00594-CRC |
| FEDERAL REPUBLIC OF NIGERIA and MINISTRY OF PETROLEUM RESOURCES OF THE FEDERAL REPUBLIC OF NIGERIA, : | |
| Defendants. : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY BRIEF IN FURTHER SUPPORT OF
PETITIONER'S MOTION FOR SETTING OF BRIEFING SCHEDULE
ON THE PETITION TO CONFIRM ARBITRATION AWARD**

P&ID briefed its Petition to confirm the Final Award in March and complied with the FSIA's venue and service requirements. Yet Nigeria still ignored the August 27 due date for its opposition brief to the Petition. In search of an excuse for its failure to timely respond, and in a transparent effort to delay a merits ruling, Nigeria asks this Court to disregard D.C. Circuit precedent and adopt a procedure that no other court has required in an award-confirmation action, threatening to turn this case into a multi-year proceeding. It is well settled in this Circuit (and others) that courts must resolve award-confirmation proceedings brought under the FAA, including those against foreign states, through a summary process akin to federal motion practice. *See, e.g.*, *TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 940 (D.C. Cir. 2007) (applying FAA in proceeding against foreign state and observing that confirmation proceedings "should proceed under motions practice, not notice pleading").

Nothing in the FSIA requires that a defense of jurisdictional immunity be decided separately and before a foreign state's response to a pending motion. Prompt resolution on the

briefs of Nigeria's jurisdictional and merits defenses together complies with both the FSIA and the FAA and would result in an early decision on *all* issues in the case, including immunity. Nigeria is simply wrong in suggesting that its sovereign immunity would be infringed by being required to promptly submit its already-overdue opposition to the Petition. Nigeria has pointed to no authority that says this, nor is P&ID aware of any.

It is clear why Nigeria seeks a *separate* determination on sovereign immunity: it wants to tie up this proceeding in staggered litigation and interlocutory appeals, further delaying enforcement of the Final Award—after P&ID already spent years litigating the merits and damages before the Tribunal. Contrary to Nigeria's assertions, P&ID's motion does not create a conflict between federal statutes that this Court must resolve. Instead, Nigeria simply disregarded a filing deadline, is hoping to get away with it, and wants to delay briefing its merits defenses (and eventual enforcement of the award) by seeking an initial ruling on its meritless jurisdictional defense. Were this Court to condone such a tactic, it would provide a baseless, pernicious path for future sovereign debtors to obstruct confirmation of valid arbitration awards through years of needless briefing and appeals. The Court should reject this effort by Nigeria and, in the interest of judicial economy, exercise its case-management powers to require that Nigeria promptly file any responsive brief to the Petition.

## ARGUMENT

There is no dispute that courts must decide the issue of sovereign immunity "as early in the litigation as possible." (*See* Opp. at 3.) Award-confirmation proceedings under the FAA follow the standard form of motion practice—a petition, an opposition, and a reply—and thus provide the early determination of immunity that Nigeria seeks. *See TermoRio*, 487 F.3d at 940. The FAA does not delay resolution of immunity but rather accelerates determination of the entire

matter.  *See Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 800 F. Supp. 2d 161, 164 (D.D.C. 2011) ("summary proceeding" is appropriate because an award-confirmation proceeding "merely converts what is already a final decision into a judgment of a court" (citation omitted)).

Not content with the early determination of immunity that an FAA action allows, Nigeria instead asks this Court to recognize, for the first time, an "absolute right" (Opp. at 1) to something very different: a *separate* determination of sovereign immunity in award-confirmation proceedings, which must be issued and may be appealed before a respondent even *briefs* its merits defenses.  The FSIA provides no such "absolute right," nor has any court recognized one.

Instead, the D.C. Circuit—in a New York Convention case involving a foreign sovereign—recognized that applications to confirm awards under the Convention must be briefed and heard like motions.  *TermoRio*, 487 F.3d at 940 (explaining that applications to confirm awards under the Convention "shall be made and heard in the manner provided by law for the making and hearing of motions" (quoting 9 U.S.C. § 6)).  Consistent with this Circuit's guidance, P&ID initiated this action by submitting a petition, declarations, and a memorandum of law in March, and—after Nigeria failed to appear, defaulted, and then challenged service—its deadline was eventually set for August 27.  As explained in P&ID's opening brief, the filing of a motion to dismiss did not postpone Nigeria's deadline for opposing the Petition, and Nigeria has no legitimate excuse for ignoring that deadline.

The assertion that *TermoRio* is not "inconsistent with Nigeria's position" (Opp. at 7 n.3) holds no water: responding to a petition by filing a motion to dismiss, while purporting to reserve the right to make other arguments in opposition, cannot be consistent with treating the Petition as a motion and resolving it in a summary, streamlined fashion, as this Court must.  That *TermoRio*

did not specifically address whether a motion to dismiss sufficed as a response to a confirmation petition does not matter.[1]

To convince this Court to ignore the summary process contemplated by the FAA, Nigeria manufactures a false conflict between that statute and the FSIA. But no conflict exists, and Nigeria identifies no court that has found one. The Court is thus free to manage its docket and the parties' deadlines to ensure fairness and consistency in accord with the summary nature of award confirmation proceedings, as established by the FAA and endorsed by the D.C. Circuit.

Nigeria is flat wrong in stating that the Second Circuit's decision in *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96 (2d Cir. 2017), "squarely addressed" Nigeria's purported right to a separate ruling on jurisdiction. (Opp. at 5.) The *Mobil Cerro* decision does not do so. Instead, it actually shows why the procedure followed by P&ID is proper. In *Mobil Cerro*, the Second Circuit rejected the *ex parte* enforcement of an ICSID arbitration award against a foreign sovereign under a New York state procedure for sister-state judgments, concluding that it violated the FSIA's service and venue requirements. 863 F.3d at 99. In stating that "the FSIA makes no provision for summary procedures in any instance" (*id.* at 116 (quoted in Opp. at 6)), the Second Circuit concluded only that the FSIA does not exempt actions under the ICSID statute from the FSIA's service and venue requirements, both of which were violated by *ex parte* enforcement. *See* 863 F.3d at 115–16. Here, by contrast, P&ID has complied with the service and venue requirements, and Nigeria has an opportunity to challenge

---

[1] *TermoRio* also contradicts Nigeria's assertion that a foreign court's order purporting to set aside an arbitration award creates a "jurisdictional" defense, exposing Nigeria's delay tactic here. 487 F.3d at 941 (construing denial of petition on grounds of set-aside order as "a grant of summary judgment under Federal Rule of Civil Procedure 56"). Tellingly, *TermoRio* affirmed a district court ruling that explicitly found that, despite the Colombian set-aside order, "the court [had] subject matter jurisdiction over the . . . arbitral award enforcement claim." *Id.* at 932.

4

jurisdiction and the Petition's merits. The FAA procedure is only "summary" in that the Petition is treated as a motion and the case can be resolved on the briefs. *See also id.* at 114 n.15 (contrasting ICSID statute with FAA). Nothing in *Mobil Cerro* suggests that this type of summary proceeding would violate the FSIA, nor does it suggest that an immunity defense must be decided separately before a foreign state may be required to brief its defenses on the merits of confirmation. The same is true of this Court's decision in *Micula v. Gov't of Romania*, on which Nigeria also relies. *See* 104 F. Supp. 3d 42, 44 (D.D.C. 2015) (concluding that a federal court cannot "recognize or confirm . . . an arbitration award on an ex parte basis" under the ICSID statute).[2]

Nigeria's argument for its purported "right" to have a separate, immediately appealable decision on immunity relies on a misguided assertion that merits litigation "would deprive Nigeria of the basic benefit of its sovereign immunity." (Opp. at 2–3.) But Nigeria cites no case supporting its assertion that summary *briefing* abrogates a sovereign respondent's immunity from "trial and the attendant burdens of litigation." *See, e.g.*, *Price v. Socialist People's Libyan Arab Jamahiriya*, 389 F.3d 192, 197 (D.C. Cir. 2004). Rather, Nigeria cites cases where an explicit denial of immunity could force a sovereign to submit to the burdens of discovery or trial, in actions requiring the adjudication of liability and damages. *See, e.g.*, *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312 (2017) (addressing sovereign immunity in action seeking to establish liability for unlawful expropriation of property). These cases are simply inapposite in the award-confirmation context. *Cf. Balkan*

---

[2] The courts in *Mobil Cerro* and *Micula* referred to the need for a "plenary action" to enforce an ICSID award under the ICSID statute, by which they meant a proceeding in which the foreign state would have an opportunity to respond—as contrasted with an *ex parte* proceeding. 863 F.3d at 117; 104 F. Supp. 3d at 52.

*Energy Ltd. v. Republic of Ghana*, 302 F. Supp. 3d 144, 157 (D.D.C. 2018) (denying request for discovery in award-confirmation proceeding "[i]n the interest of ensuring that [it] remain 'summary' in nature" (citation omitted)).[3]

To be clear, Nigeria's jurisdictional argument, already fully set forth in its Motion to Dismiss, requires no discovery. The Tribunal already resolved liability and damages, and Nigeria may not relitigate those issues here. All that remains are Nigeria's defenses to recognition under the Convention, which "provides only several narrow circumstances when a court may deny confirmation of an arbitral award." *Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 20 (D.D.C. 2011). Despite Nigeria's hyperbole about hypothetical "expert reports" and the depletion of "time and effort that could be dedicated to other governmental functions" (Opp. at 9), Nigeria offers no reason why its counsel's briefing these narrow legal issues equates to the burden on a foreign state of producing documents or making witnesses available for discovery or trial.[4] Nigeria's public policy defense does not raise "complex issues," but rather simple arguments that were already raised before—and

---

[3] Nigeria cites one other case, from a different Circuit under a different statute, involving award confirmation. *See Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72 (2d Cir. 2013). But nothing in *Blue Ridge* suggests that the FSIA required the district court to rule separately on sovereign immunity. (*See* Mot. at 8 n.5.) *Blue Ridge* stands only for the proposition that *if* a separate immunity ruling is made, an appeal may be heard from that order. 735 F.3d at 79–81.

[4] In fact, it seems that Nigeria is seeking to *increase* the burdens of what should be a summary proceeding by trying to "bifurcate[]" the case and manufacture multiple rounds of briefing. (Opp. at 8.) As the D.C. Circuit has observed, "[i]t would be bizarre if an assertion of immunity worked to increase litigation costs." *In re Papandreou*, 139 F.3d 247, 254 (D.C. Cir. 1998). But such delay tactics by Nigeria are familiar. *See, e.g.*, *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 932 F. Supp. 2d 153, 163 (D.D.C. 2013) ("Nigeria has protracted these proceedings at every stage, first by failing to appear, and then by attempting to dismiss the case and forestall confirmation of the award through arguments that the Court has consistently found meritless, sometimes bordering on the frivolous." (internal alterations and quotation marks omitted)).

rejected by—the Tribunal.[5] Nigeria would be done devoting resources to this litigation had it complied with the August 27 deadline.

No court has recognized a foreign state's "absolute right" to a separate ruling on immunity before briefing of the merits in a summary award-confirmation action, and Nigeria cannot dispute that courts in this District routinely decide immunity and merits issues together. *See Balkan Energy*, 302 F. Supp. 3d 144; *Salini Costruttori S.p.A. v. Kingdom of Morocco*, 233 F. Supp. 3d 190 (D.D.C. 2017); *BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233 (D.D.C. 2015); *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 5 F. Supp. 3d 25 (D.D.C. 2013); *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57 (D.D.C. 2013).

As explained in P&ID's opening brief, the foreign-state respondents in *Balkan Energy* and *BCB Holdings* both asserted immunity in the first instance, yet the court adjudicated immunity simultaneously with the merits in both cases. To distinguish these decisions, Nigeria notes that neither foreign state defendant rested on a motion to dismiss as "sufficient as an initial response." (Opp. at 7.) Stated differently, those foreign states did not brazenly flout the established procedures of the FAA, as Nigeria does here. This is not a credit to Nigeria's position, and Nigeria should not be rewarded for this gamesmanship. Further, the courts in those cases absolutely "had occasion to address" any supposed tension between the FSIA and the FAA (*contra* Opp. at 8), given that both foreign states sought a separate, preliminary decision on immunity. Yet in neither case did the court find any conflict between the statutes. As previously

---

[5] Nigeria's second-guessing of the Tribunal's well-reasoned decision is not a basis to deny confirmation. Courts should "rely on the public policy exception only 'in clear-cut cases' where 'enforcement would violate the forum state's most basic notions of morality and justice.'" *BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17, 19 (D.C. Cir. 2016) (citation omitted). Nigeria cannot meet this high standard. *See Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57 (D.D.C. 2013) ("Although this defense is frequently raised, it has rarely been successful.").

7

noted, Judge Mehta in *Balkan Energy* expressed the view that "Ghana should have included all arguments and supporting affidavits for denial of the Petition in its response to the Petition, rather than submitting them in piecemeal fashion," even though Ghana first moved to dismiss while reserving rights to proceed later to the merits. *Balkan Energy*, 302 F. Supp. 3d at 149 n.2.

Judge Kollar-Kotelly's decision to issue a separate ruling on a foreign state's jurisdictional defenses in *Tatneft v. Ukraine* does not support Nigeria's position either. Neither Judge Kollar-Kotelly nor Ukraine suggested at any point that the FSIA required Ukraine's jurisdictional objection to be decided separately from the merits. Whatever reasoning motivated that court's approach, it cannot have been a concern that merits briefing would infringe Ukraine's sovereign immunity; Ukraine had *already briefed* its merits defenses seven months earlier. *See* Respondent's Opposition to Petitioner's Petition to Confirm Arbitral Award (Dkt. No. 22), Case No. 1:17-cv-00582-CKK (July 25, 2017).

Finally, Nigeria asserts that *an order scheduling merits briefing* would be "an immediately appealable denial of immunity." (Opp. at 4.) This scare tactic finds no support in the authorities that Nigeria cites. In each of *Butler*, *Moats*, and *Rein* (cited in Opp. at 4), the foreign state appealed from a denial of a motion to dismiss on sovereign immunity grounds, which courts have found to be appealable under the collateral order doctrine. But a briefing schedule is not such a conclusive determination. And in *Papandreou*, the D.C. Circuit confirmed that an order that effectively delayed decision on (rather than denying) sovereign immunity could only be challenged by mandamus, a high bar reached there only because the ordered depositions of cabinet ministers created considerable burdens and diplomatic tension. No similar discovery will be necessary here. Thus, if the Court grants P&ID's motion, the Court would retain jurisdiction to resolve the Petition regardless of any appellate mischief Nigeria may pursue. *See*

*McKesson HBOC, Inc. v. Islamic Republic of Iran,* 315 F. Supp. 2d 63, 66 (D.D.C.2004) ("[A] notice of appeal from an unappealable order does not divest the district court of jurisdiction."); *see also Van Allen v. Dep't of Veterans Affairs*, 925 F. Supp. 2d 119, 121 n.1 (D.D.C. 2013) (retaining jurisdiction despite "meritless petition for a writ of mandamus").

## CONCLUSION

This Court should not indulge Nigeria's attempt to turn a summary proceeding into a protracted, multi-year litigation.  Nigeria's opposition was due on August 27.  It has ignored that deadline.  Nigeria's claim that it has an "absolute right" to a separate ruling on its (meritless) jurisdictional immunity defense finds no support in the law, nor does its claim that the summary procedure dictated by the FAA is in tension with, and must yield to, the FSIA.  Therefore, P&ID respectfully requests that the Court reject Nigeria's efforts to delay this proceeding, set a briefing schedule on the Petition so that Nigeria must file any opposition brief promptly, and rule on all the issues in the case together once they have been briefed so that the case can be summarily resolved.  Nigeria should either file its opposition or accept its forfeiture of all other arguments.

Dated: September 14, 2018
         Washington, D.C.

                                        Respectfully Submitted,

                                        */s/* Josef M. Klazen
                                        Michael S. Kim
                                            D.C. Bar No. 1032401
                                            michael.kim@kobrekim.com
                                        Josef M. Klazen
                                            D.C. Bar No. 1003749
                                            josef.klazen@kobrekim.com
                                        KOBRE & KIM LLP
                                        1919 M Street NW
                                        Washington, DC 20036
                                        Telephone:  (202) 664-1900

                                        *Attorneys for Petitioner Process and Industrial Developments Limited*